# EXHIBIT 1

David S. Bridge (9077)
SCALLEY READING BATES
HANSEN & RASMUSSEN, P.C.
15 West South Temple, Suite 600
Salt Lake City, Utah 84101
Telephone: (801) 531-7870
E-mail: dbridge@scalleyreading.net

*Attorney for Plaintiffs United Services Automobile Association;*
*USAA Casualty Insurance Company; and*
*Garrison Property and Casualty Insurance Company*

---

IN THE THIRD JUDICIAL DISTRICT COURT IN AND FOR SUMMIT COUNTY

SILVER SUMMIT DEPARTMENT, STATE OF UTAH

| | |
|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION; USAA CASUALTY INSURANCE COMPANY; and GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>       Plaintiffs,<br><br>v.<br><br>JAMES SEAVER and DEBORAH SEAVER, both individually and as parents and heirs of G.S., deceased; MATTHEW K. MOELLER and CARELLI MOELLER, both individually and as parents of P.M.; ROBERT AINSWORTH and GILLIAN AINSWORTH, both individually and as parents of J.A. and R.A.; THE ESTATE OF R.A.; and ROBERT AINSWORTH and/or GILLIAN AINSWORTH as Personal Representative for the Estate of R.A.,<br><br>       Defendants. | **FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF**<br><br>TIER 2<br><br>Civil No. 180500346<br><br>Judge Kent Holmberg |

Plaintiffs, United Services Automobile Association; USAA Casualty Insurance Company; and Garrison Property and Casualty Insurance Company (collectively hereinafter "Plaintiffs"), by and through counsel of record, pursuant to Rule 57 of the *Utah Rules of Civil Procedure* and *Utah Code Ann*. § 78B-6-408, files this Complaint For Declaratory Relief and complains and alleges against Defendants James Seaver and Deborah Seaver, both individually and as parents and heirs of G.S.; Matthew K. Moeller and Carelli Moeller, both individually and as parents of P.M.; Robert Ainsworth and Gillian Ainsworth, both individually and as parents of J.A. and R.A.; the Estate of R.A.; and Robert and/or Gillian Ainsworth as Personal Representative for the Estate of R.A. (collectively hereinafter "Defendants") as follows:

## PARTIES

1.      United Services Automobile Association is a reciprocal interinsurance exchange with its principal place of business in San Antonio, Texas authorized to conduct business in Utah.

2.      USAA Casualty Insurance Company is a Texas corporation with its principal place of business in San Antonio, Texas and authorized to conduct business in Utah.

3.      Garrison Property and Casualty Insurance Company is a Texas corporation with its principal place of business in San Antonio, Texas and authorized to conduct business in Utah.

4.      James Seaver is an individual residing in Summit County, State of Utah.

5.      Deborah Seaver is an individual residing in Summit County, State of Utah.

6.      Matthew K. Moeller is an individual residing in Summit County, State of Utah.

7.      Carelli Moeller is an individual residing in Summit County, State of Utah.

2

8.      P.M. is an individual residing in Summit County, State of Utah and the minor child of Matthew K. Moeller and Carelli Moeller.

9.      Robert Ainsworth is an individual residing in Summit County, State of Utah.

10.     Gillian Ainsworth is an individual residing in Summit County, State of Utah.

11.     J.A. is an individual residing in Summit County, State of Utah and the minor child of Robert Ainsworth and Gillian Ainsworth.

12.     R.A. is a deceased individual who last resided in Summit County, State of Utah and the minor child of Robert Ainsworth and Gillian Ainsworth.

13.      Upon information and belief, Robert Ainsworth and/or Gillian Ainsworth are the Personal Representatives of the Estate of R.A., an estate in Summit County, State of Utah.

## JURISDICTION AND VENUE

14.     Jurisdiction is proper in this Court pursuant to *Utah Code Ann.* § 78A-5-102(1) and § 78B-6-401.

15.     Venue is proper in this County pursuant to *Utah Code Ann.* § 78B-3-304 and § 78B-3-307.

## TIER

16.     Inasmuch as Plaintiffs seek declaratory relief (non-monetary relief) this case qualifies as Tier 2 for standard discovery purposes under Rule 26 of the *Utah Rules of Civil Procedure*.

## GENERAL ALLEGATIONS

**I.      The Policies**

17.      On or about October 27, 2015, United Services Automobile Association issued to

Matthew K. Moeller, as named insured, a Homeowners Policy No. USAA 00445 71 35 95A, which

had a policy period from 9/16/15 to 9/16/16 and a $500,000 limit per occurrence.  Carelli Moeller

and P.M. may also be considered insureds under this policy.  A true and correct copy of this policy

is attached hereto as Exhibit "A" and is incorporated herein by reference.  This policy contains the

following language:

> **SECTION II - LIABILITY COVERAGES**
> **Coverage E - PERSONAL LIABILITY**
> If a claim is made or a suit is brought against any "**insured**" for
> "**damages**" because of "**bodily injury**" or "**property damage**"
> caused by an "**occurrence**" to which this coverage applies, we
> will:
>
> 1.      Pay up to our limit of liability for the "**damages**"
>         for which the "**insured**" is legally liable; and
> 2.      Provide a defense at our expense by counsel of
>         our choice, even if the suit is groundless, false or
>         fraudulent.  We may investigate and settle any
>         claim or suit that we decide is appropriate.  Our
>         duty to settle or defend ends when the amount
>         we pay for "**damages**" resulting from an
>         "**occurrence**" equals our limit of liability.  This
>         coverage does not provide defense to any
>         "**insured**" for criminal prosecution or
>         proceedings.  We will not pay for punitive
>         damages or exemplary damages, fines or
>         penalties.
>
> * * * *
> **SECTION II - EXCLUSIONS**
> 1.      **Coverage E - Personal Liability and Coverage F -**
>         **Medical Payments to Others** do not apply to "**bodily**
>         **injury**" or "**property damage**":
>         a.      Which is reasonably expected or intended by any
>                 "**insured**" even if the resulting "**bodily injury**" or
>                 "**property damages**":
>                 (1)      Is of a different kind, quality or degree

4

than initially expected or intended; or

(2)    Is sustained by a different person, entity, real or personal property, than initially expected or intended.

\* \* \* \*

j.    Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s). Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

\* \* \* \*

n.    Arising out of or caused by the commission of, attempting to flee from, or avoiding apprehension for a criminal act for which intent is a necessary element.

\* \* \* \*

**2.**    **Coverage E - Personal Liability does not apply to:**

\* \* \* \*

g.    punitive or exemplary damages, fines, or penalties.

18.    On or about July 24, 2016, United Services Automobile Association issued to Matthew K. Moeller, as named insured, an Umbrella Policy No. USAA 00445 71 35 7OU, which had a policy period from 7/24/16 to 7/24/17 and $1,000,000 limit per occurrence. Carelli Moeller and P.M. may also be considered insureds under this policy. A true and correct copy of this policy is attached hereto as Exhibit "B" and is incorporated herein by reference. This policy contains the following language:

**LIABILITY COVERAGES**

INSURING AGREEMENT

A.    <u>Damages.</u>

1.    **We** will pay for damages, in excess of the **retained limit**, that an **insured** becomes legally

5

       obligated to pay because of **bodily injury** or **property damage** resulting from an **occurrence**.

    2.  **We** will pay for damages that an **insured** becomes legally obligated to pay because of **personal injury**.

B.  <u>Defense</u>

    1.  If a claim is made or a suit is brought against any **insured** for **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, **we** will provide a defense at **our** choice, even if the suit is groundless, false or fraudulent. However, **we** will not provide a defense:

        a.  To any **insured** for criminal prosecution or proceedings; or

        b.  If the **occurrence** or offense is covered by **underlying insurance** or any other liability insurance available to any **insured**.

\* \* \* \*

    3.  **We** have the right, but not the duty, to join with any **insured** or with the insurer providing **underlying insurance** in the investigation, defense or settlement of any claim or suit, or in any alternative dispute resolution process, which may require **us** to pay.

\* \* \* \*

**EXCLUSIONS**

\* \* \* \*

A.  This insurance does not apply to:

\* \* \*

    3.  Punitive or exemplary damages, fines or penalties.

\* \* \*

E.  This insurance does not apply to **bodily injury** or **property damage**:

    1.  Caused by the intentional or purposeful acts of any **insured** that would be expected by any reasonable person to result in **bodily injury** or **property damage**. This applies even if the resulting **bodily injury** or **property damage**:

        a.  Is of a different kind, quality or degree than initial expected or intended; or

                b.       Is sustained by a different person, entity, real property or personal property than initially expected or intended.

\* \* \* \*

G.       This insurance does not apply to **bodily injury, property damage** or **personal injury:**

\* \* \* \*

       7.       Arising out of a criminal act or omission by, or with either the knowledge or consent of, any **insured**.

\* \* \* \*

      14.     Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of controlled substance(s). Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs.
This exclusion (G.14.) does not apply to the extent that liability coverage is provided by **underlying insurance** and is not excluded elsewhere in this policy.

19.    On or about May 24, 2016, USAA Casualty Insurance Company issued to Gillian M. Ainsworth and Robert J. Ainsworth, as named insureds, a Homeowners Policy No. CIC 00235 34 64 96A, which had a policy period from 5/24/16 to 5/24/17 and a $300,000 limit per occurrence.  J.A., R.A, and the Estate of R.A. may also be considered insureds under this policy. A true and correct copy of this policy is attached hereto as Exhibit "C" and is incorporated herein by reference.  This policy contains the following language:

**SECTION II - LIABILITY COVERAGES**
**Coverage E - PERSONAL LIABILITY**
If a claim is made or a suit is brought against any "**insured**" for "**damages**" because of "**bodily injury**" or "**property damage**" caused by an "**occurrence**" to which this coverage applies, we will:
       1.       Pay up to our limit of liability for the "**damages**" for which the "**insured**" is legally liable; and
       2.       Provide a defense at our expense by counsel of

7

our choice, even if the suit is groundless, false or fraudulent.  We may investigate and settle any claim or suit that we decide is appropriate.  Our duty to settle or defend ends when the amount we pay for "**damages**" resulting from an "**occurrence**" equals our limit of liability.  This coverage does not provide defense to any "**insured**" for criminal prosecution or proceedings.   We will not pay for punitive damages or exemplary damages, fines or penalties.

\* \* \* \*

**SECTION II - EXCLUSIONS**
1.    **Coverage E - Personal Liability and Coverage F - Medical Payments to** Others do not apply to "**bodily injury**" or "**property damage**":
   a.    which is reasonably expected or intended by any "**insured**" even if the resulting "**bodily injury**" or "**property damages**":
      (1)   Is of a different kind, quality or degree than initially expected or intended; or
      (2)   Is sustained by a different person, entity, real or personal property, than initially expected or intended.

\* \* \* \*

   j.    Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s). Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

\* \* \* \*

   n.    Arising out of or caused by the commission of, attempting to flee from, or avoid apprehension for a criminal act for which intent is a necessary element.

\* \* \* \*

2.    Coverage E - Personal Liability does not apply to:
\* \* \* \*

   g.    punitive or exemplary damages, fines, or

8

penalties.

20.    On or about March 4, 2016, USAA Casualty Insurance Company issued to Robert

Ainsworth, as named insured, an Umbrella Policy No. CIC 00235 34 64 71U, with a policy

period from 3/4/16 to 12/7/16 and a $3,000,000 limit per occurrence.  J.A., R.A., and the Estate

of R.A. may also be considered insureds under this policy.  A true and correct copy of this policy

is attached hereto as Exhibit "D" and is incorporated herein by reference.  This policy contains

the following language:

> **LIABILITY COVERAGES**
> INSURING AGREEMENT
> A.    <u>Damages.</u>
> > 1.    **We** will pay for damages, in excess of the **retained limit**, that an **insured** becomes legally obligated to pay because of **bodily injury** or **property damage** resulting from an **occurrence**.
> > 2.    **We** will pay for damages that an **insured** becomes legally obligated to pay because of **personal injury**.
> B.    <u>Defense</u>
> > 1.    If a claim is made or a suit is brought against any **insured** for **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, **we** will provide a defense at **our** choice, even if the suit is groundless, false or fraudulent. However, **we** will not provide a defense:
> > > a.    To any **insured** for criminal prosecution or proceedings; or
> > > b.    If the **occurrence** or offense is covered by **underlying insurance** or any other liability insurance available to any **insured**.
> > * * * *
> > 3.    **We** have the right, but not the duty, to join with any **insured** or with the insurer providing **underlying insurance** in the investigation,

defense or settlement of any claim or suit, or in any alternative dispute resolution process, which may require **us** to pay.

\* \* \* \*

## EXCLUSIONS

\* \* \* \*

A.      This insurance does not apply to:

\* \* \* \*

      3.      Punitive or exemplary damages, fines or penalties.

\* \* \* \*

E.      This insurance does not apply to **bodily injury** or **property damage**:

      1.      Caused by the intentional or purposeful acts of any **insured** that would be expected by any reasonable person to result in **bodily injury** or **property damage**. This applies even if the resulting **bodily injury** or **property damage**:

            a.      Is of a different kind, quality or degree than initial expected or intended; or

            b.      Is sustained by a different person, entity, real property or personal property than initially expected or intended.

\* \* \* \*

G.      This insurance does not apply to **bodily injury, property damage** or **personal injury:**

\* \* \* \*

      7.      Arising out of a criminal act or omission by, or with either the knowledge or consent of, any **insured**.

\* \* \* \*

      14.      Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of controlled substance(s). Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs.

This exclusion (G.14.) Does not apply to the extent that liability coverage is provided by **underlying insurance** and is not excluded elsewhere in this policy.

21.     On or about June 17, 2016, Garrison Property and Casualty Insurance Company issued to Gillian Ainsworth, as named insured, a Renters Policy No. GAR 01326 75 75 REN 001, with a policy period from 6/17/16 to 6/17/17 and a $300,000 liability limit.  J.A., R.A., and the Estate of R.A. may also be considered insureds under this policy.  A true and correct copy of this policy is attached hereto as Exhibit "E" and is incorporated herein by reference.  This policy contains the following language:

**RENTERS PROTECTION POLICY**
**-PERSONAL LIABILITY-**

**PERSONAL LIABILITY** describes the protection you have against liability arising out of your residence and your personal activities.
* * * *

**LIABILITY**
If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an occurrence to which this coverage applies:

> We will:

> > 1.    pay up to our limit of liability for the damages for which the **insured** is legally liable; and

> > 2.    provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.  We may investigate and settle any claim or suit that we decide is appropriate.

> Our duty to settle or defend ends when the amount we pay equals our limit of liability for **PERSONAL LIABILITY**.

> "Occurrence" means an accident including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

> > > **bodily injury;** or
> > > **property damage.**

* * * *

**LIABILITY AND MEDICAL PAYMENTS EXCLUSIONS**

11

1.    **LIABILITY** and **MEDICAL PAYMENTS TO OTHERS** do not apply to **bodily injury** or **property damage**:

    a.    which is expected or intended by the **insured**;

\* \* \* \*

## LIABILITY

**LIABILITY** is deleted and replaced by the following:

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

1.    pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2.    provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay or tender for damages resulting from an **occurrence** equals our limit of liability. This coverage does not provide defense to any **insured** for criminal prosecution or proceedings.

**Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

    a.    **bodily injury;** or

    b.    **property damage.**

We will not pay for punitive damages or exemplary damages, fines or penalties.

## LIABILITY AND MEDICAL PAYMENTS EXCLUSIONS

Item **1.a.** is deleted and replaced by:

    a.    caused by the intentional or purposeful acts of any **insured**, including conduct that would reasonably be expected to result in **bodily injury** to any person or **property damage** to any property.

\* \* \* \*

Under **1.** the following exclusions are added:

1.    arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s). Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

\* \* \* \*

5.    arising out of the commission of, attempting to flee from, or avoiding apprehension for a criminal act for which intent is a necessary element.

**LIABILITY EXCLUSIONS**

Under **2.** the following exclusion is added:

1.    punitive or exemplary damages, fines, or penalties.

22.    On or about June 17, 2016, Garrison Property and Casualty Insurance Company issued to Gillian Ainsworth, as named insured, an Umbrella Policy No. CIC 01326 75 75 7OU, with a policy period from 6/17/16 to 6/17/17 and a $3,000,000 liability limit.  J.A., R.A., and the Estate of R.A. may also be considered insureds under this policy.  A true and correct copy of this policy is attached hereto as Exhibit "F" and is incorporated herein by reference.

23.    This policy contains the following language:

**LIABILITY COVERAGES**
INSURING AGREEMENT

A.    <u>Damages.</u>

1.    **We** will pay for damages, in excess of the **retained limit**, that an **insured** becomes legally obligated to pay because of **bodily injury** or **property damage** resulting from an **occurrence**.

2.    **We** will pay for damages that an **insured** becomes legally obligated to pay because of **personal injury**.

13

B.    Defense

1.    If a claim is made or a suit is brought against any **insured** for **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, **we** will provide a defense at **our** choice, even if the suit is groundless, false or fraudulent. However, **we** will not provide a defense:

a.    To any **insured** for criminal prosecution or proceedings; or

b.    If the **occurrence** or offense is covered by **underlying insurance** or any other liability insurance available to any **insured**.

* * * *

3.    **We** have the right, but not the duty, to join with any **insured** or with the insurer providing **underlying insurance** in the investigation, defense or settlement of any claim or suit, or in any alternative dispute resolution process, which may require **us** to pay.

* * * *

# EXCLUSIONS
* * * *

A.    This insurance does not apply to:

* * * *

3.    Punitive or exemplary damages, fines or penalties.

* * * *

E.    This insurance does not apply to **bodily injury** or **property damage**:

1.    Caused by the intentional or purposeful acts of any **insured** that would be expected by any reasonable person to result in **bodily injury** or **property damage**. This applies even if the resulting **bodily injury** or **property damage**:

a.    Is of a different kind, quality or degree than initial expected or intended; or

b.    Is sustained by a different person, entity, real property or personal property than initially expected or intended.

* * * *

14

G.     This insurance does not apply to **bodily injury, property damage** or **personal injury:**

\* \* \* \*

7.      Arising out of a criminal act or omission by, or with either the knowledge or consent of, any **insured**.

\* \* \* \*

14.     Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of controlled substance(s). Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs.
This exclusion (G.14.) Does not apply to the extent that liability coverage is provided by **underlying insurance** and is not excluded elsewhere in this policy.

24.     The above described policies of insurance are hereinafter collectively referred to as the "Policies".

## II.     The Underlying Lawsuit

25.     James Seaver and Deborah Seaver, as parents and heirs of G.S., deceased filed a civil Complaint against Matthew K. Moeller and Carelli Moeller, both individually and as parents of P.M.; Robert Ainsworth and Gillian Ainsworth, both individually and as parents of J.A. and R.A. in Third Judicial District Court of Summit County, Silver Summit Department, State of Utah Civil No. 180500150, (the "Underlying Lawsuit").  A copy of the Complaint in the Underlying Lawsuit is attached hereto as Exhibit "G".

26.     Plaintiffs have provided a defense to Defendants in the Underlying Lawsuit under a full reservation of rights.

27.     This action concerns whether or not Plaintiffs have a duty to indemnify or defend Defendants against the claims in the Underlying Lawsuit.

15

28.     The Complaint in the Underlying Lawsuit states in relevant part:

### III.     FACTUAL ALLEGATIONS

10.     This civil action is the result of the death of G.S., a 13 year-old boy, on September 11, 2016.

11.     G.S.'s death was caused by ingesting the drug U-47700, also known by the slang term "Pinky" or "Pink."

12.     U-47700 is a "super-strong synthetic opioid. "

13.     U-4770 was created as a research chemical by chemist Jacob Szmuszkovicz and originally "intended to treat severe pain associated with cancer, surgery, or injury, but was never tested on humans and ended up being relegated to research."

14.     Unfortunately, "Szmuszkovicz's patent remained publicly available with detailed instructions on how to produce U-47700 leading drug labs in China and elsewhere to whip up and sell batches of the sought-after opioid."

15.     Upon information and belief, U-47700's recreational popularity grew as misinformation spread, including though internet social communities like *Reddit,* that the drug caused similar feelings as other opioids, like oxycodone or heroin, but was relatively unknown to law enforcement and DEA scheduling.

16.     If U-47700 is manufactured to the exact specifications of the patent, "it is said to be about seven and half times the strength of morphine."

17.     The following persons played a role in procuring the U-47700 ingested by G.S. on September 11, 2016 and/or distributing it to G.S. (the "Drug"): C.S. (son of Defendants Edward Shapard and Michelle Shapard), J.A. and R.A (sons of Defendants Robert Ainsworth and Gillian Ainsworth), and P.M. (Daughter of Defendants Karl and Kelli Moeller).

18.     In September 2016, C.S. (son of Defendants Edward Shapard and Michelle Shapard), J.A. (son of Defendants Robert Ainsworth and Gillian Ainsworth), P.M. (daughter of Defendants Karl and Kelli Moeller), were 10th graders at Park City High School **(PCHS).**

19.     C.S., J.A., and P.M., were friends.

20.     C.S. and J.A together purchased the Drug on the "dark web".

21.     At the time that C.S. and J .A purchased the Drug, the Drug was not listed as a Schedule I controlled substance.

22.     On November 14, 2016, the U.S. Drug Enforcement Administration listed the U-47700 as a Schedule I controlled substance making it illegal to manufacture, purchase, distribute, or possess U-47700.

23.     U-47700 should have been a Schedule I controlled substance when it was purchased by C.S and J.A. from China since it is many times more potent than morphine and caused numerous deaths during 2016.

24.     Based upon information on the internet, from sites such as Reddit and others on the dark web, at the time C.S and J.A. purchased the Drug from China, they both knew that it was extremely dangerous. The kids of all Defendant parents understood that the reason U-47700 was also known as "pink" or "pinky" was because ingesting more than a pinky nail of U-47700 could kill a person.

25.     J.A. is the older brother to R.A. who was in G.S.'s school class at Treasure Mountain Junior High School (**TMJHS**) located in or around Park City, Utah.

26.     As C.S. and J.A. were both older than G.S. and RA, they used this advantage in supplying the younger boys with U-47700, despite their knowledge that the drug was abnormally dangerous.

27.     Upon information and belief, R.A. began using opioids during the spring of 2015 and, before G.S.'s death, R.A. would suffer from symptoms of withdrawal if he could not obtain a regular supply of U-47700.

28.     R.A.'s parents, Defendant Robert and Gillian Ainsworth (the "Ainsworths"), knew or should have known that both J.A. and R.A. were using U-47700, and that R.A. was using enough U-47700 that he was addicted to it, but the Defendant Ainsworths failed to notify anyone of his addiction, including law enforcement or parents of R.A.'s friends.

29.     During May 2016, law enforcement investigated J.A. and R.A. for supplying drugs to a 12-year old girl who, after ingesting the drugs, required emergency medical treatment.

30.     The Defendant Ainsworths knew or should have known that J.A. and R.A. had supplied drugs to a 12-year old girl, but they failed to notify anyone of the investigation, including law enforcement or parents of R.A's friends.

31.     Many months before G.S.'s death, Defendant Ainsworths and Shapards knew that their sons, R.A, J.A, and C.S. were obtaining drugs from the Internet.

32.     Many months before the death of G.S., Defendant Gillian Ainsworth knew that J.A. and RA were bringing in abnormally dangerous drugs from China when staying with Defendant Robert Ainsworth.

33.     A GoPro video obtained by police after G.S.'s death discloses a conversation between G.S. and R.A where they discuss the fact that the Defendant parents discovered a $2,000 shipment of drugs from China and threw the drugs into the garbage.

34.     The Defendant parents failed to notify anyone, including law enforcement, parents, and school officials that they had discovered the $2,000 shipment of Chinese drugs.

35.     On September 13, 2016, law enforcement received approval on two search warrants for the residences of C.S.'s parents, Defendants Edward and Michelle Shapard.

36.     As part of the search warrants, law enforcement seized some computers. From one of the computers recovered from the search warrants, law enforcement located information on the computer indicating that C.S. had been searching the "dark web" and had been on at least one "dark web" marketplace, "alphabay.net," which sold, among other things, illicit drugs including U-47700.

37.     On July 20, 2017, the Department of Justice announced the takedown of the dark web market AlphaBay. From his Department of Justice's press release, Attorney General Jeff Sessions stated:

    (1)    It knew of several Americans who were killed by drugs sold on Alpha Bay;

    (2)    One victim was just 18 years old when, in February, she overdosed on a powerful synthetic opioid, which she had bought on AlphaBay. The drug was shipped right to her house through the mail;

    (3)    A little more than a week after her death, a victim in Orange County, Florida, died of an overdose from a drug bought on AlphaBay;

    (4)    And then there was G.S.. He was only 13 years old and a student at Treasure Mountain Junior High in Park City, Utah when he passed away after

overdosing on a synthetic opioid that had been
purchased by a classmate on AlphaBay.

38.     From searching the computers obtained from the
search warrants, law enforcement also discovered evidence on the
computer indicating that C.S. had probably purchased bitcoin
through at least two bitcoin exchanges - Coinbase and Paxful.

39.     When C.S., J.A, and RA., purchased the Drug, they
shipped it to P.M. and not their homes because their parents knew
that they were ordering drugs from China.

40.     In early September 2016, more than a week before
G.S.'s death, Matthew K. Moeller and Carelli Moeller (the
"Moellers") discovered a box in P.M.'s closet in which Chinese
drugs purchased by C.S., R.A., and J.A. were shipped to P.M.

41.     The Moellers failed to notify anyone that they had
discovered the box used to ship Chinese drugs to P.M., including
law enforcement or the parents of P.M.'s friends.

42.     On September 11, 2016, G.S. died as a result of
ingesting the Drug that had been purchased and/or distributed to
him by C.S., J.A, R.A, and P.M.

43.     On September 13, 2016, while at the house, and
under the supervision, of Defendant Robert Ainsworth, R.A. died
as a result of ingesting the same Drug that had been purchased
and/or distributed to G.S. by C.S., R.A, J.A, and P.M., and that had
killed G.S. two days prior.

Complaint at pp. 3-9, Exhibit "G."

29.     The Complaint in the Underlying Lawsuit  alleges causes of action of (1)

negligence, (2) negligent supervision, (3) negligent misrepresentation, and (4) abnormally

dangerous activity - strict liability.  *See* Complaint at pp. 9-15, Exhibit "G".

30.     The Complaint in the Underlying Lawsuit alleges punitive damages. *See*

Complaint at pp. 16-18, Exhibit "G".

## ACTION FOR DECLARATORY RELIEF

19

31.     Plaintiffs incorporate all allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

32.     An actual dispute and controversy has arisen between Plaintiffs and Defendants regarding whether there is coverage available under the Policies for the claims raised in the Underlying Lawsuit.

33.     There is no coverage for the Underlying Lawsuit due to expected and intended exclusions under the Policies.

34.     There is no coverage for the Underlying Lawsuit due to the controlled substance exclusions under the Policies.

35.     There is no coverage for the Underlying Lawsuit due to the criminal acts exclusions under the Policies.

36.     There is no coverage for the Underlying Lawsuit due to the punitive damages exclusions under the Policies.

37.     Based on the foregoing, a judicial determination is necessary and appropriate at this time to determine the respective rights of Plaintiffs and Defendants under the Policies.

38.     Pursuant to Rule 57 of the *Utah Rules of Civil Procedure* and *Utah Code Ann*. § 78B-6-408, Plaintiffs request a declaration from this court that:

> a.     There is no coverage for the Underlying Lawsuit due to expected and intended exclusions under the Policies.
>
> b.     There is no coverage for the Underlying Lawsuit due to the controlled substance exclusions under the Policies.

    c.      There is no coverage for the Underlying Lawsuit due to the criminal acts exclusions under the Policies.

    d.      There is no coverage for the Underlying Lawsuit due to the punitive damages exclusions under the Policies.

    e.      As coverage is precluded, Plaintiffs have not duty to defend or indemnify Defendants for the Underlying Lawsuit.

    f.      As coverage is precluded, Defendants have no right of recovery against Plaintiffs for the Underlying Lawsuit.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

1.      A declaration that:

    a.      There is no coverage for the Underlying Lawsuit due to expected and intended exclusions under the Policies.

    b.      There is no coverage for the Underlying Lawsuit due to the controlled substance exclusions under the Policies.

    c.      There is no coverage for the Underlying Lawsuit due to the criminal acts exclusions under the Policies.

    d.      There is no coverage for the Underlying Lawsuit due to the punitive damages exclusions under the Policies.

    e.      As coverage is precluded, Plaintiffs have not duty to defend or indemnify Defendants for the Underlying Lawsuit.

      f.       As coverage is precluded, Defendants have no right of recovery against

              Plaintiffs for the Underlying Lawsuit.

2.       For Plaintiff's attorneys' fees and costs incurred herein.

3.       For such other and further relief as the Court deems just and proper.

DATED this 13th day of August, 2018.

                             **SCALLEY READING BATES**
                             **HANSEN & RASMUSSEN, P.C.**

                             _____/s/ David S. Bridge_____
                             David S. Bridge
                             *Attorneys for Plaintiffs United Services*
                             *Automobile Association; USAA Casualty*
                             *Insurance Company; and Garrison Property*
                             *and Casualty Insurance Company*

Plaintiffs' Addresses:
9800 Fredericksburg Road
San Antonio, Texas 78288

# EXHIBIT A

**USAA®**

## HOMEOWNERS POLICY PACKET

EFFECTIVE: 10-27-15 TO: 09-16-16

MATTHEW KARL MOELLER
LT COL USAF RET
6006 FAIRVIEW DR
PARK CITY UT 84098-6137

USAA     00445 71 35      95A

## IMPORTANT MESSAGES

Refer to your Declarations Page and endorsements to verify that coverages, limits, deductibles and other policy details are correct and meet your insurance needs.  Required information forms are also enclosed for your review.

 1) Go to usaa.com to view policy coverages and home features.

This is not a bill.  Any premium charge or return for this policy will be reflected on your next regular monthly statement.
**To receive this document and others electronically or view your policy summary online, go to usaa.com.**
For U.S. Calls:  Policy Service (800) 531-8111.  Claims (800) 531-8222.
**HOCS1**                                                                                   49709-0406

THIS PAGE INTENTIONALLY LEFT BLANK



UNITED SERVICES AUTOMOBILE ASSOCIATION
**9800 Fredericksburg Road - San Antonio, Texas 78288**
AMENDED DECLARATIONS PAGE - EFFECTIVE 10/27/15

Named Insured and Residence Premises                          Policy Number

MATTHEW K MOELLER AND CARELLI MOELLER            USAA  00445 71 35  95A

6006 FAIRVIEW DR
PARK CITY, SUMMIT, UT  84098-6137

Policy Period From:  09/16/15      To:  09/16/16
(12:01 A.M. standard time at location of the residence premises)

| | |
|---|---|
| **SECTION I - COVERAGES AND AMOUNTS OF INSURANCE** | |
| COVERAGE A - DWELLING PROTECTION | $349,000 |
| COVERAGE B - OTHER STRUCTURES PROTECTION | $87,250 |
| COVERAGE C - PERSONAL PROPERTY PROTECTION | $261,750 |
| COVERAGE D - LOSS OF USE PROTECTION (UP TO 12 MONTHS) | UNLIMITED |
| **SECTION II - COVERAGES AND LIMITS OF LIABILITY** | |
| Personal Liability − Each Occurrence | $500,000 |
| Medical Payments to Others | $5,000 |

**DEDUCTIBLES (Applies to SECTION I Coverages ONLY)**
          We cover only that part of the loss over the deductible stated.
    ALL PERILS              $5,000

| | |
|---|---|
| **POLICY PREMIUM for Section I and Section II Coverages Above** | $665.06 |
| **CREDITS AND DISCOUNTS** (Included in policy premium above.) Details on the following page. (If applicable) | $363.51 CR |
| **OTHER COVERAGES AND ENDORSEMENTS** Forms and Endorsements are printed on the following page. | $364.49 |
| **STATE SURCHARGES AND TAXES** (Shown below if applicable) | |

**TOTAL POLICY PREMIUM**
  Including Credits, Discounts, Optional Coverages, Endorsements, State Surcharges and Taxes
                                                              $1,029.55

|                    **TOTAL PRORATED RETURN** | $10.06 |
|---|---|

 PREMIUM DUE AT INCEPTION. THIS IS NOT A BILL. STATEMENT TO FOLLOW.

**FIRST MORTGAGEE:**
WELLS FARGO BANK, N.A. #936            LOAN NR      0489403642
ITS SUCCESSORS AND/OR ASSIGNS
PO BOX 100515
FLORENCE, SC 29502-0515

In witness whereof, this policy is signed on  10/26/15

*Laura Bishop*
                Laura Bishop
President, USAA Reciprocal Attorney-in-Fact, Inc.
          **REFER TO YOUR POLICY FOR OTHER COVERAGES, LIMITS AND EXCLUSIONS.**

HO-D1 (07–08)          ATTACH THIS DECLARATION TO PREVIOUS POLICY          87028-0708

PAGE   4



UNITED SERVICES AUTOMOBILE ASSOCIATION
AMENDED DECLARATIONS PAGE – EFFECTIVE        10/27/15

**Policy Number**                    **Policy Term:**   09/16/15        09/16/16
USAA   00445 71 35     95A                            **Inception**      **Expiration**


POLICY AND ENDORSEMENTS THAT ARE PART OF YOUR CONTRACT WITH US.

REMAIN IN EFFECT (Refer to prior Policy Packet(s) for documents not attached.):
```
        QR9(02)       (07-08) QUICK REFERENCE-PREFERRED PROTECTION
        HO-9R(02)     (07-08) PREFERRED PROTECTION PLAN
        HO-ACP        (07-12) AMENDMENT TO CONTRACT PROVISIONS
        HO-UT         (07-08) UTAH SPECIAL PROVISIONS
        HOSLS9(02)    (07-08) SPECIAL LOSS SETTLEMENT
        HO-208        (07-12) WATER BACKUP OR SUMP PUMP OVERFLOW
        HO-82         (07-08) PERSONAL INJURY LIABILITY            $18.47
ADDED:
        HO-370        (07-08) EARTHQUAKE                          $346.02
```

YOUR PREMIUM HAS BEEN REDUCED BY THE FOLLOWING CREDITS AND DISCOUNTS:
```
    AUTO AND HOME COMBINATION DISCOUNT       $114.39 CR
    CLAIMS FREE DISCOUNT                     $114.39 CR
    HOME AGE DISCOUNT                        $134.73 CR
```

REASON(S) FOR CHANGE:

```
CHANGE   OTHER STRUCTURES LIMIT
         DEDUCTIBLE CLAUSE
```

**HO-D2** (07-08)                    10/26/15

87029-0708

LAST PAGE    5
USAA   00445 71 35    95A

HO-370 (07-08)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EARTHQUAKE

For an additional premium, we insure for direct physical loss to property covered under SECTION I–PROPERTY WE COVER of the policy to which this endorsement is attached caused by earthquake including land shock waves or tremors before, during or after a volcanic eruption.

One or more earthquake shocks that occur within a seventy–two hour period shall constitute a single earthquake.

The amounts of insurance for earthquake coverage are the same as the amounts of insurance applying to SECTION I–PROPERTY WE COVER in the policy to which this endorsement is attached.

**DEDUCTIBLE**

The following deductible provision applies to any loss covered by this endorsement and, in that respect replaces any deductible provision in the policy to which this endorsement is attached:

We will pay only that part of the loss which exceeds  10      % of the amount of insurance for Coverage A - DWELLING.

This deductible will apply separately to each single earthquake.

If any other endorsement attached to this policy allows you to make claim for an additional amount above the amount of insurance shown on the policy Declarations, the combined total will be used to calculate the deductible amount.

This deductible does not apply to Coverage D Loss of Use Protection.

**SPECIAL EXCLUSION**

We do not cover loss resulting directly or indirectly from flood of any nature or tidal wave, whether caused by, resulting from, contributed to or aggravated by earthquake.

Except as specifically modified in this endorsement, all provisions to the policy to which this endorsement is attached also apply to this endorsement.

**Term Premium**        $346.02

Copyright, USAA, 2008. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# AGREEMENT

In return for payment of premium and subject to all terms of this policy, we will provide the insurance described.

# DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse when a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance. Certain words and phrases are defined and are printed in boldface and quotation marks when used.

1. **"Actual cash value"** is calculated as the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. **"Actual cash value"** applies to valuation of covered property regardless of whether that property has sustained partial loss or total loss. The **"actual cash value"** of lost or damaged property may be significantly less than its replacement cost.

2. **"Aircraft"** means any conveyance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

3. **"Bodily injury"** means physical injury, sickness or disease, including required care, loss of services and death that results.

   **"Bodily injury"** does not include mental injuries such as: emotional distress, mental anguish, humiliation, mental distress, or any similar injury unless it arises out of physical injury to the person claiming a mental injury.

4. **"Business"** means any full or part-time activity arising out of or related to any trade, profession or occupation of any **"insured"**.

5. **"Collapse"** means:

   a. A sudden falling or caving in;

   b. A sudden breaking apart or deformation such that the building or part of a building is in imminent peril of falling or caving in and is not fit for its intended use.

   Damage consisting solely of settling, cracking, shrinking, bulging or expansion is not covered by this additional insurance unless it is the direct result of **"collapse"**.

6. **"Damages"** means compensatory damages the **"insured"** is legally obligated to pay as a result of **"bodily injury"** or **"property damage"** covered by this insurance, but does not include punitive, exemplary or multiple damages.

7. **"Fungus"** means any microorganism or by-product of any microorganism, including but not limited to mold, mildew, fungi, mycotoxins and spores.

8. **"Hovercraft"** means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles.

9. **"Insured"** means:

   a. The **"member"**

   b. Spouse when a resident of the same household; and

   c. Residents of your household who are:

      (1) Your relatives; or

(2) Other persons under the age of 21 and in care of any person named above.

Under SECTION II, **"insured"** also means:

d. With respect to animals, **"watercraft"** or **"personal watercraft"** to which this policy applies, any person or organization legally responsible for these animals, **"watercraft"** or **"personal watercraft"** which are owned by you or any person included in 9.a, 9.b or 9.c. above. A person or organization using or having custody of these animals, **"watercraft"** or **"personal watercraft"** in the course of any **"business"** or without consent of the owner is not an **"insured"**.

e. With respect to any vehicle or conveyance to which this policy applies:

(1) **"Residence employees"** while engaged in your employ or that of any person included in 9.a, 9.b. or 9.c. above; or

(2) Other persons using the vehicle on an **"insured location"** with your consent.

10. **"Insured location"** means:

a. The **"residence premises"**;

b. Any premises used by you in connection with 10.a. above;

c. Any part of a premises:

(1) Not owned by any **"insured"**; and

(2) Where any **"insured"** is temporarily residing;

d. Vacant land, other than farm land owned by or rented to any **"insured"**;

e. Land owned by or rented to any **"insured"** on which a one or two family dwelling is being built as a residence for any **"insured"**;

f. Individual or family cemetery plots or burial vaults of any **"insured"**; or

g. Any part of a premises occasionally rented to any **"insured"** for other than **"business"** use.

11. **"Member"** means the owner of the policy who is the person who meets all eligibility requirements for membership and whose membership  number is shown in the Declarations of this policy.

12. **"Motor vehicle(s)"** means any type of motorized land vehicle or conveyance, whether or not subject to motor vehicle registration.

13. **"Named peril(s)"** means one or more of the perils listed under LOSSES WE COVER – PERSONAL PROPERTY PROTECTION.

14. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a. **"Bodily injury"**; or

b. **"Property damage"**.

15. **"Personal watercraft"** means a conveyance, used or designed to be used on water that uses a jet pump powered by an internal combustion engine as the primary source of propulsion.

16. **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

17. **"Professional services"** means any type of service to the public that requires members rendering a service to obtain an advanced degree and/or obtain a license or other legal authorization to provide the service and includes, but is not limited to services rendered by dentists, naturopaths, chiropractors, physicians and surgeons, doctors of dentistry, physical therapists, occupational therapists, podiatrists, optometrists, nurses, nurse-midwives,

veterinarians, pharmacists, architects, landscape architects, engineers, accountants, land surveyors, psychologists, attorneys-at-law, therapists, counselors and social workers.

18. **"Property damage"** means physical damage to, or destruction of tangible property, including loss of use of this property.

19. **"Residence employee"** means an employee of any **"insured"** whose primary duties are related to the maintenance or use of the **"residence premises"**, including household or domestic service.

20. **"Residence premises"** means:

   1. The one family dwelling, other structures, and grounds; or

   2. That part of any other building;

Where you reside and which is shown as the **"residence premises"** in the Declarations.

**"Residence premises"** also means a two, family dwelling where you reside in at least one of the family units and which is shown as the **"residence premises"** in the Declarations.

21. **"Sudden and accidental"** means an abrupt, fortuitous event which is unintended from the perspective of a reasonable person.

22. **"War"** means war whether declared or undeclared; civil war; insurrection; rebellion; revolution; any warlike act by friendly or enemy forces, destruction or seizure for a military purpose.

23. **"Watercraft"** means a conveyance principally designed to be propelled on or in water by wind, current, paddles, oars, engine power or electric motor.

# DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the applicable amount of insurance that applies, we will pay only that part of the total of all loss payable under SECTION I - PROPERTY WE COVER that exceeds the deductible amount shown in the Declarations.

# SECTION I - PROPERTY WE COVER

**COVERAGE A - Dwelling Protection**

We cover:

1. The dwelling on the **"residence premises"** shown in the Declarations, including structures attached to the dwelling;

2. Materials and supplies located on or next to the **"residence premises"** used to construct, alter, or repair the dwelling or other structures on the **"residence premises"**; and

3. Custom or permanently installed window treatments and permanently installed carpeting.

Except as specifically provided in SECTION I - ADDITIONAL COVERAGES, Land, we do not cover land, including land on which the dwelling is located.

**COVERAGE B - Other Structures Protection**

We cover:

1. Other structures on the **"residence premises"**.

   a. We cover other structures on the **"residence premises"**:

      (1) Set apart from the dwelling by clear space; and

      (2) Sidewalks, driveways and fences; and

(3) Structures connected to the dwelling by only a fence, utility line, or similar connection.

b. We do not cover:

(1) Land, except as specifically provided in SECTION I  ADDITIONAL COVERAGES, Land, we do not cover land, including land on which the other structures are located;

(2) Structures used in whole or part for **"business"** unless such use consists solely of use of office space for paperwork, computer work or use of a telephone, and consists solely of activities that are:

(a) Duties of any **"insured's"** employment by another; and

(b) Performed solely by an **"insured"**.

**2.** Other Structures away from the **"residence premises"**.

a. We cover other structures owned by you and located away from the **"residence premises"**, if used by you in connection with the **"residence premises"**.

b. We do not cover:

(1) Other structures located away from the **"residence premises"**:

(a) Being used as a dwelling; or

(b) Capable of being used as a dwelling; or

(c) Used in whole or part for **"business"**; or

(2) Land, including land on which the other structure is located.

The amount of insurance for all structures will not be more than the amount of insurance shown in the Declarations for Other Structures Protection.

**COVERAGE C – Personal Property Protection**

We cover;

Tangible personal property owned or used by any **"insured"** while it is anywhere in the world. After a loss and at your request, we will cover the loss of personal property owned by:

**1.** Others while the property is on the part of the **"residence premises"** occupied by any **"insured"**;

**2.** A guest or a **"residence employee"**, while the property is in any residence occupied by any **"insured"**.

The amount of insurance for personal property usually located at any **"insured's"** residence, other than the **"residence premises"** is limited to 10% of the amount of insurance for Personal Property Protection, or $1,000, whichever is greater.

Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Amounts of Insurance.** The special amounts set out below do not increase the Personal Property Protection amount of insurance. The special amount for each numbered category below is the total amount for each loss for all property in that category.

**1.** $200 for money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards, smart cards and gift certificates including electronic gift certificates.

**2.** $1,000 for securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

This limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

3. $1,500 for **"watercraft"** or **"personal watercraft"** including their trailers, furnishings, equipment and outboard motors.

4. $1,500 for trailers not used with **"watercraft"** or **"personal watercraft"**.

5. $10,000 for loss by theft of jewelry, watches, precious and semi-precious stones, fur garments, including any garment containing fur, which represents its principal value.

6. $2,500 on stamps, trading cards and comic books, including any of these that are part of a collection.

7. $10,000 for loss by theft of firearms.

8. $10,000 for loss by theft of silverware, silver-platedware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This category includes but is not limited to flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

9. (a) $10,000 for tangible **"business"** property at your residence.
   (b) $1000 for tangible **"business"** property away from your residence.

10. $3,000 on motorized golf carts and their equipment and accessories. But if, at the time of loss, there is any other insurance covering physical loss to golf carts, then this policy does not apply.

11. $3,000 for motorized vehicles designed or modified to operate at speeds not to exceed 15 miles per hour and for use off public roads. However, this limit does not apply to vehicles not subject to motor vehicle registration which are:
   a. Used to service any **"insured's"** residence, or
   b. Designed for assisting the handicapped.

**Property We Do Not Cover.**

1. Personal property separately described and specifically insured in this or other insurance.

2. Animals, birds or fish.

3. **"Motor vehicle(s)"**. This includes but is not limited to:
   a. Equipment, accessories, and parts; or
   b. Any device or instrument for the transmitting, recording, receiving or reproduction of data, sound or pictures which is permanently installed in a **"motor vehicle"**. We do not cover antennas, tapes, wires, discs or other media, for use with any such device or instrument, while in or upon the **"motor vehicle"**.

   We do cover **"motor vehicle(s)"** or all other motorized land conveyances not subject to motor vehicle registration which are:
   a. Used to service any **"insured's"** residence; or
   b. Designed for assisting the handicapped.

   We also cover:
   a. Motorized golf carts and their equipment and accessories; and
   b. Motorized vehicles designed or modified to operate at speeds not to exceed 15 miles per hour and for use off public roads

   subject to the provisions under Special Amounts of Insurance.

4. **"Aircraft"** and parts.

5. **"Hovercraft"** and parts.

6. Personal property of roomers, roommates, boarders, or other tenants. This does not apply to property of roomers, roommates, boarders or other tenants who qualify as **"insureds"**

7. Personal property in an apartment regularly rented or held for rental to others by any **"insured"**, except as provided in ADDITIONAL COVERAGES, Landlord's Furnishings.

8. Property rented or held for rental to others off the **"residence premises".**

9. **"Business"** data, records, recordings, images and photographs including such data stored in:

   a. Books of account, drawings or other paper records; or,

   b. Electronic storage media.

   However, we do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market.

10. Personal data, records, recordings, images, and photographs, regardless of storage media. This includes songs, movies and other audio or video media which you purchase and download onto a computer or portable electronic media player, other than as provided in ADDITIONAL COVERAGES, Electronic Media. However, we do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market.

11. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in ADDITIONAL COVERAGES, Credit Card Coverage and Identity Fraud Expense Coverage.

## COVERAGE D – Loss of Use Protection

The amount of insurance for Loss of Use shown on the Declarations is the total limit for all the coverages that follow.

1. **Additional Living Expense.** If a loss covered under Section I – LOSSES WE COVER makes that part of the **"residence premises"** where you reside uninhabitable, we cover the reasonable and necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

   Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event, not to exceed 12 months.

   However, if a loss covered under Section I – LOSSES WE COVER results from an event which is assigned a Property Claims Service (PCS) catastrophe code, payment will be the for the shortest time required to repair or replace the damage, or if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event not to exceed 24 months. This extension does not increase the amount of insurance provided under Loss of Use Protection.

2. **Fair Rental Value.** If a loss covered under Section I – LOSSES WE COVER makes that part of the **"residence premises"** rented to others or held for rental by you uninhabitable, we cover the fair rental value of that part of the **"residence premises"** rented to others or held for rental by you less any expenses that do not continue while the premises is uninhabitable.

   Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental, but not to exceed 12 months.

3. **Prohibited Use.** If a loss covered under Section I – LOSSES WE COVER results in an order from a civil authority prohibiting you from use of the **"residence premises"** as a result of direct damage to neighboring premises by a loss covered under Section I – LOSSES WE COVER, we cover the Additional Living Expense or Fair Rental Value loss as provided under 1. and 2. above for not more than two weeks. A neighboring premises is defined as a premises that is adjacent to the **"residence premises".**

The periods of time under 1., 2., and 3. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

Except as provided by ADDITIONAL COVERAGES Fungus, or Wet or Dry Rot, the coverage afforded under 1., 2. and 3. does not apply to loss caused by **"fungus"**, or wet or dry rot.

No deductible applies to the coverage afforded under 1, 2. and 3. above.

# ADDITIONAL COVERAGES

Unless specifically addressed elsewhere in this policy, the coverages provided below are the only coverages provided for the following:

1. **Debris Removal**

   a. We will pay your reasonable expense for the removal of:

      (1) Debris of covered property if loss to the damaged property is covered under Section I - LOSSES WE COVER; or

      (2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

      This expense is included in the amount of insurance that applies to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the amount of insurance for the damaged property, an additional 5% of that amount of insurance will be available to cover debris removal expense.

   b. We will also pay your reasonable expense, up to $1,000 in the aggregate, for the removal from the **"residence premises"** of:

      (1) Your tree(s) felled by the peril of windstorm or hail, or weight of ice, snow or sleet; or

      (2) A neighbor's tree(s) felled by a loss covered under **"named peril(s)"**.

      provided the tree(s)

      (3) Damage(s) a covered structure; or

   (4) Does not damage a covered structure; but

      (a) Blocks a driveway on the **"residence premises"** which prevents a **"motor vehicle"** that is registered for use on public roads or property, from entering or leaving the **"residence premises"**; or

      (b) Blocks a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

      The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

      This coverage reduces the amount of insurance that applies to the covered property.

      The policy deductible applies.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable loss under Section I - LOSSES WE COVER, we will pay the reasonable expense incurred by you, for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable loss under Section I - LOSSES WE COVER. This coverage reduces the amount of insurance that applies to the covered property and does not relieve you of your duties in case of a loss to covered property, as set forth in Section I - CONDITIONS 2.d.

The policy deductible applies.

**3. Trees, Shrubs and Other Plants.**

We cover trees, shrubs, plants, lawns or landscaping on the **"residence premises"**; for loss caused by the following Losses We Cover: Fire or Lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **"residence premises"**, Vandalism or malicious mischief or Theft.

We will pay up to 5% of the amount of insurance that applies to the dwelling for all trees, shrubs, plants, lawns or landscaping. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for **"business"** purposes.

This coverage is additional insurance and does not reduce the amount of insurance.

The policy deductible applies.

**4. Fire Department Service Charge.**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a loss under Section I  LOSSES WE COVER.

This coverage is additional insurance and does not reduce the amount of insurance.

No deductible applies to this coverage.

**5. Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a loss under Section I – LOSSES WE COVER and for no more than 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property.

This coverage reduces the amount of insurance that applies to the property being removed.

The policy deductible applies.

**6. Credit Card Coverage and Identity Fraud Expense Coverage.**

We will pay up to $5,000 in the aggregate for all loss and defense costs resulting from **Credit Card Coverage** and **Identity Fraud Expense Coverage.**

For the purposes of **Credit Card Coverage** and **Identity Fraud Expense Coverage**, a series of acts committed by any one person in which any one person is concerned or implicated is considered to be one loss, even if a series of acts continues into a subsequent policy period.

a.  **Credit Card Coverage** also includes, fund transfer cards, forgery and counterfeit money. Under **Credit Card Coverage**, we pay for all loss and defense costs resulting from:

(1)  The legal obligation of any **"insured"** to pay because of the theft or unauthorized use of credit cards issued to or registered in any **"insured's"** name;

(2)  Loss resulting from theft or unauthorized use of electronic fund transfer cards or access devices used for deposit, withdrawal or transfer of funds, issued to or registered in any **"insured's"** name;

(3)  Loss to any **"insured"** caused by forgery or alteration of any **"insured's"** check or negotiable instrument written on an **"insured's"** bank account.  This does not include loss by the acceptance of a forged, altered or counterfeit check, or other negotiable instrument, by an **"insured".**

(4)  Loss to any **"insured"** through acceptance in good faith of counterfeit United States or Canadian paper currency.

For losses covered by this additional insurance we will provide defense as follows:

(1) We may investigate and settle any claim or suit as we deem to be appropriate. Our duty to defend a claim or suit ends when the amount we pay or tender for the loss equals the applicable amount of insurance.

(2) If a suit is brought against any **"insured"** as a result of theft or unauthorized use of a credit card or fund transfer card, we will provide a defense at our expense by counsel of our choice. We have the option to defend at our expense any **"insured"** against any suit for the enforcement of payment under the forgery coverage.

This is additional insurance and does not reduce the amount of insurance.

No deductible applies to **Credit Card Coverage.**

b.  **Under Identity Fraud Expense Coverage,** we pay for **"expenses"** and defense costs incurred by any **"insured"** as the direct result of **"identity fraud".**

With respect to the provisions of this coverage only, the following definitions are added:

**"Identify Fraud"** means the act of knowingly transferring or using, without lawful authority, a means of identification of any **"insured"** with the intent to commit, or aid or abet, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

**"Expenses"** means:

(1) Costs for notarizing fraud affidavits or similar documents for financial institutions or similar credit grantors or credit agencies that have required that such affidavits be notarized;

(2) Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors;

(3) Lost wages as a result of time taken off from work to meet with, or talk to, law enforcement agencies, credit agencies, merchandise, and/or legal counsel, or to complete fraud affidavits, not to exceed $250 per day;

(4) Loan application fees for re-applying for a loan or loans when original application is rejected solely because the lender received incorrect credit information resulting from **"identity fraud":**

(5) Reasonable attorney fees incurred, with our prior consent, for:

    (a) Defense of lawsuits brought against the **"insured"** by merchants or their collection agencies; and

    (b) The removal of any criminal or civil judgments wrongly entered against an **"insured".**

(6) Charges incurred for long distance telephone calls to merchants, law enforcement agencies, financial institutions or similar credit grantors, or credit agencies to report or discuss an actual **"identity fraud";**

(7) Research fees charged by merchants, financial institutions or similar credit grantors, or credit agencies resulting from **"identity fraud".**

This coverage is additional insurance and does not reduce the amount of insurance.

A $100 deductible applies to **Identity Fraud Expense Coverage.**

The following exclusions apply to **Credit Card Coverage** and **Identity Fraud Expense Coverage**:

(1) We do not cover forgery, theft or use of a credit card, electronic fund transfer card or access device:

    (a) By a resident of your household or any **"insured"**;

    (b) By a person who has been entrusted with the card(s) or device(s);

    (c) If any **"insured"** has not complied with all terms and conditions under which the cards or devices are issued.

(2) We do not cover loss arising out of **"business"** pursuits, dishonesty, fraud, or criminal activity of any **"insured"**.

7. **Loss Assessment.** We will pay up to $10,000 for your share of loss assessment charged against you by a corporation or association of property owners for an event that occurs during the policy period, when the assessment is made as a result of **"sudden and accidental"** direct physical loss to the property, owned by all members collectively, caused by a loss under Section I – LOSSES WE COVER for **DWELLING PROTECTION COVERAGE AND OTHER STRUCTURES PROTECTION COVERAGE**, subject to all provisions of the policy.

This coverage does not apply to assessments made as a result of damage caused by:

    a. Earthquake; or

    b. Land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the **"residence premises"**.

We do not cover loss assessments charged against you or a corporation or association of property owners by any government body.

The limit of $10,000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

This coverage is not limited by the expiration of this policy.

This coverage is additional insurance and does not reduce the amount of insurance.

No deductible applies to this coverage.

8. **"Collapse"** For an entire building or any part of a building covered by this insurance we insure for direct physical loss to covered property involving **"collapse"** of a building or any part of a building only when the **"collapse"** is caused by one or more of the following:

    a. **"Named peril(s)"** apply to covered buildings and personal property for loss insured by this additional coverage.

    b. Decay that is hidden from view, meaning damage that is unknown prior to collapse or that does not result from a failure to reasonably maintain the property;

    c. Insect or vermin damage that is hidden from view, meaning damage that is unknown prior to **"collapse"** or that does not result from a failure to reasonably maintain the property;

    d. Weight of contents, equipment, animals or people;

    e. Weight of rain which collects on a roof; or

    f. Use of defective material or methods in construction, remodeling or renovation if the **"collapse"** occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, water well, cistern, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the loss is a direct result of the **"collapse"** of a building.

This coverage reduces the amount of insurance that applies to the damaged covered property.

The policy deductible applies.

9. **Lock Replacement.** When the dwelling door keys are stolen in a covered theft loss, we will pay the cost to:

  a.  Change the combination in the lock hardware of the doors, or

  b.  Change the lock hardware of the doors.

The most we will pay for Lock Replacement is $250. No deductible applies to this coverage.

10. **Refrigerated Products**. We will pay you up to $500 for loss to the contents of a freezer or a refrigerator located on your **"residence premises"**, as a consequence of power failure or mechanical breakdown. This $500 limit is the most we will pay in any one loss regardless of the number of freezers or refrigerators.

The Power Failure exclusion under Section I – LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION does not apply to Refrigerated Products.

This coverage does not increase the Personal Property Protection amount of insurance.

No deductible applies to this coverage.

11. **Land.** If a loss covered under Section I – LOSSES WE COVER damages a building on the **"residence premises"** insured under Dwelling Protection or Other Structures Protection and the same loss causes the land necessary to support the building insured under Dwelling Protection or Other Structures Protection to become unstable, we will pay up to $10,000 for the cost required to replace, rebuild, stabilize or otherwise restore such land.

This coverage is additional insurance and does not reduce the amount of insurance.

The policy deductible applies.

12. **Glass or Safety Glazing Material**

We cover:

  a.  The breakage of glass or safety glazing material caused by a loss under Section – I  LOSSES WE COVER, which is part of a covered building, storm door or storm window; and

  b.  Damage to covered property by glass or safety glazing material which is part of a building storm door or storm window.

This coverage does not include loss on the **"residence premises"** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. An **"insured"** dwelling being constructed is not considered vacant.

This coverage reduces the amount of insurance that applies to the damaged property.

The policy deductible applies.

13. **Landlord's Furnishings.**  We will pay up to $2,500 for your appliances, your carpeting and other household furnishings located in an apartment on the **"residence premises"** regularly rented or held for rental to others by any **"insured"**, for loss caused by **"named peril(s)"**, other than Theft.

The $2,500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishing involved in the loss.

This coverage reduces the Personal Property Protection amount of insurance.

The policy deductible applies.

14. **Building Ordinance or Law.** For loss caused by a loss under Section I – LOSSES WE COVER to buildings under Dwelling Protection and Other Structures Protection, we will pay the increased costs which are required and you actually incur to comply with any ordinance or law governing the rebuilding, repair or demolition of the damaged property.

    The limit for this coverage will not be more than 5% of the Coverage A – Dwelling Protection amount of insurance.

    This coverage is additional insurance and does not reduce the Dwelling Protection amount of insurance.

    The policy deductible applies.

15. **Temporary Living Expense.** We will pay up to $2,000 for necessary increase in costs which you incur to maintain your normal standard of living when the **"residence premises"** is uninhabitable due to a loss caused by earthquake, volcanic eruption, landslide, or if a civil authority prohibits your use of the **"residence premises"** because an earthquake, volcanic eruption or landslide has occurred. This coverage is additional insurance and does not reduce the Loss of Use Protection amount of insurance.

    No deductible applies to this coverage.

16. **Fungus, Or Wet or Dry Rot.**

    1. We will pay up to a total of $2,500 for:

       a. The cost to treat, remove or dispose of **"fungus"**, or wet or dry rot, from covered property;

       b. The cost to tear out and replace any part of the building or other covered property as needed to gain access to the **"fungus"**, or wet or dry rot, and/or

       c. The cost to test, to detect, measure or evaluate air or property to confirm the absence, presence or level of **"fungus"**, or wet or dry rot, whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reasonable probability that there is the presence of **"fungus"**

       which is the direct result of a loss under Section I – LOSSES WE COVER.

    2. We will pay up to $2,000 for the necessary increase in costs which you incur to maintain your normal standard of living when the **"residence premises"** is uninhabitable due to a loss caused by, resulting from, or consisting of **"fungus"**, or wet or dry rot, which is the direct result of Section I – LOSSES WE COVER.

    This coverage is additional insurance and does not reduce the amount of insurance.

    No deductible applies to this coverage once the policy deductible has been met.

17. **Military Uniforms and Equipment.** We will waive your deductible for loss to uniforms and military equipment, owned by you, including but not limited to clothing, insignia, flight cases, headsets, personal body armor and GPS devices for a loss caused by **"named peril(s)"** while you are on active or active reserve duty.

    This coverage reduces the Personal Property Protection amount of insurance.

    No deductible applies to this coverage.

**18. War.** To the extent that coverage for **"war"** is provided here, item 1. f. under LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION and the **"war"** exclusion in any endorsement attached to this policy do not apply.

We will pay up to $10,000 for:

a. Direct loss or damage to your personal property caused by **"war"**; or:

b. Abandonment as a consequence of **"war"**

subject to the following conditions:

This coverage applies only:

a. To any **"insured"** who is subject to government reimbursement for loss to personal property under 31 USC 3721, commonly referred to as the Military Personnel and Civilian Employees Claims Act, as amended and supplemented, or any successor or replacement act; and

b. To loss that occurs anywhere outside the Continental United States, Alaska and Hawaii.

In addition to compliance with the other provisions of **Your Duties After Loss**, you must:

a. Report your claim to the U.S. Government, its affiliate or agency, and comply with its requirements;

b. Send us, within 60 days after our request, copies of all actual documents which outline the basis of the government's reimbursement for your loss including the amount paid.

The **Suit Against Us** clause is changed for loss by **"war"** only:

No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of payment by the government.

The **Loss Settlement** clause in this policy is changed for loss by **"war"** only to read:

**"War"** loss to personal property under this policy is not payable until the U.S. Government has made its final payment to you for the loss under 31 USC 3721 as amended and supplemented, or any successor or replacement act.

Subject to all policy provisions, our payment will be the total amount of your loss minus the U.S. government payment.

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss, and satisfactory evidence of the amount of the U.S. Government payment, or we reach an agreement with you.

This coverage reduces the Personal Property Protection amount of insurance.

No deductible applies to this coverage.

**19. Electronic Media**, meaning songs, movies and other audio or video media, which you purchased and downloaded onto a computer or portable electronic media player. We will pay up to $250 for a loss covered under **"named peril(s)",** provided that you maintain records to document the actual purchase of this media. This coverage does not include personal data or records.

This coverage is additional insurance and does not reduce the Personal Property Protection amount of insurance.

The policy deductible applies.

# SECTION I - LOSSES WE COVER

**COVERAGE A – DWELLING PROTECTION COVERAGE AND COVERAGE B – OTHER STRUCTURES PROTECTION COVERAGE**

We insure against **"sudden and accidental"**, direct, physical loss to tangible property described in PROPERTY WE COVER - Coverages A and B unless excluded in Section I - LOSSES WE DO NOT COVER.

**COVERAGE C – PERSONAL PROPERTY PROTECTION**

We insure against **"sudden and accidental"**, direct, physical loss to tangible property described in PROPERTY WE COVER - Coverage C caused by a peril listed below unless the loss is excluded in **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION.**

1. **Fire or lightning.**

2. **Windstorm or hail.**

    This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand, or dust enters through this opening.

    This peril includes loss to the **"watercraft"**, **"personal watercraft"**, and their trailers, furnishings, equipment and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **"Aircraft"**, including self-propelled missiles and spacecraft.

6. **Vehicles**, meaning damage caused by or resulting from an impact with a **"motor vehicle"**. This does not include damage to personal property being transported by a **"motor vehicle"** unless this vehicle is itself involved in a collision.

7. **Smoke**, meaning **"sudden and accidental"** damage from smoke.

    This peril does not include loss caused by smoke from agricultural smudging or industrial smudging or operations.

8. **Vandalism or malicious mischief.**

9. **Theft**, including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

    This peril does not include loss caused by theft:

    a. Committed by any **"insured"** or any other person regularly residing on any part of the **"insured location"** for a period in excess of thirty consecutive days, if other permanent residency is established or claimed elsewhere;

    b. In or to a dwelling under construction, or materials and, supplies for use in the construction until the dwelling is finished and occupied; or

    c. From that part of a **"residence premises"** rented by any **"insured"** to a person who does not qualify as an **"insured"**

    This peril does not include loss caused by theft that occurs away from the **"residence premises"** of:

    a. Property while at any other residence owned by, rented to, or occupied by any **"insured"** unless the **"insured"** has stayed at the temporary residence at any time during the 60 days immediately before the loss.

    b. **"Watercraft"**, or **"personal watercraft"** including their furnishings, equipment and outboard motors; or

    c. Trailers and campers.

HO-9R(02)  (07-08)

**10. Falling objects.**

This peril does not include loss to property contained in a building unless the roof or an outside wall of a building is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight of ice, snow or sleet,** which causes damage to property contained in a building.

**12. Discharge or overflow** of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance. A plumbing system does not include a sump pump or sump well designed to drain subsurface water from the interior foundation area even if such overflow results from the mechanical breakdown of the sump pump.

This peril does not include loss:

a.  To the system or appliance from which the water or steam escaped; or

b.  Caused by or resulting from freezing except as provided in the peril of Freezing below; or

c.  On the **"residence premises"** caused by discharge or overflow which occurs off the **"residence premises"**.

**13. Tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

**14. Freezing of a plumbing**, heating, air conditioning or automatic fire protective system or of a household appliance.

This peril does not include loss on the **"residence premises"**, if you have failed to:

a.  Maintain heat in the building; or

b.  Shut off the water supply and drain the system and appliances of water.

**15. Damage from artificially generated electrical current.**

**16. Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

---

# SECTION I – LOSSES WE DO NOT COVER

**LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION.**

**1.**  Unless otherwise stated in 3. below we do not insure for damage consisting of or caused directly or indirectly by any of the following, regardless of:

(i)  The cause of the excluded event or damage that; or

(ii)  Other causes of the loss that; or

(iii)  Whether the event or damage occurs, suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of these to; or

(iv)  Whether other causes or events act concurrently or in any sequence with the excluded event to

produce the loss.

a.  Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion does not apply if you have:

(1)  Maintained heat in the building; or

(2)  Shut off the water supply and drained the system and appliances of water;

b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

    (1) Swimming pool, hot tub, or spa, including their filtration and circulation system; or

    (2) Fence, pavement, patio; or

    (3) Foundation, retaining wall or bulkhead; or

    (4) Pier, wharf or dock.

c. Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

d. Vandalism and malicious mischief or breakage of glass and safety glazing materials, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 180 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

e. Constant or repeated seepage or leakage of water or steam over a period of 14 days or more from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance;

f. Wear and tear, marring, deterioration;

g. Mechanical breakdown, latent defect, inherent vice, or any quality of the property that causes it to damage or destroy itself;

h. Smog, rust, electrolysis or other corrosion;

i. Smoke from agricultural smudging or industrial operations;

j. Discharge, dispersal, seepage, migration, release or escape of **"pollutants"** unless the discharge, dispersal, seepage, migration, release or escape is itself caused by **"named peril(s)"** of this policy.

k. Settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

l. Birds, rodents, insects;

m. Animals owned or kept by any **"insured".**

n. Vermin meaning animals, other than (m.) above, that access real or personal property for foraging or shelter and by their presence cause damage to such property. Vermin include, but are not limited to armadillos, bats, beavers, coyotes, ferrets, opossums, porcupines, raccoons, skunks and squirrels.

o. Nesting, infestation, discharge or release of waste products or secretions, by any birds, rodents, insects, vermin, or animals owned or kept by an **"insured".**

p. Pressure from, or presence or intrusion of tree, shrub or plant roots.

**2.** If items 1.f. through 1.p. above cause water damage which is not otherwise excluded, we cover the resulting water damage, including the cost of tearing out and replacing any part of a building necessary to repair a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance. We do not cover loss to the system or appliance from which this water escaped.

**3.** If any items in 1. above directly causes a **"named peril(s)"** to occur, the resulting damage produced by the **"named peril(s)"** is covered unless otherwise excluded or excepted elsewhere in this policy.

**LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION:**

1. We do not insure for damage consisting of or caused directly or indirectly by any of the following regardless of:

    (i) The cause of the excluded event or damage that; or

    (ii) Other causes of the loss that; or

    (iii) Whether the event or damage occurs, suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of these to; or

    (iv) Whether other causes or events act concurrently or in any sequence with the excluded event to

    produce the loss.

    a. **Ordinance or Law**, meaning the increased cost of demolition, repairs or rebuilding due to the enforcement or compliance with any ordinance or law regulating the construction, repair or demolition of a building or other structure other than as provided in ADDITIONAL COVERAGES, Building Ordinance or Law.

    b. **Earth Movement** arising from or caused by or resulting from human or animal forces or any act of nature, meaning:

        (1) Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

        (2) Landslide; mudslide or mudflow;

        (3) Subsidence, sinkhole, erosion or movement resulting from improper compaction, site selection or any other external forces;

    (4) Earth sinking, rising or shifting, expanding or contracting of earth, all whether combined with water or not;

    unless direct loss by fire, theft, explosion, or breakage of glass or safety glazing material which is part of a building, storm door or storm window results and then we will pay only for the resulting loss.

    c. **Water Damage** arising from, caused by or resulting from human or animal forces, any act of nature, or any other source. Water damage means damage caused by or consisting of:

        (1) Flood, surface water, waves, tidal water, storm surge, tsunami, any overflow of a body of water, or spray from any of these, whether or not driven by wind; or

        (2) Any release, overflow, escape or rising of water otherwise held, contained, controlled or diverted by a dam, levee, dike or by any type of water containment, water diversion or flood control device; or

        (3) Water or water-borne material which backs up through sewers or drains or which overflows from a sump pump, sump well or similar device designed to drain water from the foundation area; or

        (4) Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps through a building, sidewalk, driveway, foundation, swimming pool or other structure;

    unless direct loss by fire, explosion or theft results from water damage and then we will pay only for the resulting loss.

d. **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the "**residence premises**" except as provided in ADDITIONAL COVERAGES, Refrigerated Products.

If damage caused by a loss insured under Section I LOSSES WE COVER results on the "**residence premises**", we will pay only for that damage.

e. **Neglect**, by or failure of any "**insured**" to use all reasonable means to save and preserve property at and after the time of a loss or damage or the event resulting in loss or damage.

f. "**War**" and any consequence of "**war**", except as provided in ADDITIONAL COVERAGES, War. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g. **Nuclear Hazard**, meaning

   (1) Any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

   (2) Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Section I - LOSSES WE COVER.

   (3) This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

h. **Intentional Loss,** meaning loss arising out of any act any "**insured**" commits or conspires to commit with the intent to cause a loss. Even "**insureds**" who did not commit or conspire to commit the act causing the loss are not entitled to coverage.

i. "**Fungus**", or Wet or Dry Rot, or **Bacteria** other than as provided in ADDITIONAL COVERAGES, "**Fungus**", **or Wet or Dry Rot**.

j. "**Collapse**", other than as provided in ADDITIONAL COVERAGES, "**Collapse**".

k. **Diminution in value**, meaning any reduction in value that would remain after damaged property is repaired or replaced.

2. We do not insure for loss caused by any of the following. However, any ensuing loss to property described in Dwelling Protection and Other Structures Protection not precluded by any other provision in this policy is covered.

   a. **Weather Conditions** which includes but is not limited to heat, cold, humidity, rain, ice, snow, sleet, wind, hail or drought. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION, item 1. above to produce the loss.

   b. **Acts or decisions**, including the failure to act or decide, of any person, group, organization or governmental body;

   c. **Faulty, negligent, inadequate or defective**:

      (1) Planning, zoning, development, surveying, siting;

      (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

      (3) Materials used in repair, construction, renovation or remodeling; or maintenance.

   This limitation applies to loss or damage to any property on or off the "**residence premises**".

# SECTION I - LOSS SETTLEMENT

We will not pay more than the amount of insurance that applies to the damaged, destroyed or stolen property as stated on the Declarations page unless such amount is increased due to ADDITIONAL COVERAGES or the Home Protector Coverage.  Subject to the amount of insurance covered losses are settled as follows:

1.  For the following property:

    a.  Structures that are not buildings; and

    b.  All covered structures whether or not they are buildings, if located away from the **"residence premises"**.

    We will pay the lesser of:

    a.  The **"actual cash value"**; or

    b.  Our cost to replace the property with property of like kind, quality, age and condition; or

    c.  Our cost to repair or our cost to restore the property to the condition it was in just before the loss

2.  All items under Property We Cover - Dwelling Protection and buildings on the **"residence premises"** under Other Structures Protection. We will pay our cost to repair or our cost to replace the damaged property with similar construction and for the same use on the premises shown in the Declarations, subject to the following:

    a.  When our cost to repair or replace the damaged property is less than $5,000 we will pay you the full replacement cost amount without deduction for depreciation.

    b.  When our cost to repair or our cost to replace the damaged property is greater than $5,000, and until actual repair or replacement is completed, we will pay only the **"actual cash value"**, not to

exceed our cost to repair or our cost to replace the damaged part of the property.

    (1)  To receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within one year after the date of loss, unless during this period you request in writing that this time limit be extended for an additional 180 days, and notify us within 30 days after the work has been completed.

    (2)  When repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or our cost to repair or replace the damaged part of the property, whichever is less.

3.  Home Protector Coverage.

    You agree:

    a.  To insure your buildings under Property We Cover - Dwelling Protection and Other Structures Protection, on the **"residence premises"**, for the full replacement cost at the time this policy is issued; and

    b.  To accept any increase in coverage that results from the application of the Adjustment to Building Cost provision if it is deemed necessary by us. You must pay for any added premium; and

    c.  To tell us within 90 days of the start of any additions or other physical changes to buildings on the **"residence premises"** which increases the value by the greater of:

    (1)  $25,000; or

    (2)  5% of the current Dwelling Protection amount of insurance.

    You must pay any resulting premium.

If you comply with these requirements and if as a result of a covered loss, you have exhausted the amount of insurance:

a. Applying to buildings covered under Property We Cover - Dwelling Protection or Other Structures Protection; or

b. Provided under ADDITIONAL COVERAGES, Debris Removal; or

c. Provided under ADDITIONAL COVERAGES, Building Ordinance or Law;

then, we will pay up to an additional 25% of the amount of insurance applying to the damaged building. The most we will pay for a., b., or c., either singly or in any combination is 25% or the amount actually and necessarily spent to repair or replace the damaged building, whichever is less.

4. Loss Settlement - Personal Property. We will settle losses to covered property at full replacement cost without deduction for depreciation, subject to the following:

REPLACEMENT COST COVERAGE DEFINED

Replacement Cost means the cost, at the time of loss, of a new item identical to the one damaged, destroyed or stolen. If an identical item is no longer manufactured or cannot be obtained, replacement cost will be the cost of a new item which is:

a. Similar to the insured article, and

b. Of like quality and usefulness.

PROPERTY COVERED

a. Personal property covered in Property We Cover - Personal Property Protection, except personal property stated in Property Not Eligible below;

b. If covered in this policy; awnings, carpeting, and household appliances, whether or not attached to buildings.

PROPERTY NOT ELIGIBLE

Replacement cost coverage does not apply to:

a. Items of rarity or antiquity that cannot be replaced;

b. Articles whose age or history contributes substantially to their value. These include, but are not limited to, memorabilia, souvenirs and collectors items;

c. Motorized golf carts and their equipment and accessories;

d. Articles not maintained in good or workable condition;

e. Property that is either obsolete or useless to the **"insured"** at the time of loss;

f. Property that you do not intend to repair, replace, or restore.

LOSS SETTLEMENT

a. For property that is eligible for replacement cost coverage it is our option to:

   (1) Replace, or pay you our cost to replace the property with new property of like kind and quality without deduction for depreciation; or

   (2) Pay you the cost to repair or restore the property to the condition it was in just before the loss; or

   (3) Pay you the necessary amount actually spent to repair or replace the damaged property.

b. We will pay no more than **"actual cash value"** until repair or replacement of the damaged property is completed, unless the entire loss is less than $2,500

c. You make a claim for loss on an **"actual cash value"** basis and then make claim within one year after the loss for any additional liability under the terms of this provision.

d. For property that is not eligible for replacement cost coverage, it is our option to:

(1) Pay you the **"actual cash value"**; or

(2) Replace, or to pay you our cost to replace the property with property of like kind, age, quality and condition; or

(3) Pay you the cost to repair or restore the property to the condition it was in just before the loss.

e. We will not pay more than the Amount of Insurance that applies to Personal Property Protection. Nor will we pay more than any Special Amounts of Insurance that apply as stated in this policy.

# SECTION I – CONDITIONS

1. **Insurable Interest and Amount of Insurance**. Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   a. To the **"insured"** for more than the amount of the **"insured's"** interest at the time of loss; or

   b. For more than the applicable amount of insurance

   whichever is less.

2. **Your Duties After Loss.** In case of a loss to which this insurance may apply you must see that the following are done:

   a. Promptly notify us or our agent about the loss. This policy will not provide any coverage for your loss if you fail to notify us about the loss within one year after the loss actually occurs;

   b. Notify the police in case of loss by theft, vandalism, or any other criminal act;

   c. Notify the credit card or fund transfer card company in case of loss under ADDITIONAL COVERAGES, Credit Card Coverage, and Identity Fraud Expense Coverage;

   d. (1) Protect the property from further damage;

   (2) Make reasonable and necessary repairs to protect the property; and

   (3) Keep an accurate record of repair expenses;

   e. Cooperate with us in the investigation of a claim;

   f. At our request prepare an inventory of claimed personal property showing the quantity, description, age, replacement cost and amount of loss. Include with the inventory all bills, receipts and related documents that support the items listed and substantiate the figures shown in the inventory;

   g. As often as we reasonably require:

   (1) Show the damaged property;

   (2) Provide us with records and documents we request and permit us to make copies; and

   (3) Submit to and sign, while not in the presence of any other **"insured"**:

   (a) Statements; and

   (b) Examinations under oath; and

(4) Produce employees, members of your household or others for examinations under oath to the extent it is within your power to do so;

h. Send to us, within 60 days after our request, your signed proof of loss which sets forth, to the best of your knowledge and belief:

(1) The time and cause of loss;

(2) The interest of the **"insured"** and all others in the property involved and all liens on the property.

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimate;

(6) The inventory of claimed personal property described in 2.f. above;

(7) Receipts for Additional Living Expenses and Temporary Living Expenses incurred and records that support the Fair Rental Value loss; and

(8) Evidence or affidavit stating the amount and cause of loss that supports a claim under ADDITIONAL COVERAGES, Credit Card Coverage, and receipts, bills or other records that support your claim for expenses under Identity Fraud Expense Coverage.

3. **Volcanic Eruption Period**. One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

4. **Loss or Damage to a Pair or Set**. In case of loss or damage to a pair or set we may elect to:

a. Repair or replace any part to restore the pair or set to its value before the loss; or

b. Pay the difference between **"actual cash value"** of the property before and after the loss.

5. **Matching of Undamaged Property**. In case of damage to property, we will not pay to repair or replace undamaged property due solely to:

a. Mismatch of color between undamaged material and new material used to replace faded, weathered or oxidized damaged material; or

b. Mismatch between undamaged material and new material used to repair or replace damaged material due to outdated, obsolete or discontinued products.

6. **Appraisal**. If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the **"residence premises"** is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

a. Pay its own appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

Any fees for expert witnesses or attorneys will be paid by the party who hires them. Neither the umpire nor the appraisers will have a financial interest that is conditioned on the outcome of the specific matter for which they are called to serve.

This is not a provision providing for or requiring arbitration. The appraisers and umpire are only authorized to determine the **"actual cash value"**, replacement cost, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between you and us. The appraisal award cannot be used by either you or us in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon you and us. This appraisal process and authority granted to the appraisers and the umpire can only be expanded or modified by written mutual consent signed by you and us.

7. **Other Insurance**. Other insurance includes the coverage and any deductible required by such other insurance.

   If a loss covered by this policy, other than a loss covered by the ADDITIONAL COVERAGE, Credit Card Coverage and Identity Fraud Expense Coverage or golf cart coverage; is also covered by other insurance, we will pay only the proportion of the loss that the amount of insurance that applies under this policy bears to the total amount of insurance covering the loss.

   Coverage provided by the ADDITIONAL COVERAGE, Credit Card Coverage and Identity Fraud Expense Coverage is excess over other insurance that covers the same loss. This coverage is also excess over any other contractual conditions, rights or benefits that provide relief from or indemnification for your obligations to pay any amount to any third party resulting from a loss covered by this coverage. In no event will we pay more than the applicable amount of insurance.

   This policy does not apply to motorized golf carts and their equipment and accessories when any other insurance also applies.

8. **Suit Against Us**. No action can be brought against us unless you have:

   a. Given us notice of the loss,

   b. Complied with all other policy provisions, and

   c. Started the action

   within two years after the date of the loss

9. **Our Option**. If we give you written notice within 30 days after we receive your notice of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a. Reach an agreement with you;

    b. There is an entry of a final judgment; or

    c. There is a filing of an appraisal award with us.

11. **Abandonment**. You may not abandon property to us for any reason.

12. **Mortgagee Clause**. The word "mortgagee" includes trustee.

    If a mortgagee is named in this policy, any covered loss under Section I - LOSSES WE COVER for Dwelling Protection or Other Structures Protection will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

    If we deny your claim because you or any other **"insured"** has failed to comply with the terms and conditions of this policy that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

a.  Promptly notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware; and

b.  Pays any premium due under this policy on demand if you have neglected to pay the premium; and

c.  Sends to us, within 60 days after our request, a signed sworn proof of loss which sets forth, to the best of the mortgagee's knowledge and belief:

   (1) The time and cause of loss;

   (2) The interest of the mortgagee and all others in the property involved and all liens on the property;

   (3) Other insurance which may cover the loss;

   (4) Changes in title or occupancy of the property during the term of the policy;

   (5) Specifications of damaged buildings and detailed repair estimates.

   Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

d.  Submits to examination under oath.

If we decide to cancel or not to renew this policy, the mortgagee will be properly notified at least 10 days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

a.  We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

b.  At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**13. No Benefit to Bailee**. We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**14. Salvage and Recovered Property.**

a.  We have an interest in the salvage value of any property for which we have made a payment under the Loss Settlement Condition. At our option, property that we have paid for or replaced becomes our property.

b.  If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property may be retained by you. If you retain the property, the loss payment, or any lesser amount to which we agree, must be refunded to us.

**15. Concealment, Misrepresentation or Fraud**. If you or any other **"insured"**, whether before or after an **"occurrence"** or loss under this policy has:

a.  Intentionally concealed or misrepresented any material fact or circumstance;

b.  Engaged in fraudulent conduct; or

c.  Made false statements which, if known by us, would have caused us not to:

   (1) Issue the policy;

   (2) Issue the policy in as large an amount;

   (3) Provide coverage for the hazard resulting in the loss; or

   (4) Issue the policy for the same amount of premium or at the same rate

relating to the issuance of this policy or in the presentation of a claim, we may deny coverage or declare the entire policy void as to the interest of all **"insureds"** and refund the unearned premium as of the date of the conduct described in a., b., or c. above. Any unearned premium refund will be offset by any amounts paid to any **"insured"** under the policy after the date of the conduct described in a., b., or c. above.

We reserve all rights to seek recovery of the amount we pay from any person committing concealment, misrepresentation or fraud for all payments made and cost incurred.

**16. Duties to Determine and Maintain Policy Limits**. It is your responsibility to determine and maintain adequate amounts of insurance to totally replace or repair your dwelling, other structures and personal property.

**17. Adjustment to Building Cost**. The amount of insurance for Section l, Dwelling Protection, shown in the Declarations of this policy, will be revised at each policy renewal to reflect the rate of change in the replacement cost of your dwelling. The resulting limit will be rounded to the next $1,000.

Section l, Other Structures Protection, Personal Property Protection and Loss of Use, will also be adjusted. The rules then in use by us will determine the new amounts for these coverages.

These amounts will not be reduced without your consent.

You have the right to refuse any resulting change in amount. You must do so before the effective date of such change.

We have the right to change to another replacement cost calculation tool as of any renewal date. We will give you at least 30 days prior written notice if we do this. Such change must apply to all similar policies issued by us.

# SECTION II – LIABILITY COVERAGES

## COVERAGE E – Personal Liability

If a claim is made or a suit is brought against any **"insured"** for **"damages"** because of **"bodily injury"** or **"property damage"** caused by an **"occurrence"** to which this coverage applies, we will:

1. Pay up to our limit of liability for the **"damages"** for which the **"insured"** is legally liable; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for **"damages"** resulting from the **"occurrence"** equals our limit of liability. This coverage does not provide defense to any **"insured"** for criminal prosecution or proceedings.

We will not pay for punitive damages or exemplary damages, fines or penalties.

## COVERAGE F – Medical Payments to Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing **"bodily injury"**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except **"residence employees"**. As to others, this coverage applies only:

1. To a person on the **"insured location"** with the permission of any **"insured"**; or

2. To a person off the **"insured location"** if the **"bodily injury"**:

a. Arises out of a condition on the **"insured location"** or the ways immediately adjoining;

b. Is caused by the activities of any **"insured"**;

c. Is caused by a **"residence employee"** in the course of the **"residence employee's"** employment by any **"insured"**; or

d. Is caused by an animal owned by or in the care of any **"insured"**.

# SECTION II - EXCLUSIONS

1. **Coverage E – Personal Liability and Coverage F – Medical Payments to Others** do not apply to **"bodily injury"** or **"property damage"**:

   a. Which is reasonably expected or intended by any **"insured"** even if the resulting **"bodily injury"** or **"property damage"**:

      (1) Is of a different kind, quality or degree than initially expected or intended; or

      (2) Is sustained by a different person, entity, real or personal property, than initially expected or intended.

      However, this exclusion does not apply to **"bodily injury"** resulting from the use of lawful reasonable force by any **"insured"** to protect persons or property.

   b. (1) Arising out of or in connection with a **"business"** engaged in by any **"insured"**. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **"business"**.

      (2) Arising out of the rental or holding for rental of any part of any premises by any **"insured"**. This exclusion does not apply to the rental or holding for rental of any **"insured location"**.

         (a) On an occasional basis if used only as a residence;

         (b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

         (c) In part, as an office, school, studio or private garage;

   c. Arising out of the rendering or failure to render **"professional services"**;

   d. Arising out of a premises;

      (1) Owned by any **"insured"**; or

      (2) rented to any **"insured"**; or

      (3) rented to others by any **"insured"**;

      that is not an **"insured location"**;

   e. Arising out of:

      (1) The ownership, maintenance, use, loading or unloading of **"motor vehicles"** including trailers, owned or operated by or rented or loaned to any **"insured"**;

      (2) The entrustment by any **"insured"** of a **"motor vehicle"** to any person; or

      (3) Vicarious liability, whether or not statutorily imposed, for the actions of anyone using a **"motor vehicle"** excluded in paragraph (1) or (2) above.

This exclusion does not apply to the permissive use, loading or unloading of:

(1) A trailer not towed by or carried on a **"motor vehicle"**;

(2) A **"motor vehicle"** designed for recreational use off public roads, not subject to motor vehicle registration and;

    (a) Not owned by any **"insured"**; or

    (b) Owned by any **"insured"** provided the **"occurrence"** takes place on any **"insured location"**; or

    (c) Owned by any **"insured"** and designed or modified to operate at speeds not to exceed 15 miles per hour.

(3) A motorized golf cart that is designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an **"occurrence"**, is within the legal boundaries of:

    (a) A golfing facility and is parked or stored there, or being used by any **"insured"** to:

        (i) Play the game of golf or for other recreational or leisure activity allowed by the facility; or

        (ii) Travel to and from an area where **"motor vehicles"** or golf carts are parked or stored; or

        (iii) Cross public roads at designated points to access other parts of the golfing facility.

    (b) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an **"insured's"** residence.

(4) A **"motor vehicle"** not subject to motor vehicle registration which is:

    (a) Used to service any **"insured's"** residence; or

    (b) Designed for assisting the handicapped; or

    (c) In dead storage on an **"insured location"**.

f.  Arising out of:

(1) The ownership, maintenance, use, loading or unloading of; or

(2) The entrustment by any **"insured"** to any person of; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of anyone using:

a **"watercraft"** or **"personal watercraft"**.

This exclusion does not apply to any **"watercraft"** owned or borrowed by, or rented to any **"insured"**:

(1) With inboard, outboard or inboard-outdrive motor power of up to 50 horsepower: or

(2) That is a sailing vessel, with or without auxiliary power, which is up to 35 feet in length.

This exclusion does not apply to any **"personal watercraft"** or **"watercraft"** that is being stored.

g.  Arising out of:

(1) The ownership, maintenance, use, loading or unloading of; or

(2) The entrustment by any **"insured"** to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of anyone using:

an **"aircraft"** or **"hovercraft"**.

h.  Caused directly or indirectly by **"war"** including any consequence of **"war"**. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

i.  Arising out of the transmission of a communicable disease by any **"insured"**.

j.  Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s). Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

k.  Arising out of the actual, alleged, or threatened discharge, dispersal, release, escape, seepage or migration of **"pollutants"** however caused and whenever occurring. This includes any loss, cost or expense arising out of any:

   (1)  Request, demand or order that any **"insured"** or others test for, monitor, clean up, remove, contain, treat, detoxify, or assess the effects of **"pollutants"**; or

   (2)  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **"pollutants"**.

l.  Arising out of exposure to lead paint or other lead‑based products.

m.  Arising out of exposure to asbestos.

n.  Arising out of or caused by the commission of, attempting to flee from, or avoiding apprehension for a criminal act for which intent is a necessary element.

o.  Arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of or presence of any **"fungus"**, or wet or dry rot, or bacteria.

p.  Arising out of your failure, intentionally or unintentionally, to disclose information regarding the sale or transfer of real or personal property.

q.  Arising out of any actual, alleged or threatened:

   (1)  Sexual misconduct; or

   (2)  Sexual harassment; or

   (3)  Sexual molestation.

r.  Arising out of any actual, alleged or threatened physical or mental abuse.

   Exclusions d., e., f., and g. do not apply to **"bodily injury"** to a **"residence employee"** arising out of and in the course of the **"residence employee's"** employment by any **"insured"**.

2.  **Coverage E – Personal Liability does not apply to:**

   a.  Liability:

      (1)  For any loss assessment charged against you as a member of an association, corporation or community of property owners other than as provided in SECTION II – ADDITIONAL COVERAGES, Loss Assessment.

      (2)  Under any contract or agreement. However, this exclusion does not apply to written contracts:

         (a)  That directly relate to the ownership, maintenance or use of any **"insured location"**; or

         (b)  Where the liability of others is assumed by any **"insured"** prior to an **"occurrence"**;

         unless excluded in (1) above or elsewhere in this policy.

b. **"Property damage"** to property owned by the **"insured".**

c. **"Property damage"** to property rented to, occupied or used by or in the care of any **"insured"**. This exclusion does not apply to **"property damage"** caused by fire, smoke or explosion.

d. **"Bodily injury"** to any person eligible to receive any benefits:

    (1) Voluntarily provided; or

    (2) Required to be provided, whether or not actually provided;

by any **"insured"** under any:

    (1) Workers' compensation law;

    (2) Non-occupational disability law; or

    (3) Occupational disease law.

e. **"Bodily injury"** or **"property damage"** for which any **"insured"** under this policy:

    (1) Is also an **"insured"** under a nuclear energy liability policy; or

    (2) Would be an **"insured"** under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

    (1) Nuclear Energy Liability Insurance Association;

    (2) Mutual Atomic Energy Liability Underwriters;

    (3) Nuclear Insurance Association of Canada; or any of their successors.

f. **"Bodily injury"** to you or any **"insured"** within the meaning of part a., b. or c. of **"insured"** as defined.

g. Punitive or exemplary damages, fines, or penalties.

3. **Coverage F – Medical Payments to Others** does not apply to **"bodily injury"**:

a. To a **"residence employee"** if the **"bodily injury"**:

    (1) Occurs off the **"insured location"**; and

    (2) Does not arise out of or in the course of the **"residence employee's"** employment by an **"insured"**.

b. To any person eligible to receive benefits:

    (1) Voluntarily provided; or

    (2) Required to be provided;

under any:

    (1) Workers' compensation law; or

    (2) Non-occupational disability law; or

    (3) Occupational disease law.

c. From any:

    (1) Nuclear reaction; or

    (2) Nuclear radiation; or

    (3) Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

    (4) Any consequence of any of these.

d. To any person, other than a **"residence employee"** of any **"insured"**, regularly residing on any part of the **"insured location"** or residing on any part of the **"insured location"** for a period in excess of thirty consecutive days prior to the date of loss, if other permanent residency is established or claimed elsewhere.

# SECTION II - ADDITIONAL COVERAGES

Unless specifically addressed elsewhere in this policy, the coverages provided below are the only coverages provided for the following and do not reduce the limit of liability.

1. **Claim Expenses**. We pay:

   a. Expenses we incur and costs taxed against any **"insured"** in any suit we defend;

   b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

   c. Reasonable expenses incurred by any **"insured"** at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit;

   d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies;

   e. Prejudgment interest awarded against the **"insured"** on that part of the judgment we pay. If we make an offer to pay the applicable limit of liability, we will not pay any prejudgment interest based on that period of time after the offer.

2. **First Aid Expenses**. We will pay expenses for first aid to others incurred by any **"insured"** for **"bodily injury"** covered under this policy. We will not pay for first aid to you or any other **"insured"**.

3. **Damage to Property of Others**. We will pay, at replacement cost, up to $1,000 per **"occurrence"** for **"property damage"** to property of others caused by any **"insured"**.

We will not pay for **"property damage"**:

a. To the extent of any amount recoverable under SECTION I of this policy;

b. Caused intentionally by any **"insured"** who is 13 years of age or older;

c. To property owned by any **"insured"**;

d. To property owned by or rented to a tenant of any **"insured"** or a resident in your household; or

e. Arising out of:

   (1) A **"business"** engaged in by any **"insured"**;

   (2) Any act or omission in connection with a premises owned, rented or controlled by any **"insured"**, other than the **"insured location"**; or

   (3) The ownership, maintenance, occupancy, operation, use, loading or unloading of **"aircraft"**, **"hovercraft"**, **"watercraft"**, **"personal watercraft"** or **"motor vehicle"**. This exclusion e.(3) does not apply to a **"motor vehicle"** that:

      (a) Is designed for recreational use off public roads,

      (b) Is not owned by any **"insured"**; and

      (c) At the time and place of the **"occurrence",** is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

4. **Loss Assessment**. We will pay up to $10,000 for your share of loss assessment charged against you, by a corporation or association of property owners, when the assessment is made as a result of:

a. **"Bodily injury"** or **"property damage"** caused by an **"occurrence"** not excluded under SECTION II of this policy; or

b. Liability for an act committed by a director, officer or trustee during the policy period in the capacity as a director, officer or trustee, provided:

   (1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and

   (2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as an owner or tenant of the **"residence premises"**.

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $10,000 is the most we will pay for loss arising out of:

a. One **"occurrence"**, including continuous or repeated exposure to substantially the same general harmful conditions; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

SECTION II, Coverage E  Personal Liability Exclusion 2.a.(1) does not apply to this coverage.

This coverage is not limited by the expiration of this policy.

# SECTION II - CONDITIONS

1. **Limit of Liability**. The Coverage E limit is shown in the Declarations. This is our limit for all damages from each **"occurrence"** regardless of the number of **"insureds"**, claims made or persons injured. All **"bodily injury"** and **"property damage"** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one **"occurrence"**.

   The Coverage F limit is shown in the Declarations. This is our limit for all medical expenses payable for **"bodily injury"** to one person as the result of one accident.

2. **Severability of Insurance**. This insurance applies separately to each **"insured"**. This condition does not increase our limit of liability for any one **"occurrence."**

3. **Concealment, Misrepresentation or Fraud**. If you or any other **"insured"**, whether before or after an **"occurrence"** or loss under this policy has:

a. Concealed or misrepresented any material fact or circumstance;

b. Engaged in fraudulent conduct; or

c. Made false statements which if known by us, would have caused us not to:

   (1) Issue the policy;

   (2) Issue the policy in as large an amount;

   (3) Provide coverage for the hazard resulting in the loss; or

   (4) Issue the policy for the same amount of premium or at the same rate

relating to the issuance of this policy or in the presentation of a claim we may deny coverage as to the interest of all **"insureds"**.

We reserve all rights to seek recovery from any person committing concealment, misrepresentation or fraud for all payments made and cost incurred.

4. **Duties After Loss**. In case of an accident or **"occurrence"**, the **"insured"** will perform the following duties that apply. You will help us by seeing that these duties are performed:

   a. Give written notice to us or our agent as soon as is practical, which sets forth:

      (1) The identity of the policy and **"insured"**;

      (2) Reasonably available information on the time, place and circumstances of the accident or **"occurrence"**; and

      (3) Names and addresses of any claimants and witnesses.

   b. Cooperate with us in the investigation, settlement or defense of any claim or suit.

   c. Promptly forward to us every notice, demand, summons or other process relating to the accident or **"occurrence."**

   d. At our request, help us:

      (1) To make settlement;

      (2) To enforce any right of contribution or indemnity against any person or organization who may be liable to any **"insured"**;

      (3) With the conduct of suits and attend hearings and trials;

      (4) To secure and give evidence and obtain the attendance of witnesses.

   e. Under Damage to Property of Others, if we request, submit to us within 60 days after notice of the loss, a statement of loss and show the damaged property, if in the **"insured's"** control.

   f. The **"insured"** will not, except at the **"insured's"** own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the **"bodily injury"**.

5. **Duties of an Injured Person – Coverage F – Medical Payments to Others**. The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

   The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

6. **Payment of Claim – Coverage F – Medical Payments to Others.** Payment under this coverage is not an admission of liability by any **"insured"** or us.

7. **Suit Against Us**. No action can be brought against us unless there has been compliance with the policy provisions.

   No one will have the right to join us as a party to any action against any **"insured"**. Also, no action with respect to Coverage E can be brought against us until the obligation of the **"insured"** has been determined by final judgment or agreement signed by us.

8. **Bankruptcy of any Insured**. Bankruptcy or insolvency of any **"insured"** will not relieve us of our obligations under this policy.

9. **Other Insurance – Coverage E – Personal Liability**. This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

# SECTIONS I AND II – CONDITIONS

1. **Policy Period**. This policy applies only to loss in SECTION I or **"bodily injury"** or **"property damage"** in SECTION II, which occurs during the policy period.

2. **Liberalization Clause**. If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

   This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

   a.   A subsequent edition of this policy; or

   b.   An amendatory endorsement.

3. **Waiver or Change of Policy Provisions**. A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

4. **Cancellation.**

   a.   You may cancel this policy at any time. But the effective date of cancellation cannot be earlier than the date of your request.

   b.   We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you by postal mail at your mailing address shown in the Declaration or provided to you electronically if we have your consent and agreement on file to receive documents electronically

Proof of mailing, whether by postal mail or by electronic media or communication channel, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant to an electronic transaction agreement, or upon directing it to an electronic mailbox or voice channel that you designate for the purpose of receiving mail.

   (1)   When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   (2)   When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

   (3)   When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

      (a)   Upon discovery of fraud, concealment or misrepresentation made by or with the knowledge of any **"insured"** in obtaining this policy, continuing the policy, or presenting a claim under this policy; or

      (b)   If the risk has changed substantially since the policy was issued; or

      (c)   Upon discovery that the **"insured"** does not meet USAA Group membership eligibility requirements; or

      (d)   Any other reason allowed by law.

      Cancellation can be done by notifying you at least 30 days before the date cancellation takes effect.

HO-9R(02)  (07-08)                                                                 Page 33 of 34

(4) When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

(5) If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

5. **Nonrenewal**. We may elect not to renew this policy. We may do so by letting you know in writing 30 days before policy termination. This nonrenewal notice may be delivered to you, mailed to you by postal mail at your mailing address shown in the Declarations or provided to you electronically if we have your consent and agreement on file to receive documents electronically.

Proof of mailing, whether by postal mail or by electronic media or communication channel, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant to an electronic transaction agreement, or upon directing it to an electronic mailbox or voice channel that you designate for the purpose of receiving mail.

6. **Subrogation**. Any **"insured"** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **"insured"** must:

a. Sign and deliver all related papers;

b. Cooperate with us in a reasonable manner; and

c. Do nothing after a loss to prejudice such rights.

7. **Spouse Access**. The **"member"** and we agree that the **"member"** and resident spouse are customers and applicants for purposes of state and federal privacy and insurance laws. The resident spouse will have access to the same information available to the **"member"** and may conduct the same transactions as the **"member"** including making coverage changes, signing regulatory forms, terminating the policy, and selecting delivery preferences for policy documents.

The **"member"** may notify us that he/she no longer wants the resident spouse to have access or transaction authority on his/her policy, and we will not permit the resident spouse to access policy information or conduct transactions on this policy.

8. **Assignment**. Assignment of this policy will not be valid unless we give our written consent.

9. **Death**. If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b. For the purpose of this condition, **"insured"** includes:

(1) Any member of your household who is an **"insured"** at the time of your death, but only while a resident of the **"residence premises"**; and

(2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Copyright, USAA, 2008. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PAGE    1
MAIL MACH-I
59812
10/27/15

**HOMEOWNERS POLICY PACKET**

EFFECTIVE: 10-27-15 TO: 09-16-16

```
MATTHEW  KARL  MOELLER
LT COL USAF RET
6006 FAIRVIEW DR
PARK CITY UT 84098-6137
```

USAA      00445 71 35      95A

## IMPORTANT MESSAGES

Refer to your Declarations Page and endorsements to verify that coverages, limits, deductibles and other policy details are correct and meet your insurance needs.  Required information forms are also enclosed for your review.

```
1) Go to usaa.com to view policy coverages and home features.
```

This is not a bill.  Any premium charge or return for this policy will be reflected on your next regular monthly statement.
**To receive this document and others electronically or view your policy summary online, go to usaa.com.**
For U.S. Calls:  Policy Service (800) 531-8111.  Claims (800) 531-8222.

HOCS1                                                                                          49709-0406

THIS PAGE INTENTIONALLY LEFT BLANK

# EXHIBIT B



USAA 00445 71 35 70U
JUM1392
00000
DM00000

**UMBRELLA POLICY PACKET**

MATTHEW KARL MOELLER                                                    June 18, 2016
LT COL USAF RET
6006 FAIRVIEW DR
PARK CITY UT 84098-6137


Effective:  07/24/2016 to 07/24/2017
USAA 00445 71 35 70U

### Important Messages

Refer to your Declarations Page and endorsements to verify that coverage, limits and other policy details are correct and meet your insurance needs. Required information forms are also enclosed for your review.

Please read the enclosed document, "Make Sure Coverage is Adequate: Review Umbrella Exposures and Check Policy" for details on updating your policy information.

This is not a bill. Any premium charge or return for this policy will be reflected on your next regular monthly statement. To receive this document and others electronically or to view your policy summary online, go to usaa.com. You may also contact us at  1-800-531-USAA (8722).

USAA 00445 71 35 70U



**Make Sure Coverage is Adequate: Review Umbrella Exposures and Check Policy**

Our mission is to help you protect your financial future and hard-earned assets with the right umbrella coverage. This is why we're recommending that you periodically review your umbrella exposures, coverage, dollar limits and endorsements and make any necessary policy updates.

Your policy coverage should reflect the current circumstances of your household, including driver information, as well as vehicle, property or watercraft ownership. To determine if you have adequate umbrella policy protection, please review the enclosed:

- **Declarations Page** — the required coverage, limits and endorsements are listed.
- **Supplemental Declarations Page** — you'll find your umbrella exposures, coverage and limits here.

If an umbrella policy change is necessary, please call us at 1-800-531-USAA (8722). Call us at 00-800-531-81110 from Europe (00-800-11-005-4316 from Greece).

**Your other policies may also need updating**
If an umbrella coverage change is needed, updates to other policies may also be necessary. Call us at the number above if there's been a change to the licensed drivers who reside in your household. You should also call us if the information for the vehicles, properties and watercraft listed on the umbrella policy Supplemental Declarations Page is incorrect or has changed.

Thank you for choosing USAA and taking a moment to make this important policy review.

USAA 00445 71 35 70U
DM00000



UNITED SERVICES AUTOMOBILE ASSOCIATION
(A Reciprocal Interinsurance Exchange)
9800 Fredericksburg Road, San Antonio, Texas 78288
**PERSONAL UMBRELLA POLICY DECLARATIONS -** Renewal

Policy Number:  USAA 00445 71 35 70U

Effective: From 07/24/2016 to 07/24/2017
(12:01 A.M. standard time at Umbrella Base Location)

Named Insured and Mailing Address:
MATTHEW KARL MOELLER
LT COL USAF RET
6006 FAIRVIEW DR
PARK CITY UT 84098-6137

Umbrella Base Location:
6006 Fairview Dr
Park City, Summit, UT 84098

| | Limit (per occurrence) | Premium |
|---|---|---|
| Umbrella Liability | $1,000,000 | $295.56 |
| **Total** | | **$295.56** |

PREMIUM DUE AT INCEPTION

**SCHEDULE OF UNDERLYING INSURANCE**

| TYPE OF INSURANCE | REQUIRED MINIMUM LIMITS | | | |
|---|---|---|---|---|
| | Bodily Injury | Property Damage | OR | Combined Single Limit |
| Private Passenger Vehicle Liability | $300,000/$500,000 | $100,000 | OR | $500,000 |
| Miscellaneous Vehicle Liability | $250,000/$500,000 | $100,000 | OR | $500,000 |
| Personal Liability | | | | $300,000 |
| Watercraft/Pers Watercraft Liability | | | | $300,000 |

**USAA requires you to maintain NO LESS THAN the above REQUIRED MINIMUM LIMITS. See the Required Minimum Insurance Condition in your policy.**

**Please verify your actual limits and exposures on the attached Supplemental Declarations.**

ENDORSEMENTS:

   Added: NONE

   Remain in Effect (Refer to Previous Policy) -  PU-100UT (09-10), PU-2009 (07-09), PU-2011 (04-11)

INFORMATIONAL FORMS  - UMBDV (11-10)

In WITNESS WHEREOF, the Subscribers at UNITED SERVICES AUTOMOBILE ASSOCIATION have caused these presents to be signed by their Attorney-in-Fact on this date 06/18/2016.

*Laura Bishop*

Laura Bishop
President, USAA Reciprocal Attorney-in-Fact, Inc.

89853-0513
Page 1 of 1

PU2009D (05-13)

USAA 00445 71 35 70U



## PERSONAL UMBRELLA POLICY
## Supplemental Declarations

**Effective:**
From **07/24/2016** to **07/24/2017**
(12:01 a.m. standard time at Umbrella Base Location)

Your Umbrella premium is based in part on the following. The limits shown below represent the lowest policy limits carried.

Please contact us if any changes are needed.

### DESCRIPTION OF KNOWN EXPOSURES

**Motor Vehicles (Includes Private Passenger and Miscellaneous Vehicles):**
    **Lowest Coverage Limit(s):** $300,000/$500,000/$100,000

2008 FORD ESCAPE
2014 INFINITI QX60 4D 4X4
2014 JEEP G.CHER

**Properties/Residences:**
    **Lowest Coverage Limit:** $500,000

6006 Fairview Dr, Park City, Summit, UT 84098

CIC 1234 56 78 70U



**USAA**
9800 Fredericksburg Road
San Antonio, Texas 78288

## PERSONAL UMBRELLA POLICY

### READ YOUR POLICY, DECLARATIONS AND ENDORSEMENTS CAREFULLY

This policy is a legal contract between the named insured and the company shown on the Declarations. And like other contracts, it contains certain duties and responsibilities of both parties to the contract.  This contract consists of this policy plus the Declarations page and any applicable endorsements. The Quick Reference section outlines essential information contained on the Declarations and the major parts of the policy.

This is a participating policy. You are entitled to dividends as may be declared by the company's Board of Directors.

If this policy is issued by United Services Automobile Association ("USAA"), a reciprocal interinsurance exchange, the following apply:

- By purchasing this policy you are a member of USAA and are subject to its bylaws.

- This is a non-assessable policy. You are liable only for the amount of your premium as USAA has a free surplus in compliance with Article 19.03 of the Texas Insurance Code of 1951, as amended.

- The USAA Board of Directors may annually allocate a portion of USAA's surplus to Subscriber's Accounts. Amounts allocated to such accounts remain a part of USAA's surplus and may be used as necessary to support the operations of the Association. A member shall have no right to any balance in the member's account except until following termination of membership, as provided in the bylaws.

## QUICK REFERENCE

| | | |
|---|---|---|
| | | **DECLARATIONS PAGE** |
| | | Named Insured and Address |
| | | Policy Period |
| | | Policy Limits and Premiums |
| | | Schedule of Underlying Insurance |
| | | Endorsements |
| Beginning on Page | 2 | **Agreement and Definitions** |
| | 4 | **Liability Coverages** |
| | | Insuring Agreement |
| | |     Damages |
| | |     Defense |
| | | Limit of Liability |
| | |     Damages |
| | |     Defense |
| | 5 | **Exclusions** |
| | 8 | **Conditions** |
| | | Bankruptcy |
| | | Concealment, Misrepresentation or Fraud |
| | | Duties After An Occurrence or Offense |
| | | Other Insurance |
| | | Our Right to Recover Payment |
| | | Ownership |
| | | Required Underlying Limits |
| | | Spouse Access |
| | | Suit Against Us |
| | | Termination |
| | |     Cancellation |
| | |     Nonrenewal |
| | |     Other Termination Provisions |
| | | Transfer of Your Interest in This Policy |
| | | Waiver or Change of Policy Provisions |

CIC 1234 56 78 70U

## AGREEMENT

In return for payment of premium and subject to all terms of this policy, we will provide the insurance described.

However, this policy provides no uninsured motorists coverage, underinsured motorists coverage, auto no-fault coverage or medical payments coverage.

## DEFINITIONS

The words defined below are used throughout this policy.  They are in **boldface** when used.

A.  "**You**" and "**your**" refer to the "named insured" shown on the Declarations and spouse if a resident of the same household.

B.  "**We**," "**us**" and "**our**" refer to the Company providing this insurance.

C.  "**Aircraft**" means any conveyance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

D.  "**Bodily injury**."

   1.  "**Bodily injury**" means bodily harm, sickness, disease or death.

   2.  "**Bodily injury**" does not include mental injury such as emotional distress, mental anguish, humiliation, mental distress, or any similar injury unless it arises out of physical injury to some person.

E.  "**Business**" means any full or part-time activity arising out of or related to any trade, profession or occupation of any **insured**.

F.  "**Business property**" means any property on which a **business** is conducted.

G.  "**Driving contest or challenge**" includes, but is not limited to:

   1.  A competition against other people, vehicles, or time; or

   2.  An activity that challenges the speed or handling characteristics of a vehicle or improves or demonstrates driving skills, provided the activity occurs on a track or course that is closed from non-participants.

H.  "**Family member**" means a person related to **you** by blood, marriage, or adoption who is a resident of **your** household. This includes a ward or foster child who is a resident of **your** household.

I.  "**Fungus**" or "**fungi**" means any microorganism or byproduct of any microorganism, including but not limited to mold, mildew, fungi, mycotoxins and spores.

J.  "**Hovercraft**" means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles.

K.  "**Insured**."

   1.  "**Insured**" means:

      a.  **You** and any **family member**;

      b.  Other residents of **your** household under the age of 21 and in the care of **you** or any **family member**;

      c.  Any person or organization legally responsible for animals, **watercraft** or **personal watercraft**:

         (1)  To which this policy applies; and

         (2)  Which are owned by any person in K.1.a. or K.1.b. above.

      d.  Any person using a **motor vehicle**, **watercraft** or **personal watercraft** to which this policy applies, provided that such use is with the consent of any **insured**.

   2.  However, "**insured**" does not include:

CIC 1234 56 78 70U

a. The owner of a **motor vehicle**, **watercraft** or **personal watercraft** loaned or rented to any **insured**. "Owner" in this paragraph includes the owner's agents or employees.

b. Any **motor vehicle** sales agencies, repair shops, service stations, storage garages or public parking lots, their owners, agents or employees.

c. Any shipyards, **watercraft** repair yards, marinas, yacht clubs, **watercraft** sales agencies, **watercraft** service stations and the like, their owners, agents or employees.

d. The lessee of a **motor vehicle**, **watercraft** or **personal watercraft** owned by any **insured**.

e. A person or organization using or having custody of animals, **watercraft** or **personal watercraft**, to which this policy applies, in the course of any **business** or without the consent of any **insured**.

L. "**Miscellaneous vehicle**" means the following motorized vehicles: all terrain vehicles; antique vehicles; classic vehicles; dune buggies; golf carts; motorcycles; motor homes; and snowmobiles.

M. "**Motor vehicle**" means any type of motorized land vehicle or conveyance, whether or not subject to motor vehicle registration. **Motor vehicle** includes:

1. Private passenger vehicles, other than antique vehicles and classic vehicles; and

2. **Miscellaneous vehicles**.

N. "**Occurrence**" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in **bodily injury** or **property damage**.

O. "**Personal injury**" means injury arising out of one or more of the offenses listed below, but only if the **insured's** act occurred during the policy period. A series of similar or related acts by an **insured**, multiple publications of the same statement, and continuous or repeated injury from the same act or publication, will be considered a single offense and injury during the single policy period in which the first act or publication occurred.

1. Oral, written or electronic publication of a false statement that defames a person's or organization's character or reputation.

2. Oral, written or electronic publication of material that violates a person's right of privacy by publicly disclosing private facts.

3. Malicious prosecution.

4. False arrest, false imprisonment, wrongful detention.

5. When committed by or on behalf of the owner, landlord or lessor of a room, dwelling or premises that a person occupies:

    a. Wrongful eviction;

    b. Wrongful entry; or

    c. Invasion of the right of private occupancy.

6. Assault and battery if committed by any **insured**, or at his direction, to protect persons or property. This applies only when the conduct is not criminal.

P. "**Personal watercraft**" means a conveyance, used or designed to be used on water that uses a jet pump powered by an internal combustion engine as the primary source of propulsion.

Q. "**Professional services**" means any type of service to the public that requires the person rendering the service to obtain:

1. An advanced degree; or

2. A license; or

CIC 1234 56 78 70U

3. Other legal authorization to provide the service.

R. "**Property damage**."

1. "**Property damage**" means physical damage to or destruction of tangible property including loss of use of this property.

2. For purposes of this policy, electronic data is not tangible property. Electronic data means information, facts or programs:

   a. Stored as or on;

   b. Created or used on; or

   c. Transmitted to or from;

   computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

S. "**Retained limit**" means the required minimum limit of liability for the applicable personal lines insurance coverage shown in the Schedule of Underlying Insurance on the Declarations. Where **underlying insurance** is payable for any one **occurrence** to which this policy also applies**,** the amount of the **retained limit** will be either:

1. The split Bodily Injury/Property Damage limit shown in the Schedule, if **underlying insurance** has split limits; or

2. The Combined Single Limit shown in the Schedule, if **underlying insurance** has a combined single limit.

Where **underlying insurance** is not payable for any one **occurrence** to which this policy applies**,** the amount of the **retained limit** will be the split Bodily Injury/Property Damage limit shown in the Schedule.

T. "**Underlying insurance**" means the types of personal lines insurance coverages for which limits are shown in the Schedule of Underlying Insurance on the Declarations.

U. "**Watercraft**" means a conveyance principally designed to be propelled on or in water by wind, current, paddles, oars, engine power or electric motor.

## LIABILITY COVERAGES

INSURING AGREEMENT

A. <u>Damages.</u>

1. **We** will pay for damages, in excess of the **retained limit**, that an **insured** becomes legally obligated to pay because of **bodily injury** or **property damage** resulting from an **occurrence**.

2. **We** will pay for damages that an **insured** becomes legally obligated to pay because of **personal injury**.

B. <u>Defense.</u>

1. If a claim is made or a suit is brought against any **insured** for **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, or for **personal injury** to which this policy applies, **we** will provide a defense at **our** expense by counsel of **our** choice, even if the suit is groundless, false or fraudulent.

   However, **we** will not provide a defense:

   a. To any **insured** for criminal prosecution or proceedings; or

   b. If the **occurrence** or offense is covered by **underlying insurance** or any other liability insurance available to any **insured.**

2. **We** may investigate and settle any claim or suit that **we** decide is appropriate. **Our** duty to defend ends when the amount **we** pay to settle any claim, or in full or partial satisfaction of any judgment for damages resulting from the **occurrence** or offense, equals the Umbrella Liability Limit shown on the Declarations.

3. **We** have the right, but not the duty, to join with any **insured** or with the insurer providing **underlying insurance** in the investigation, defense or settlement of any claim or suit, or in any alternative dispute resolution process, which may require **us** to pay.

4. **We** may appeal a judgment in excess of the **retained limit** even if either the **insured** or the insurer providing the **underlying insurance** chooses not to appeal. If **we** do appeal, **we** will pay all related expenses.

LIMIT OF LIABILITY

A. Damages.

1. **Our** maximum limit of liability under this policy for all damages resulting from any one **occurrence,** or any one offense listed as **personal injury**, is the Umbrella Liability Limit shown on the Declarations.

2. This Umbrella Liability Limit is the most **we** will pay regardless of the number of suits or size of awards made, and regardless of the number of **insureds**, claims made or persons injured.

B. Defense. Defense costs are in addition to the Umbrella Liability Limit shown on the Declarations and include the following:

1. Premiums on appeal bonds and bonds to release attachments in any suit **we** defend. But **we** will not pay the premium for bonds with a face value over the Umbrella Liability Limit shown on the Declarations. **We** have the right, but not the duty, to either apply for or furnish any bond.

2. Expenses incurred by **us** or at **our** request on behalf of any **insured**, including court costs. **We** will pay interest on any part of a judgment covered by this policy.

3. Prejudgment interest awarded against any **insured** on that part of the judgment that is covered by this policy. If **we** make an offer to pay the applicable limit of liability available under this policy, **we** will not pay any prejudgment interest incurred or accrued after the offer is made.

4. Reasonable expenses incurred by any **insured** at **our** request, including actual loss of earnings (but not loss of other income) up to $250 per day for assisting **us** in the investigation or defense of a claim or suit.

## EXCLUSIONS

A. This insurance does not apply to:

1. Any loss assessments charged against any **insured** as a member of an association, corporation or community of property owners.

2. A nuclear energy **occurrence** that is covered by a nuclear energy liability policy, or would have been covered if the available liability insurance had not been used up.

3. Punitive or exemplary damages, fines or penalties.

CIC 1234 56 78 70U

B.  This insurance does not apply to **bodily injury** to any person eligible to receive any benefits, whether voluntarily provided or required to be provided, by any **insured** under any:

1.  Workers' Compensation law;

2.  Non-occupational Disability law; or

3.  Occupational Disease law.

C.  This insurance does not apply to **property damage** to:

1.  Property owned by any **insured**.

2.  Any **aircraft** owned, hired, rented or used by, or in the care, custody or control of, any **insured**.

3.  Property owned by others when any **insured** has physical control of such property, or has agreed to be responsible for or insure such property.

Paragraph 3. of this exclusion (C.) does not apply to the extent that liability coverage is provided by **underlying insurance** and is not excluded elsewhere in this policy.

D.  This insurance does not apply to **personal injury** which results from a false statement if done by or at the direction of any **insured** with knowledge that the statement was false, or made with reckless disregard for the truth.

E.  This insurance does not apply to **bodily injury** or **property damage**:

1.  Caused by the intentional or purposeful acts of any **insured** that would be expected by any reasonable person to result in **bodily injury** or **property damage**. This applies even if the resulting **bodily injury** or **property damage**:

    a.  Is of a different kind, quality or degree than initially expected or intended; or

    b.  Is sustained by a different person, entity, real property or personal property than initially expected or intended.

This exclusion (E.1.) does not apply to **bodily injury** or **property damage** resulting from the use of lawful reasonable force by any **insured** to protect persons or property.

2.  Arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of or presence of any **fungus**, wet or dry rot, or bacteria.

This exclusion (E.2.) does not apply to any **fungi** or bacteria that are, are on, or are contained in, a good or product intended for consumption.

3.  Arising out of the use of any **motor vehicle** while that **motor vehicle** is being operated in, or in practice for, any **driving contest** or **challenge**.

F.  This insurance does not apply to **bodily injury** or **personal injury**:

1.  Sustained by any **insured**.

2.  Arising out of illegal discrimination or violation of civil rights.

3.  Arising out of any actual, alleged or threatened:

    a.  Sexual misconduct;

    b.  Sexual harassment;

    c.  Sexual molestation; or

    d.  Physical or mental abuse.

4.  Arising out of the transmission of any communicable disease by any **insured**.

G.  This insurance does not apply to **bodily injury, property damage** or **personal injury**:

1.  Arising out of property any **insured** sells, gives away or abandons.

This exclusion (G.1.) does not apply to the extent that liability coverage is provided by **underlying insurance** and is not excluded elsewhere in this policy.

2.  Arising out of:

CIC 1234 56 78 70U

a. The ownership, maintenance, use, loading or unloading of; or

b. The entrustment by any **insured** of; or

c. Vicarious liability, whether or not statutorily imposed, for the actions of anyone using;

a **motor vehicle, personal watercraft** or **watercraft**.

This exclusion (G.2.) does not apply to the extent that liability coverage is provided by **underlying insurance** and is not excluded elsewhere in this policy.

3. Arising out of:

   a. The ownership, maintenance, use, loading or unloading of; or

   b. The entrustment of any **insured** of; or

   c. Vicarious liability, whether or not statutorily imposed, for the actions of anyone using;

   an **aircraft** or **hovercraft**.

4. Arising out of the rental or holding for rental of any part of any premises, including any real property or real estate, by any **insured**.

   This exclusion (G.4.) does not apply to the extent that liability coverage is provided by **underlying insurance** and is not excluded elsewhere in this policy.

5. Arising out of any **business** or **business property** of any **insured**.

   This exclusion (G.5.) does not apply to the extent that liability coverage is provided by **underlying insurance** and is not excluded elsewhere in this policy.

6. Arising out of the rendering of or failure to render **professional services**.

7. Arising out of a criminal act or omission by, or with either the knowledge or consent of, any **insured**.

8. Arising directly or indirectly out of, or conduct resulting in: war including undeclared war; civil war; insurrection; rebellion; revolution; warlike act by a military force or military personnel; or destruction or seizure or use for a military purpose. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

9. Arising out of any **insured's** activities as an officer or member of a board of directors of any organization.

   This exclusion (G.9.) does not apply to non-profit religious, charitable or civic organizations when:

   a. The activity is not connected with any **insured's business**; and

   b. The **insured** is not compensated for the activity other than reimbursement of out-of-pocket expenses.

10. Arising out of any contract or agreement.

    This exclusion (G.10) does not apply to the extent that liability coverage is provided by **underlying insurance** and is not excluded elsewhere in this policy.

11. Arising out of the actual, alleged or threatened discharge, dispersal, release, escape, seepage or migration of pollutants however caused and whenever occurring. This includes any loss, cost or expense arising out of any:

    a. Request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

CIC 1234 56 78 70U

b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants, as used in this exclusion (G.11.) means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials which are to be recycled, reconditioned or reclaimed.

12 Arising out of exposure to lead paint or other lead-based products.

13 Arising out of exposure to asbestos.

14 Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s). Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs.

This exclusion (G.14.) does not apply to the extent that liability coverage is provided by **underlying insurance** and is not excluded elsewhere in this policy.

---

## CONDITIONS

A. Bankruptcy. Bankruptcy or insolvency of any **insured** will not relieve **us** of **our** obligations under this policy.

B. Concealment, Misrepresentation or Fraud.

1. If **you** or any other **insured**, whether before or after an **occurrence** or offense to which this policy applies, has done any of the following related to the issuance of this policy or in the presentation of a claim, **we** may deny coverage as to the interest of all **insureds**:

   a. Intentionally concealed or misrepresented any material fact or circumstance.

   b. Engaged in fraudulent conduct.

   c. Made false statements which if known by **us** would have caused **us** not to:

      (1) Issue the policy;

      (2) Issue the policy in as large an amount;

      (3) Provide coverage for the hazard resulting in the loss; or

      (4) Issue the policy for the same amount of premium or at the same rate.

2. **We** reserve all rights to seek recovery from any person committing concealment, misrepresentation or fraud for all payments made and costs incurred.

C. Duties After an **Occurrence** or Offense. **We** will not be required to provide coverage under this policy unless there has been full compliance with these duties. In case of an **occurrence** or offense, **you** or **your** representative will perform the following duties that apply:

1. Give written notice to **us** or **our** agent as soon as is practical, which sets forth:

   a. The identity of the named insured shown on the Declarations;

   b. Reasonably available information about the time, place and circumstances of the **occurrence** or offense; and

   c. Names and addresses of any claimants and witnesses.

CIC 1234 56 78 70U

2. Cooperate with **us** in the investigation, settlement or defense of any claim or suit.

3. Promptly forward to **us** every notice, demand, summons or other process relating to the **occurrence** or offense.

4. At **our** request, help **us**:

   a. Make settlement;

   b. Enforce any right of contribution or indemnity against any person or organization who may be liable to any **insured**;

   c. With the conduct of suits and attend hearings and trials; and

   d. Secure and give evidence and obtain the attendance of witnesses.

5. For **property damage** losses, if **we** request, submit to **us** within 60 days after notice of loss a statement of loss and show the damaged property if in the control of any **insured**.

6. No **insured** will, except at the **insured's** own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the **bodily injury**.

D. <u>Other Insurance.</u> The coverage afforded by this policy is excess over any other insurance available to an **insured**, except insurance written specifically to be excess over this policy.

E. **Our** <u>Right to Recover Payment.</u>

1. If **we** make a payment under this policy, **we** are entitled, but not required, to exercise the **insured's** rights of recovery against any person or other entity liable for the **occurrence** or offense.

2. **We** can join with any **insured** and any insurer providing **underlying insurance** in the exercise of these rights.

3. The **insured** must do whatever is necessary to enable **us** to exercise these rights, and shall do nothing after

an **occurrence** or offense to prejudice or defeat them.

F. <u>Ownership.</u> For purposes of this policy, a vehicle is deemed to be owned by a person if leased under a written agreement to that person for a continuous period of at least six months.

G. <u>Required **Underlying Insurance**</u>.

1. If **underlying insurance** for **bodily injury** or **property damage** has terminated, is uncollectible, or has a limit less than the **retained limit**, this will not void coverage. However, **we** will pay for **bodily injury** or **property damage** only as though the **underlying insurance** was collectible and in force in the amount of the **retained limit**.

2. **We** will not pay the difference between the **retained limit** and any lower limit actually in effect.

H. <u>Spouse Access.</u>

1. The named insured and **we** agree that the named insured and resident spouse are "customers" for purposes of state and federal privacy laws. The resident spouse will have access to the same information available to the named insured and may initiate the same transactions as the named insured.

2. The named insured may notify **us** that he/she no longer agrees that the resident spouse shall be treated as a "customer" for purposes of state and federal privacy laws, and **we** will not permit the resident spouse to access policy information.

I. <u>Suit Against **Us**.</u>

1. No action can be brought against **us**:

   a. Unless there has been full compliance with the policy provisions; and

   b. Until the obligation of the **insured** has been determined by final judgment or by agreement signed by **us**.

CIC 1234 56 78 70U

2. No person or organization has any right under this policy to join **us** as a party to any legal action against any **insured**.

J. Termination.

1. Cancellation.

   a. **You** may cancel this policy at any time. However, the effective date of the cancellation cannot be earlier than the date of **your** request unless **we** agree to an earlier date.

   b. **We** may cancel this policy by sending an electronic notice, where allowed by law, to the named insured shown on the Declarations, or at **our** sole option, **we** may cancel by sending notice to the named insured by regular mail to the most recent address **you** provided to **us**. In either event, notice will be sent:

      (1) At least 10 days before the effective date of cancellation if cancellation is for nonpayment of premium; or

      (2) At least 30 days before the effective date of cancellation in all other cases.

2. Nonrenewal. If **we** decide not to renew this policy, **we** will send electronic notice, where allowed by law, to the named insured shown on the Declarations, or, at **our** sole option, **we** may send the named insured notice by regular mail to the most recent address **you** provided to **us**. In either event, notice will be sent at least 30 days before the end of the policy period.

3. Other Termination Provisions.

   a. Proof of mailing or electronic transmission of any notice will be sufficient proof of notice.

   b. If this policy is cancelled, the named insured may be entitled to a premium refund. The premium refund, if any, will be computed according to **our** manuals. However, making or offering to make the refund is not a condition of cancellation.

   c. The effective date of cancellation stated in the notice will become the end of the policy period.

K. Transfer of **Your** Interest in This Policy.

**Your** rights and duties under this policy may not be assigned without **our** written consent. However, if the named insured shown on the Declarations dies, **we** will provide coverage until the end of the policy period for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown on the Declarations;

2. Any **family member** who is an **insured** at the time of **your** death, but only while a resident of **your** household; and

3. The legal representative of the deceased named insured, but only with respect to **occurrences** covered by this policy and for which the deceased named insured would have been liable.

L. Waiver or Change of Policy Provisions. This policy contains all the agreements between **you** and **us**. Its provisions may not be changed or waived except by endorsement issued by **us**. If a change requires a premium adjustment, **we** will adjust the premium as of the effective date of the change.

Copyright. USAA. 2009. All rights reserved
Includes copyrighted material of Insurance Services Office Inc., with its permission.

# EXHIBIT C



USAA®

# HOMEOWNERS POLICY PACKET

EFFECTIVE: 05-24-16 TO: 05-24-17

ROBERT AINSWORTH
2590 MORNING SKY CT
PARK CITY UT 84060-7065

CIC      00235 34 64      96A

# IMPORTANT MESSAGES

Refer to your Declarations Page and endorsements to verify that coverages, limits, deductibles and other policy details are correct and meet your insurance needs.  Required information forms are also enclosed for your review.

1) USAA considers many factors when determining your premium.  Maintaining your property to reduce the probability of loss is one of the most important steps you can take toward reducing premium increases.  A history of claim activity will affect your policy premium.

2) Go to usaa.com to view policy coverages and home features.

3) Your policy does NOT cover loss due to flood from any source. For information about obtaining flood coverage from the National Flood Insurance Program (NFIP), call USAA at (800) 531-8722, or contact the NFIP directly.

   If you already have a flood policy, you should review it to make sure you have the appropriate coverage and limits. No automatic increases or adjustments are applied to your policy. Coverage for loss of household contents due to flood may be available at an additional cost. If you have questions, please call a member service representative at the phone number above.

This is not a bill.  Any premium charge or return for this policy will be reflected on your next regular monthly statement.
**To receive this document and others electronically or view your policy summary online, go to usaa.com.**
For U.S. Calls:  Policy Service (800) 531-8111.  Claims (800) 531-8222.
HOCS1                                                                                      49709-0406

THIS PAGE INTENTIONALLY LEFT BLANK



USAA CASUALTY INSURANCE COMPANY MAIL-GENR-I

**9800 Fredericksburg Road - San Antonio, Texas 78288**

RENEWAL DECLARATIONS PAGE

| Named Insured and Residence Premises | Policy Number |
|---|---|
| GILLIAN M AINSWORTH AND ROBERT J AINSWORTH | CIC   00235 34 64  96A |

2590 MORNING SKY CT
PARK CITY, SUMMIT, UT  84060-7065

Policy Period From:  05/24/16      To:  05/24/17
(12:01 A.M. standard time at location of the residence premises)

---

**SECTION I - COVERAGES AND AMOUNTS OF INSURANCE**

| | |
|---|---|
| COVERAGE A - DWELLING PROTECTION | $1,345,000 |
| COVERAGE B - OTHER STRUCTURES PROTECTION | $134,500 |
| COVERAGE C - PERSONAL PROPERTY PROTECTION | $1,008,750 |
| COVERAGE D - LOSS OF USE PROTECTION (UP TO 12 MONTHS) | UNLIMITED |

**SECTION II - COVERAGES AND LIMITS OF LIABILITY**

| | |
|---|---|
| Personal Liability – Each Occurrence | $300,000 |
| Medical Payments to Others | $5,000 |

**DEDUCTIBLES (Applies to SECTION I Coverages ONLY)**
We cover only that part of the loss over the deductible stated.

| | |
|---|---|
| ALL PERILS | $10,000 |

**POLICY PREMIUM for Section I and Section II Coverages Above**  $2,661.76

**CREDITS AND DISCOUNTS** (Included in policy premium above.)  $1,060.74 CR
Details on the following page. (If applicable)

**OTHER COVERAGES AND ENDORSEMENTS**  $15.32

Forms and Endorsements are printed on the following page.

**STATE SURCHARGES AND TAXES** (Shown below if applicable)

**TOTAL POLICY PREMIUM**
Including Credits, Discounts, Optional Coverages, Endorsements, State Surcharges and Taxes
$2,677.08

PREMIUM DUE AT INCEPTION. THIS IS NOT A BILL. STATEMENT TO FOLLOW.

---

**FIRST MORTGAGEE:**

| | |
|---|---|
| WELLS FARGO BANK, N.A. #936 | LOAN NR      0420103475 |
| ITS SUCCESSORS AND/OR ASSIGNS | |
| PO BOX 100515 | |
| FLORENCE, SC 29502-0515 | |

In witness whereof, this policy is signed on  03/24/16

Deneen Donnley, Secretary        Alan W. Krapf, President

**REFER TO YOUR POLICY FOR OTHER COVERAGES, LIMITS AND EXCLUSIONS.**

HO-D1 (07–08)        ATTACH THIS DECLARATION TO PREVIOUS POLICY        87028-0708



**USAA CASUALTY INSURANCE COMPANY**
**RENEWAL DECLARATIONS PAGE**

| | **Policy Number** | | **Policy Term:** | 05/24/16 | 05/24/17 |
|---|---|---|---|---|---|
| CIC | 00235 34 64 | 96A | | **Inception** | **Expiration** |

POLICY AND ENDORSEMENTS THAT ARE PART OF YOUR CONTRACT WITH US.

REMAIN IN EFFECT (Refer to prior Policy Packet(s) for documents not attached.):

```
QR9CIC       (07-08) QUICK REFERENCE-PREFERRED PROTECTION
HO-9R(02)    (07-08) PREFERRED PROTECTION PLAN
HO-ACP       (07-12) AMENDMENT TO CONTRACT PROVISIONS
HO-UT        (07-08) UTAH SPECIAL PROVISIONS
HOSLS9(02)   (07-08) SPECIAL LOSS SETTLEMENT
HO-208       (07-12) WATER BACKUP OR SUMP PUMP OVERFLOW
HO-41        (08-09) ADDITIONAL INSURED
HO-82        (07-08) PERSONAL INJURY LIABILITY                  $15.32
```

YOUR PREMIUM HAS BEEN REDUCED BY THE FOLLOWING CREDITS AND DISCOUNTS:

```
AUTO AND HOME COMBINATION DISCOUNT        $297.45 CR
CLAIMS FREE DISCOUNT                      $297.45 CR
HOME AGE DISCOUNT                         $191.17 CR
PROTECTIVE DEVICE CREDIT                  $274.67 CR
```

**HO-D2**  (07-08)                         03/24/16

87029-0708

# WORKERS' COMPENSATION NOTICE

Most states now require employers to carry Workers' Compensation coverage for their employees. In a number of states this coverage applies to household workers, gardeners and even baby–sitters. The employer usually becomes liable to the employee for the protection after the employee has earned a certain minimum salary or worked a certain minimum number of hours per week/per quarter. You should consult the appropriate agency below for the requirements in your state.

We do not write Workers' Compensation in your state. Your current policy does not provide Medical Payments or Liability coverage for injury to an employee who is or is supposed to be covered by Workers' Compensation. This should not alarm you, however, since Workers' Compensation coverage can be obtained separately from another company or agency. Contact the department listed below for guidance in purchasing your Workers' Compensation coverage.

**REMEMBER,** you do not have to give up your present insurance with us in order to purchase Workers' Compensation coverage from another source.

**ALASKA**
Workmen's Compensation Division
Department of Labor
P.O. Box 25512
Juneau, AK  99802–5512

**COLORADO**
Workers' Compensation Section
Division of Labor
1120 Lincoln St., 14th Floor
Denver, CO  80203

**CONNECTICUT**
Workers' Compensation Commission
1890 Dixwell Avenue
Hamden, CT  06514

**DELAWARE**
Industrial Accident Board
State Office Building, 6th Floor
820 North French Street
Wilmington, DE  19801

**DISTRICT OF COLUMBIA**
DC Department of Employment Services
Labor Standards Bureau
Office of Workers' Compensation
64 New York Avenue, NE, 2nd floor
Washington, DC 20002

**HAWAII**
Disability Compensation Division
Department of Labor and Industrial Relations
P.O. Box 3769
Honolulu, HI  96812

**IOWA**
Division of Industrial Services, Department of Employment Services
1000 E. Grand Avenue
Des Moines, IA 50319

**KANSAS**
Division of Workers' Compensation
Department of Human Resources
600 Merchants Bank Tower
800 SW Jackson
Topeka, KS 66612–1227

**KENTUCKY**
Department of Workers' Claims
Perimeter Park West
1270 Louisville Rd, Building C
Frankfort, KY 40601

65704–1207
Page 1 of 2

**MARYLAND**
Workers' Compensation Commission
6 North Liberty Street
Baltimore, MD 21201

**MASSACHUSETTS**
Department of Industrial Accidents
600 Washington St., 7th Floor
Boston, MA 02111

**MICHIGAN**
Bureau of Workers' Disability Compensation
Department of Labor
P.O. Box 30016
201 North Washington Square
Lansing, MI 48909

**MINNESOTA\***
Workers' Compensation Division
Department of Labor and Industry
443 Lafayette Road
St. Paul, MN. 55155

**OHIO**
Workers' Compensation Board
30 West Spring Street
Columbus, OH 43266−0581

**OKLAHOMA**
Oklahoma Workers' Compensation Court
1915 N. Stiles
Oklahoma City, OK 73105

**SOUTH CAROLINA**
Workers' Compensation Commission
1612 Marion St.
P.O. Box 1715
Columbia, SC 29202

**SOUTH DAKOTA**
Division of Labor and Management
Department of Labor
Kneip Building, Third Floor
700 Govenors Drive
Pierre, SD 57501−2277

**UTAH**
Industrial Commission
160 East 300 South
Salt Lake City, UT 84111

\*   BE ADVISED that your policy only applies to injuries received by employees excluded from coverage by the Workers' Compensation statutes under Minn. Stat. 176.041, Subd. 1. You may be liable for any claims or expenses occurring outside of the Coverage of this policy. As an employer you may be subject to liability for lost wages, medical payments, rehabilitation for work related injuries, as well as additional amounts in penalties if workers' compensation coverage is required and no policy has been obtained. Also you may be penalized up to $1,000 per week per employee for any period of non−insurance pursuant to Minn. Stat. 176.181, Subd. 3.

Homeowners 9R(02)
Preferred Protection Plan
(07-08)
HO 2008 Program

# AGREEMENT

In return for payment of premium and subject to all terms of this policy, we will provide the insurance described.

# DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse when a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance. Certain words and phrases are defined and are printed in boldface and quotation marks when used.

1. **"Actual cash value"** is calculated as the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. **"Actual cash value"** applies to valuation of covered property regardless of whether that property has sustained partial loss or total loss. The **"actual cash value"** of lost or damaged property may be significantly less than its replacement cost.

2. **"Aircraft"** means any conveyance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

3. **"Bodily injury"** means physical injury, sickness or disease, including required care, loss of services and death that results.

   **"Bodily injury"** does not include mental injuries such as: emotional distress, mental anguish, humiliation, mental distress, or any similar injury unless it arises out of physical injury to the person claiming a mental injury.

4. **"Business"** means any full or part-time activity arising out of or related to any trade, profession or occupation of any **"insured"**.

5. **"Collapse"** means:

   a.   A sudden falling or caving in;

b.   A sudden breaking apart or deformation such that the building or part of a building is in imminent peril of falling or caving in and is not fit for its intended use.

   Damage consisting solely of settling, cracking, shrinking, bulging or expansion is not covered by this additional insurance unless it is the direct result of **"collapse"**.

6. **"Damages"** means compensatory damages the **"insured"** is legally obligated to pay as a result of **"bodily injury"** or **"property damage"** covered by this insurance, but does not include punitive, exemplary or multiple damages.

7. **"Fungus"** means any microorganism or by-product of any microorganism, including but not limited to mold, mildew, fungi, mycotoxins and spores.

8. **"Hovercraft"** means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles.

9. **"Insured"** means:

   a.   The **"member"**

   b.   Spouse when a resident of the same household; and

   c.   Residents of your household who are:

      (1) Your relatives; or

(2) Other persons under the age of 21 and in care of any person named above.

Under SECTION II, **"insured"** also means:

d.  With respect to animals, **"watercraft"** or **"personal watercraft"** to which this policy applies, any person or organization legally responsible for these animals, **"watercraft"** or **"personal watercraft"** which are owned by you or any person included in 9.a, 9.b or 9.c. above. A person or organization using or having custody of these animals, **"watercraft"** or **"personal watercraft"** in the course of any **"business"** or without consent of the owner is not an **"insured".**

e.  With respect to any vehicle or conveyance to which this policy applies:

(1) **"Residence employees"** while engaged in your employ or that of any person included in 9.a, 9.b. or 9.c. above; or

(2) Other persons using the vehicle on an **"insured location"** with your consent.

10. **"Insured location"** means:

a.  The **"residence premises";**

b.  Any premises used by you in connection with 10.a. above;

c.  Any part of a premises:

(1) Not owned by any **"insured"**; and

(2) Where any **"insured"** is temporarily residing;

d.  Vacant land, other than farm land owned by or rented to any **"insured";**

e.  Land owned by or rented to any **"insured"** on which a one or two family dwelling is being built as a residence for any **"insured";**

f.  Individual or family cemetery plots or burial vaults of any **"insured";** or

g.  Any part of a premises occasionally rented to any **"insured"** for other than **"business"** use.

11. **"Member"** means the owner of the policy who is the person who meets all eligibility requirements for membership and whose membership  number is shown in the Declarations of this policy.

12. **"Motor vehicle(s)"** means any type of motorized land vehicle or conveyance, whether or not subject to motor vehicle registration.

13. **"Named peril(s)"** means one or more of the perils listed under LOSSES WE COVER – PERSONAL PROPERTY PROTECTION.

14. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a.  **"Bodily injury";** or

b.  **"Property damage".**

15. **"Personal watercraft"** means a conveyance, used or designed to be used on water that uses a jet pump powered by an internal combustion engine as the primary source of propulsion.

16. **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

17. **"Professional services"** means any type of service to the public that requires members rendering a service to obtain an advanced degree and/or obtain a license or other legal authorization to provide the service and includes, but is not limited to services rendered by dentists, naturopaths, chiropractors, physicians and surgeons, doctors of dentistry, physical therapists, occupational therapists, podiatrists, optometrists, nurses, nurse-midwives,

veterinarians, pharmacists, architects, landscape architects, engineers, accountants, land surveyors, psychologists, attorneys-at-law, therapists, counselors and social workers.

18. **"Property damage"** means physical damage to, or destruction of tangible property, including loss of use of this property.

19. **"Residence employee"** means an employee of any **"insured"** whose primary duties are related to the maintenance or use of the **"residence premises"**, including household or domestic service.

20. **"Residence premises"** means:

    1. The one family dwelling, other structures, and grounds; or

    2. That part of any other building;

Where you reside and which is shown as the **"residence premises"** in the Declarations.

**"Residence premises"** also means a two, family dwelling where you reside in at least one of the family units and which is shown as the **"residence premises"** in the Declarations.

21. **"Sudden and accidental"** means an abrupt, fortuitous event which is unintended from the perspective of a reasonable person.

22. **"War"** means war whether declared or undeclared; civil war; insurrection; rebellion; revolution; any warlike act by friendly or enemy forces, destruction or seizure for a military purpose.

23. **"Watercraft"** means a conveyance principally designed to be propelled on or in water by wind, current, paddles, oars, engine power or electric motor.

# DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the applicable amount of insurance that applies, we will pay only that part of the total of all loss payable under SECTION I - PROPERTY WE COVER that exceeds the deductible amount shown in the Declarations.

# SECTION I - PROPERTY WE COVER

**COVERAGE A - Dwelling Protection**

We cover:

1. The dwelling on the **"residence premises"** shown in the Declarations, including structures attached to the dwelling;

2. Materials and supplies located on or next to the **"residence premises"** used to construct, alter, or repair the dwelling or other structures on the **"residence premises"**; and

3. Custom or permanently installed window treatments and permanently installed carpeting.

Except as specifically provided in SECTION I - ADDITIONAL COVERAGES, Land, we do not cover land, including land on which the dwelling is located.

**COVERAGE B - Other Structures Protection**

We cover:

1. Other structures on the **"residence premises"**.

    a. We cover other structures on the **"residence premises"**:

        (1) Set apart from the dwelling by clear space; and

        (2) Sidewalks, driveways and fences; and

(3) Structures connected to the dwelling by only a fence, utility line, or similar connection.

b. We do not cover:

(1) Land, except as specifically provided in SECTION I  ADDITIONAL COVERAGES, Land, we do not cover land, including land on which the other structures are located;

(2) Structures used in whole or part for **"business"** unless such use consists solely of use of office space for paperwork, computer work or use of a telephone, and consists solely of activities that are:

(a) Duties of any **"insured's"** employment by another; and

(b) Performed solely by an **"insured"**.

**2.** Other Structures away from the **"residence premises"**.

a. We cover other structures owned by you and located away from the **"residence premises"**, if used by you in connection with the **"residence premises"**.

b. We do not cover:

(1) Other structures located away from the **"residence premises"**:

(a) Being used as a dwelling; or

(b) Capable of being used as a dwelling; or

(c) Used in whole or part for **"business"**; or

(2) Land, including land on which the other structure is located.

The amount of insurance for all structures will not be more than the amount of insurance shown in the Declarations for Other Structures Protection.

**COVERAGE C – Personal Property Protection**

We cover;

Tangible personal property owned or used by any **"insured"** while it is anywhere in the world. After a loss and at your request, we will cover the loss of personal property owned by:

**1.** Others while the property is on the part of the **"residence premises"** occupied by any **"insured"**;

**2.** A guest or a **"residence employee"**, while the property is in any residence occupied by any **"insured"**.

The amount of insurance for personal property usually located at any **"insured's"** residence, other than the **"residence premises"** is limited to 10% of the amount of insurance for Personal Property Protection, or $1,000, whichever is greater.

Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Amounts of Insurance.** The special amounts set out below do not increase the Personal Property Protection amount of insurance. The special amount for each numbered category below is the total amount for each loss for all property in that category.

**1.** $200 for money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards, smart cards and gift certificates including electronic gift certificates.

**2.** $1,000 for securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

This limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

3. $1,500 for **"watercraft"** or **"personal watercraft"** including their trailers, furnishings, equipment and outboard motors.

4. $1,500 for trailers not used with **"watercraft"** or **"personal watercraft"**.

5. $10,000 for loss by theft of jewelry, watches, precious and semi-precious stones, fur garments, including any garment containing fur, which represents its principal value.

6. $2,500 on stamps, trading cards and comic books, including any of these that are part of a collection.

7. $10,000 for loss by theft of firearms.

8. $10,000 for loss by theft of silverware, silver-platedware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This category includes but is not limited to flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

9. (a) $10,000 for tangible **"business"** property at your residence.

   (b) $1000 for tangible **"business"** property away from your residence.

10. $3,000 on motorized golf carts and their equipment and accessories. But if, at the time of loss, there is any other insurance covering physical loss to golf carts, then this policy does not apply.

11. $3,000 for motorized vehicles designed or modified to operate at speeds not to exceed 15 miles per hour and for use off public roads. However, this limit does not apply to vehicles not subject to motor vehicle registration which are:

   a. Used to service any **"insured's"** residence, or
   b. Designed for assisting the handicapped.

**Property We Do Not Cover.**

1. Personal property separately described and specifically insured in this or other insurance.

2. Animals, birds or fish.

3. **"Motor vehicle(s)"**. This includes but is not limited to:

   a. Equipment, accessories, and parts; or

   b. Any device or instrument for the transmitting, recording, receiving or reproduction of data, sound or pictures which is permanently installed in a **"motor vehicle"**. We do not cover antennas, tapes, wires, discs or other media, for use with any such device or instrument, while in or upon the **"motor vehicle"**.

   We do cover **"motor vehicle(s)"** or all other motorized land conveyances not subject to motor vehicle registration which are:

   a. Used to service any **"insured's"** residence; or

   b. Designed for assisting the handicapped.

   We also cover:

   a. Motorized golf carts and their equipment and accessories; and

   b. Motorized vehicles designed or modified to operate at speeds not to exceed 15 miles per hour and for use off public roads

   subject to the provisions under Special Amounts of Insurance.

4. **"Aircraft"** and parts.

5. **"Hovercraft"** and parts.

6. Personal property of roomers, roommates, boarders, or other tenants. This does not apply to property of roomers, roommates, boarders or other tenants who qualify as **"insureds"**

7.  Personal property in an apartment regularly rented or held for rental to others by any **"insured"**, except as provided in ADDITIONAL COVERAGES, Landlord's Furnishings.

8.  Property rented or held for rental to others off the **"residence premises".**

9.  **"Business"** data, records, recordings, images and photographs including such data stored in:

    a.  Books of account, drawings or other paper records; or,

    b.  Electronic storage media.

    However, we do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market.

10. Personal data, records, recordings, images, and photographs, regardless of storage media. This includes songs, movies and other audio or video media which you purchase and download onto a computer or portable electronic media player, other than as provided in ADDITIONAL COVERAGES, Electronic Media. However, we do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market.

11. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in ADDITIONAL COVERAGES, Credit Card Coverage and Identity Fraud Expense Coverage.

**COVERAGE D – Loss of Use Protection**

The amount of insurance for Loss of Use shown on the Declarations is the total limit for all the coverages that follow.

1.  **Additional Living Expense.** If a loss covered under Section I – LOSSES WE COVER makes that part of the **"residence premises"** where you reside uninhabitable, we cover the reasonable and necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

    Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event, not to exceed 12 months.

    However, if a loss covered under Section I – LOSSES WE COVER results from an event which is assigned a Property Claims Service (PCS) catastrophe code, payment will be the for the shortest time required to repair or replace the damage, or if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event not to exceed 24 months. This extension does not increase the amount of insurance provided under Loss of Use Protection.

2.  **Fair Rental Value.** If a loss covered under Section I – LOSSES WE COVER makes that part of the **"residence premises"** rented to others or held for rental by you uninhabitable, we cover the fair rental value of that part of the **"residence premises"** rented to others or held for rental by you less any expenses that do not continue while the premises is uninhabitable.

    Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental, but not to exceed 12 months.

3.  **Prohibited Use.** If a loss covered under Section I – LOSSES WE COVER results in an order from a civil authority prohibiting you from use of the **"residence premises"** as a result of direct damage to neighboring premises by a loss covered under Section I – LOSSES WE COVER, we cover the Additional Living Expense or Fair Rental Value loss as provided under 1. and 2. above for not more than two weeks. A neighboring premise is defined as a premises that is adjacent to the **"residence premises".**

The periods of time under 1., 2., and 3. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

Except as provided by ADDITIONAL COVERAGES Fungus, or Wet or Dry Rot, the coverage afforded under 1., 2. and 3. does not apply to loss caused by **"fungus"**, or wet or dry rot.

No deductible applies to the coverage afforded under 1, 2. and 3. above.

# ADDITIONAL COVERAGES

Unless specifically addressed elsewhere in this policy, the coverages provided below are the only coverages provided for the following:

1. **Debris Removal**

   a. We will pay your reasonable expense for the removal of:

      (1) Debris of covered property if loss to the damaged property is covered under Section I - LOSSES WE COVER; or

      (2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

      This expense is included in the amount of insurance that applies to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the amount of insurance for the damaged property, an additional 5% of that amount of insurance will be available to cover debris removal expense.

   b. We will also pay your reasonable expense, up to $1,000 in the aggregate, for the removal from the **"residence premises"** of:

      (1) Your tree(s) felled by the peril of windstorm or hail, or weight of ice, snow or sleet; or

      (2) A neighbor's tree(s) felled by a loss covered under **"named peril(s)"**.

      provided the tree(s)

      (3) Damage(s) a covered structure; or

   (4) Does not damage a covered structure; but

      (a) Blocks a driveway on the **"residence premises"** which prevents a **"motor vehicle"** that is registered for use on public roads or property, from entering or leaving the **"residence premises"**; or

      (b) Blocks a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

      The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

      This coverage reduces the amount of insurance that applies to the covered property.

      The policy deductible applies.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable loss under Section I - LOSSES WE COVER, we will pay the reasonable expense incurred by you, for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable loss under Section I - LOSSES WE COVER. This coverage reduces the amount of insurance that applies to the covered property and does not relieve you of your duties in case of a loss to covered property, as set forth in Section I - CONDITIONS 2.d.

The policy deductible applies.

**3.  Trees, Shrubs and Other Plants.**

We cover trees, shrubs, plants, lawns or landscaping on the **"residence premises"**; for loss caused by the following Losses We Cover: Fire or Lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **"residence premises"**, Vandalism or malicious mischief or Theft.

We will pay up to 5% of the amount of insurance that applies to the dwelling for all trees, shrubs, plants, lawns or landscaping. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for **"business"** purposes.

This coverage is additional insurance and does not reduce the amount of insurance.

The policy deductible applies.

**4.  Fire Department Service Charge.**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a loss under Section I  LOSSES WE COVER.

This coverage is additional insurance and does not reduce the amount of insurance.

No deductible applies to this coverage.

**5.  Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a loss under Section I - LOSSES WE COVER and for no more than 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property.

This coverage reduces the amount of insurance that applies to the property being removed.

The policy deductible applies.

**6.  Credit Card Coverage and Identity Fraud Expense Coverage.**

We will pay up to $5,000 in the aggregate for all loss and defense costs resulting from **Credit Card Coverage** and **Identity Fraud Expense Coverage.**

For the purposes of **Credit Card Coverage** and **Identity Fraud Expense Coverage**, a series of acts committed by any one person in which any one person is concerned or implicated is considered to be one loss, even if a series of acts continues into a subsequent policy period.

a.  **Credit Card Coverage** also includes, fund transfer cards, forgery and counterfeit money. Under **Credit Card Coverage**, we pay for all loss and defense costs resulting from:

(1) The legal obligation of any **"insured"** to pay because of the theft or unauthorized use of credit cards issued to or registered in any **"insured's"** name;

(2) Loss resulting from theft or unauthorized use of electronic fund transfer cards or access devices used for deposit, withdrawal or transfer of funds, issued to or registered in any **"insured's"** name;

(3) Loss to any **"insured"** caused by forgery or alteration of any **"insured's"** check or negotiable instrument written on an **"insured's"** bank account.  This does not include loss by the acceptance of a forged, altered or counterfeit check, or other negotiable instrument, by an **"insured".**

(4) Loss to any **"insured"** through acceptance in good faith of counterfeit United States or Canadian paper currency.

For losses covered by this additional insurance we will provide defense as follows:

(1) We may investigate and settle any claim or suit as we deem to be appropriate. Our duty to defend a claim or suit ends when the amount we pay or tender for the loss equals the applicable amount of insurance.

(2) If a suit is brought against any **"insured"** as a result of theft or unauthorized use of a credit card or fund transfer card, we will provide a defense at our expense by counsel of our choice. We have the option to defend at our expense any **"insured"** against any suit for the enforcement of payment under the forgery coverage.

This is additional insurance and does not reduce the amount of insurance.

No deductible applies to **Credit Card Coverage.**

b. **Under Identity Fraud Expense Coverage,** we pay for **"expenses"** and defense costs incurred by any **"insured"** as the direct result of **"identity fraud".**

With respect to the provisions of this coverage only, the following definitions are added:

**"Identify Fraud"** means the act of knowingly transferring or using, without lawful authority, a means of identification of any **"insured"** with the intent to commit, or aid or abet, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

**"Expenses"** means:

(1) Costs for notarizing fraud affidavits or similar documents for financial institutions or similar credit grantors or credit agencies that have required that such affidavits be notarized;

(2) Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors;

(3) Lost wages as a result of time taken off from work to meet with, or talk to, law enforcement agencies, credit agencies, merchandise, and/or legal counsel, or to complete fraud affidavits, not to exceed $250 per day;

(4) Loan application fees for re-applying for a loan or loans when original application is rejected solely because the lender received incorrect credit information resulting from **"identity fraud":**

(5) Reasonable attorney fees incurred, with our prior consent, for:

   (a) Defense of lawsuits brought against the **"insured"** by merchants or their collection agencies; and

   (b) The removal of any criminal or civil judgments wrongly entered against an **"insured".**

(6) Charges incurred for long distance telephone calls to merchants, law enforcement agencies, financial institutions or similar credit grantors, or credit agencies to report or discuss an actual **"identity fraud";**

(7) Research fees charged by merchants, financial institutions or similar credit grantors, or credit agencies resulting from **"identity fraud".**

This coverage is additional insurance and does not reduce the amount of insurance.

A $100 deductible applies to **Identity Fraud Expense Coverage.**

The following exclusions apply to **Credit Card Coverage** and **Identity Fraud Expense Coverage**:

(1) We do not cover forgery, theft or use of a credit card, electronic fund transfer card or access device:

    (a) By a resident of your household or any **"insured"**;

    (b) By a person who has been entrusted with the card(s) or device(s);

    (c) If any **"insured"** has not complied with all terms and conditions under which the cards or devices are issued.

(2) We do not cover loss arising out of **"business"** pursuits, dishonesty, fraud, or criminal activity of any **"insured"**.

7. **Loss Assessment.** We will pay up to $10,000 for your share of loss assessment charged against you by a corporation or association of property owners for an event that occurs during the policy period, when the assessment is made as a result of **"sudden and accidental"** direct physical loss to the property, owned by all members collectively, caused by a loss under Section I – LOSSES WE COVER for **DWELLING PROTECTION COVERAGE AND OTHER STRUCTURES PROTECTION COVERAGE**, subject to all provisions of the policy.

This coverage does not apply to assessments made as a result of damage caused by:

a. Earthquake; or

b. Land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the **"residence premises"**.

We do not cover loss assessments charged against you or a corporation or association of property owners by any government body.

The limit of $10,000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

This coverage is not limited by the expiration of this policy.

This coverage is additional insurance and does not reduce the amount of insurance.

No deductible applies to this coverage.

8. **"Collapse"** For an entire building or any part of a building covered by this insurance we insure for direct physical loss to covered property involving **"collapse"** of a building or any part of a building only when the **"collapse"** is caused by one or more of the following:

a. **"Named peril(s)"** apply to covered buildings and personal property for loss insured by this additional coverage.

b. Decay that is hidden from view, meaning damage that is unknown prior to collapse or that does not result from a failure to reasonably maintain the property;

c. Insect or vermin damage that is hidden from view, meaning damage that is unknown prior to **"collapse"** or that does not result from a failure to reasonably maintain the property;

d. Weight of contents, equipment, animals or people;

e. Weight of rain which collects on a roof; or

f. Use of defective material or methods in construction, remodeling or renovation if the **"collapse"** occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, water well, cistern, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the loss is a direct result of the **"collapse"** of a building.

This coverage reduces the amount of insurance that applies to the damaged covered property.

The policy deductible applies.

9. **Lock Replacement.** When the dwelling door keys are stolen in a covered theft loss, we will pay the cost to:

   a.  Change the combination in the lock hardware of the doors, or

   b.  Change the lock hardware of the doors.

   The most we will pay for Lock Replacement is $250. No deductible applies to this coverage.

10. **Refrigerated Products**. We will pay you up to $500 for loss to the contents of a freezer or a refrigerator located on your **"residence premises"**, as a consequence of power failure or mechanical breakdown. This $500 limit is the most we will pay in any one loss regardless of the number of freezers or refrigerators.

   The Power Failure exclusion under Section I – LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION does not apply to Refrigerated Products.

   This coverage does not increase the Personal Property Protection amount of insurance.

   No deductible applies to this coverage.

11. **Land.** If a loss covered under Section I - LOSSES WE COVER damages a building on the **"residence premises"** insured under Dwelling Protection or Other Structures Protection and the same loss causes the land necessary to support the building insured under Dwelling Protection or Other Structures Protection to become unstable, we will pay up to $10,000 for the cost required to replace, rebuild, stabilize or otherwise restore such land.

   This coverage is additional insurance and does not reduce the amount of insurance.

   The policy deductible applies.

12. **Glass or Safety Glazing Material**

   We cover:

   a.  The breakage of glass or safety glazing material caused by a loss under Section – I  LOSSES WE COVER, which is part of a covered building, storm door or storm window; and

   b.  Damage to covered property by glass or safety glazing material which is part of a building storm door or storm window.

   This coverage does not include loss on the **"residence premises"** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. An **"insured"** dwelling being constructed is not considered vacant.

   This coverage reduces the amount of insurance that applies to the damaged property.

   The policy deductible applies.

13. **Landlord's Furnishings.**  We will pay up to $2,500 for your appliances, your carpeting and other household furnishings located in an apartment on the **"residence premises"** regularly rented or held for rental to others by any **"insured"**, for loss caused by **"named peril(s)"**, other than Theft.

The $2,500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishing involved in the loss.

This coverage reduces the Personal Property Protection amount of insurance.

The policy deductible applies.

14. **Building Ordinance or Law.** For loss caused by a loss under Section I – LOSSES WE COVER to buildings under Dwelling Protection and Other Structures Protection, we will pay the increased costs which are required and you actually incur to comply with any ordinance or law governing the rebuilding, repair or demolition of the damaged property.

The limit for this coverage will not be more than 5% of the Coverage A – Dwelling Protection amount of insurance.

This coverage is additional insurance and does not reduce the Dwelling Protection amount of insurance.

The policy deductible applies.

15. **Temporary Living Expense.** We will pay up to $2,000 for necessary increase in costs which you incur to maintain your normal standard of living when the **"residence premises"** is uninhabitable due to a loss caused by earthquake, volcanic eruption, landslide, or if a civil authority prohibits your use of the **"residence premises"** because an earthquake, volcanic eruption or landslide has occurred. This coverage is additional insurance and does not reduce the Loss of Use Protection amount of insurance.

No deductible applies to this coverage.

16. **Fungus, Or Wet or Dry Rot.**

   1. We will pay up to a total of $2,500 for:

      a. The cost to treat, remove or dispose of **"fungus"**, or wet or dry rot, from covered property;

      b. The cost to tear out and replace any part of the building or other covered property as needed to gain access to the **"fungus"**, or wet or dry rot, and/or

      c. The cost to test, to detect, measure or evaluate air or property to confirm the absence, presence or level of **"fungus"**, or wet or dry rot, whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reasonable probability that there is the presence of **"fungus"**

      which is the direct result of a loss under Section I – LOSSES WE COVER.

   2. We will pay up to $2,000 for the necessary increase in costs which you incur to maintain your normal standard of living when the **"residence premises"** is uninhabitable due to a loss caused by, resulting from, or consisting of **"fungus"**, or wet or dry rot, which is the direct result of Section I – LOSSES WE COVER.

This coverage is additional insurance and does not reduce the amount of insurance.

No deductible applies to this coverage once the policy deductible has been met.

17. **Military Uniforms and Equipment.** We will waive your deductible for loss to uniforms and military equipment, owned by you, including but not limited to clothing, insignia, flight cases, headsets, personal body armor and GPS devices for a loss caused by **"named peril(s)"** while you are on active or active reserve duty.

This coverage reduces the Personal Property Protection amount of insurance.

No deductible applies to this coverage.

**18. War.** To the extent that coverage for **"war"** is provided here, item 1. f. under LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION and the **"war"** exclusion in any endorsement attached to this policy do not apply.

We will pay up to $10,000 for:

a.  Direct loss or damage to your personal property caused by **"war"**; or:

b.  Abandonment as a consequence of **"war"**

subject to the following conditions:

This coverage applies only:

a.  To any **"insured"** who is subject to government reimbursement for loss to personal property under 31 USC 3721, commonly referred to as the Military Personnel and Civilian Employees Claims Act, as amended and supplemented, or any successor or replacement act; and

b.  To loss that occurs anywhere outside the Continental United States, Alaska and Hawaii.

In addition to compliance with the other provisions of **Your Duties After Loss**, you must:

a.  Report your claim to the U.S. Government, its affiliate or agency, and comply with its requirements;

b.  Send us, within 60 days after our request, copies of all actual documents which outline the basis of the government's reimbursement for your loss including the amount paid.

The **Suit Against Us** clause is changed for loss by **"war"** only:

No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of payment by the government.

The **Loss Settlement** clause in this policy is changed for loss by **"war"** only to read:

**"War"** loss to personal property under this policy is not payable until the U.S. Government has made its final payment to you for the loss under 31 USC 3721 as amended and supplemented, or any successor or replacement act.

Subject to all policy provisions, our payment will be the total amount of your loss minus the U.S. government payment.

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss, and satisfactory evidence of the amount of the U.S. Government payment, or we reach an agreement with you.

This coverage reduces the Personal Property Protection amount of insurance.

No deductible applies to this coverage.

**19. Electronic Media**, meaning songs, movies and other audio or video media, which you purchased and downloaded onto a computer or portable electronic media player. We will pay up to $250 for a loss covered under **"named peril(s)"**, provided that you maintain records to document the actual purchase of this media. This coverage does not include personal data or records.

This coverage is additional insurance and does not reduce the Personal Property Protection amount of insurance.

The policy deductible applies.

# SECTION I - LOSSES WE COVER

**COVERAGE A – DWELLING PROTECTION COVERAGE AND COVERAGE B – OTHER STRUCTURES PROTECTION COVERAGE**

We insure against **"sudden and accidental"**, direct, physical loss to tangible property described in PROPERTY WE COVER - Coverages A and B unless excluded in Section I – LOSSES WE DO NOT COVER.

**COVERAGE C – PERSONAL PROPERTY PROTECTION**

We insure against **"sudden and accidental"**, direct, physical loss to tangible property described in PROPERTY WE COVER - Coverage C caused by a peril listed below unless the loss is excluded in **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION.**

1. **Fire or lightning.**

2. **Windstorm or hail.**

   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand, or dust enters through this opening.

   This peril includes loss to the **"watercraft"**, **"personal watercraft"**, and their trailers, furnishings, equipment and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **"Aircraft"**, including self-propelled missiles and spacecraft.

6. **Vehicles**, meaning damage caused by or resulting from an impact with a **"motor vehicle"**. This does not include damage to personal property being transported by a **"motor vehicle"** unless this vehicle is itself involved in a collision.

7. **Smoke**, meaning **"sudden and accidental"** damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial smudging or operations.

8. **Vandalism or malicious mischief.**

9. **Theft**, including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

   This peril does not include loss caused by theft:

   a. Committed by any **"insured"** or any other person regularly residing on any part of the **"insured location"** for a period in excess of thirty consecutive days, if other permanent residency is established or claimed elsewhere;

   b. In or to a dwelling under construction, or materials and, supplies for use in the construction until the dwelling is finished and occupied; or

   c. From that part of a **"residence premises"** rented by any **"insured"** to a person who does not qualify as an **"insured"**

   This peril does not include loss caused by theft that occurs away from the **"residence premises"** of:

   a. Property while at any other residence owned by, rented to, or occupied by any **"insured"** unless the **"insured"** has stayed at the temporary residence at any time during the 60 days immediately before the loss.

   b. **"Watercraft"**, or **"personal watercraft"** including their furnishings, equipment and outboard motors; or

   c. Trailers and campers.

**10. Falling objects.**

This peril does not include loss to property contained in a building unless the roof or an outside wall of a building is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight of ice, snow or sleet,** which causes damage to property contained in a building.

**12. Discharge or overflow** of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance. A plumbing system does not include a sump pump or sump well designed to drain subsurface water from the interior foundation area even if such overflow results from the mechanical breakdown of the sump pump.

This peril does not include loss:

a. To the system or appliance from which the water or steam escaped; or

b. Caused by or resulting from freezing except as provided in the peril of Freezing below; or

c. On the **"residence premises"** caused by discharge or overflow which occurs off the **"residence premises"**.

**13. Tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

**14. Freezing of a plumbing**, heating, air conditioning or automatic fire protective system or of a household appliance.

This peril does not include loss on the **"residence premises"**, if you have failed to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water.

**15. Damage from artificially generated electrical current.**

**16. Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

## SECTION I – LOSSES WE DO NOT COVER

**LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION.**

**1.** Unless otherwise stated in 3. below we do not insure for damage consisting of or caused directly or indirectly by any of the following, regardless of:

(i) The cause of the excluded event or damage that; or

(ii) Other causes of the loss that; or

(iii) Whether the event or damage occurs, suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of these to; or

(iv) Whether other causes or events act concurrently or in any sequence with the excluded event to

produce the loss.

a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion does not apply if you have:

(1) Maintained heat in the building; or

(2) Shut off the water supply and drained the system and appliances of water;

b.  Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

   (1) Swimming pool, hot tub, or spa, including their filtration and circulation system; or

   (2) Fence, pavement, patio; or

   (3) Foundation, retaining wall or bulkhead; or

   (4) Pier, wharf or dock.

c.  Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

d.  Vandalism and malicious mischief or breakage of glass and safety glazing materials, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 180 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

e.  Constant or repeated seepage or leakage of water or steam over a period of 14 days or more from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance;

f.  Wear and tear, marring, deterioration;

g.  Mechanical breakdown, latent defect, inherent vice, or any quality of the property that causes it to damage or destroy itself;

h.  Smog, rust, electrolysis or other corrosion;

i.  Smoke from agricultural smudging or industrial operations;

j.  Discharge, dispersal, seepage, migration, release or escape of **"pollutants"** unless the discharge, dispersal, seepage, migration, release or escape is itself caused by **"named peril(s)"** of this policy.

k.  Settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

l.  Birds, rodents, insects;

m.  Animals owned or kept by any **"insured".**

n.  Vermin meaning animals, other than (m.) above, that access real or personal property for foraging or shelter and by their presence cause damage to such property. Vermin include, but are not limited to armadillos, bats, beavers, coyotes, ferrets, opossums, porcupines, raccoons, skunks and squirrels.

o.  Nesting, infestation, discharge or release of waste products or secretions, by any birds, rodents, insects, vermin, or animals owned or kept by an **"insured".**

p.  Pressure from, or presence or intrusion of tree, shrub or plant roots.

2.  If items 1.f. through 1.p. above cause water damage which is not otherwise excluded, we cover the resulting water damage, including the cost of tearing out and replacing any part of a building necessary to repair a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance. We do not cover loss to the system or appliance from which this water escaped.

3.  If any items in 1. above directly causes a **"named peril(s)"** to occur, the resulting damage produced by the **"named peril(s)"** is covered unless otherwise excluded or excepted elsewhere in this policy.

**LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION:**

1. We do not insure for damage consisting of or caused directly or indirectly by any of the following regardless of:

    (i) The cause of the excluded event or damage that; or

    (ii) Other causes of the loss that; or

    (iii) Whether the event or damage occurs, suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of these to; or

    (iv) Whether other causes or events act concurrently or in any sequence with the excluded event to

    produce the loss.

    a. **Ordinance or Law**, meaning the increased cost of demolition, repairs or rebuilding due to the enforcement or compliance with any ordinance or law regulating the construction, repair or demolition of a building or other structure other than as provided in ADDITIONAL COVERAGES, Building Ordinance or Law.

    b. **Earth Movement** arising from or caused by or resulting from human or animal forces or any act of nature, meaning:

        (1) Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

        (2) Landslide; mudslide or mudflow;

        (3) Subsidence, sinkhole, erosion or movement resulting from improper compaction, site selection or any other external forces;

    (4) Earth sinking, rising or shifting, expanding or contracting of earth, all whether combined with water or not;

    unless direct loss by fire, theft, explosion, or breakage of glass or safety glazing material which is part of a building, storm door or storm window results and then we will pay only for the resulting loss.

    c. **Water Damage** arising from, caused by or resulting from human or animal forces, any act of nature, or any other source. Water damage means damage caused by or consisting of:

        (1) Flood, surface water, waves, tidal water, storm surge, tsunami, any overflow of a body of water, or spray from any of these, whether or not driven by wind; or

        (2) Any release, overflow, escape or rising of water otherwise held, contained, controlled or diverted by a dam, levee, dike or by any type of water containment, water diversion or flood control device; or

        (3) Water or water-borne material which backs up through sewers or drains or which overflows from a sump pump, sump well or similar device designed to drain water from the foundation area; or

        (4) Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps through a building, sidewalk, driveway, foundation, swimming pool or other structure;

    unless direct loss by fire, explosion or theft results from water damage and then we will pay only for the resulting loss.

d. **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the **"residence premises"** except as provided in ADDITIONAL COVERAGES, Refrigerated Products.

If damage caused by a loss insured under Section I LOSSES WE COVER results on the **"residence premises"**, we will pay only for that damage.

e. **Neglect**, by or failure of any **"insured"** to use all reasonable means to save and preserve property at and after the time of a loss or damage or the event resulting in loss or damage.

f. **"War"** and any consequence of **"war"**, except as provided in ADDITIONAL COVERAGES, War. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g. **Nuclear Hazard**, meaning

(1) Any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

(2) Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Section I - LOSSES WE COVER.

(3) This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

h. **Intentional Loss,** meaning loss arising out of any act any **"insured"** commits or conspires to commit with the intent to cause a loss. Even **"insureds"** who did not commit or conspire to commit the act causing the loss are not entitled to coverage.

i. **"Fungus", or Wet or Dry Rot, or Bacteria** other than as provided in ADDITIONAL COVERAGES, **"Fungus", or Wet or Dry Rot**.

j. **"Collapse"**, other than as provided in ADDITIONAL COVERAGES, **"Collapse"**.

k. **Diminution in value**, meaning any reduction in value that would remain after damaged property is repaired or replaced.

**2.** We do not insure for loss caused by any of the following. However, any ensuing loss to property described in Dwelling Protection and Other Structures Protection not precluded by any other provision in this policy is covered.

a. **Weather Conditions** which includes but is not limited to heat, cold, humidity, rain, ice, snow, sleet, wind, hail or drought. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION, item 1. above to produce the loss.

b. **Acts or decisions**, including the failure to act or decide, of any person, group, organization or governmental body;

c. **Faulty, negligent, inadequate or defective**:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or maintenance.

This limitation applies to loss or damage to any property on or off the **"residence premises"**.

# SECTION I - LOSS SETTLEMENT

We will not pay more than the amount of insurance that applies to the damaged, destroyed or stolen property as stated on the Declarations page unless such amount is increased due to ADDITIONAL COVERAGES or the Home Protector Coverage.  Subject to the amount of insurance covered losses are settled as follows:

1.  For the following property:

    a.  Structures that are not buildings; and

    b.  All covered structures whether or not they are buildings, if located away from the **"residence premises"**.

    We will pay the lesser of:

    a.  The **"actual cash value"**; or

    b.  Our cost to replace the property with property of like kind, quality, age and condition; or

    c.  Our cost to repair or our cost to restore the property to the condition it was in just before the loss

2.  All items under Property We Cover - Dwelling Protection and buildings on the **"residence premises"** under Other Structures Protection. We will pay our cost to repair or our cost to replace the damaged property with similar construction and for the same use on the premises shown in the Declarations, subject to the following:

    a.  When our cost to repair or replace the damaged property is less than $5,000 we will pay you the full replacement cost amount without deduction for depreciation.

    b.  When our cost to repair or our cost to replace the damaged property is greater than $5,000, and until actual repair or replacement is completed, we will pay only the **"actual cash value"**, not to exceed our cost to repair or our cost to replace the damaged part of the property.

        (1)  To receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within one year after the date of loss, unless during this period you request in writing that this time limit be extended for an additional 180 days, and notify us within 30 days after the work has been completed.

        (2)  When repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or our cost to repair or replace the damaged part of the property, whichever is less.

3.  Home Protector Coverage.

    You agree:

    a.  To insure your buildings under Property We Cover - Dwelling Protection and Other Structures Protection, on the **"residence premises"**, for the full replacement cost at the time this policy is issued; and

    b.  To accept any increase in coverage that results from the application of the Adjustment to Building Cost provision if it is deemed necessary by us. You must pay for any added premium; and

    c.  To tell us within 90 days of the start of any additions or other physical changes to buildings on the **"residence premises"** which increases the value by the greater of:

        (1)  $25,000; or

        (2)  5% of the current Dwelling Protection amount of insurance.

    You must pay any resulting premium.

If you comply with these requirements and if as a result of a covered loss, you have exhausted the amount of insurance:

a. Applying to buildings covered under Property We Cover - Dwelling Protection or Other Structures Protection; or

b. Provided under ADDITIONAL COVERAGES, Debris Removal; or

c. Provided under ADDITIONAL COVERAGES, Building Ordinance or Law;

then, we will pay up to an additional 25% of the amount of insurance applying to the damaged building. The most we will pay for a., b., or c., either singly or in any combination is 25% or the amount actually and necessarily spent to repair or replace the damaged building, whichever is less.

4. Loss Settlement - Personal Property. We will settle losses to covered property at full replacement cost without deduction for depreciation, subject to the following:

REPLACEMENT COST COVERAGE DEFINED

Replacement Cost means the cost, at the time of loss, of a new item identical to the one damaged, destroyed or stolen. If an identical item is no longer manufactured or cannot be obtained, replacement cost will be the cost of a new item which is:

a. Similar to the insured article, and

b. Of like quality and usefulness.

PROPERTY COVERED

a. Personal property covered in Property We Cover - Personal Property Protection, except personal property stated in Property Not Eligible below;

b. If covered in this policy; awnings, carpeting, and household appliances, whether or not attached to buildings.

PROPERTY NOT ELIGIBLE

Replacement cost coverage does not apply to:

a. Items of rarity or antiquity that cannot be replaced;

b. Articles whose age or history contributes substantially to their value. These include, but are not limited to, memorabilia, souvenirs and collectors items;

c. Motorized golf carts and their equipment and accessories;

d. Articles not maintained in good or workable condition;

e. Property that is either obsolete or useless to the **"insured"** at the time of loss;

f. Property that you do not intend to repair, replace, or restore.

LOSS SETTLEMENT

a. For property that is eligible for replacement cost coverage it is our option to:

(1) Replace, or pay you our cost to replace the property with new property of like kind and quality without deduction for depreciation; or

(2) Pay you the cost to repair or restore the property to the condition it was in just before the loss; or

(3) Pay you the necessary amount actually spent to repair or replace the damaged property.

b. We will pay no more than **"actual cash value"** until repair or replacement of the damaged property is completed, unless the entire loss is less than $2,500

c. You make a claim for loss on an **"actual cash value"** basis and then make claim within one year after the loss for any additional liability under the terms of this provision.

d. For property that is not eligible for replacement cost coverage, it is our option to:

(1) Pay you the **"actual cash value"**; or

(2) Replace, or to pay you our cost to replace the property with property of like kind, age, quality and condition; or

(3) Pay you the cost to repair or restore the property to the condition it was in just before the loss.

e. We will not pay more than the Amount of Insurance that applies to Personal Property Protection. Nor will we pay more than any Special Amounts of Insurance that apply as stated in this policy.

## SECTION I – CONDITIONS

1. **Insurable Interest and Amount of Insurance**. Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

a. To the **"insured"** for more than the amount of the **"insured's"** interest at the time of loss; or

b. For more than the applicable amount of insurance

whichever is less.

2. **Your Duties After Loss.** In case of a loss to which this insurance may apply you must see that the following are done:

a. Promptly notify us or our agent about the loss. This policy will not provide any coverage for your loss if you fail to notify us about the loss within one year after the loss actually occurs;

b. Notify the police in case of loss by theft, vandalism, or any other criminal act;

c. Notify the credit card or fund transfer card company in case of loss under ADDITIONAL COVERAGES, Credit Card Coverage, and Identity Fraud Expense Coverage;

d. (1) Protect the property from further damage;

(2) Make reasonable and necessary repairs to protect the property; and

(3) Keep an accurate record of repair expenses;

e. Cooperate with us in the investigation of a claim;

f. At our request prepare an inventory of claimed personal property showing the quantity, description, age, replacement cost and amount of loss. Include with the inventory all bills, receipts and related documents that support the items listed and substantiate the figures shown in the inventory;

g. As often as we reasonably require:

(1) Show the damaged property;

(2) Provide us with records and documents we request and permit us to make copies; and

(3) Submit to and sign, while not in the presence of any other **"insured"**:

(a) Statements; and

(b) Examinations under oath; and

(4) Produce employees, members of your household or others for examinations under oath to the extent it is within your power to do so;

h.  Send to us, within 60 days after our request, your signed proof of loss which sets forth, to the best of your knowledge and belief:

(1) The time and cause of loss;

(2) The interest of the **"insured"** and all others in the property involved and all liens on the property.

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimate;

(6) The inventory of claimed personal property described in 2.f. above;

(7) Receipts for Additional Living Expenses and Temporary Living Expenses incurred and records that support the Fair Rental Value loss; and

(8) Evidence or affidavit stating the amount and cause of loss that supports a claim under ADDITIONAL COVERAGES, Credit Card Coverage, and receipts, bills or other records that support your claim for expenses under Identity Fraud Expense Coverage.

**3.  Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

**4.  Loss or Damage to a Pair or Set.** In case of loss or damage to a pair or set we may elect to:

a.  Repair or replace any part to restore the pair or set to its value before the loss; or

b.  Pay the difference between **"actual cash value"** of the property before and after the loss.

**5.  Matching of Undamaged Property.** In case of damage to property, we will not pay to repair or replace undamaged property due solely to:

a.  Mismatch of color between undamaged material and new material used to replace faded, weathered or oxidized damaged material; or

b.  Mismatch between undamaged material and new material used to repair or replace damaged material due to outdated, obsolete or discontinued products.

**6.  Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the **"residence premises"** is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

a.  Pay its own appraiser; and

b.  Bear the other expenses of the appraisal and umpire equally.

Any fees for expert witnesses or attorneys will be paid by the party who hires them. Neither the umpire nor the appraisers will have a financial interest that is conditioned on the outcome of the specific matter for which they are called to serve.

This is not a provision providing for or requiring arbitration. The appraisers and umpire are only authorized to determine the **"actual cash value"**, replacement cost, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between you and us. The appraisal award cannot be used by either you or us in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon you and us. This appraisal process and authority granted to the appraisers and the umpire can only be expanded or modified by written mutual consent signed by you and us.

7. **Other Insurance**. Other insurance includes the coverage and any deductible required by such other insurance.

   If a loss covered by this policy, other than a loss covered by the ADDITIONAL COVERAGE, Credit Card Coverage and Identity Fraud Expense Coverage or golf cart coverage; is also covered by other insurance, we will pay only the proportion of the loss that the amount of insurance that applies under this policy bears to the total amount of insurance covering the loss.

   Coverage provided by the ADDITIONAL COVERAGE, Credit Card Coverage and Identity Fraud Expense Coverage is excess over other insurance that covers the same loss. This coverage is also excess over any other contractual conditions, rights or benefits that provide relief from or indemnification for your obligations to pay any amount to any third party resulting from a loss covered by this coverage. In no event will we pay more than the applicable amount of insurance.

   This policy does not apply to motorized golf carts and their equipment and accessories when any other insurance also applies.

8. **Suit Against Us**. No action can be brought against us unless you have:

   a. Given us notice of the loss,

   b. Complied with all other policy provisions, and

   c. Started the action

   within two years after the date of the loss

9. **Our Option**. If we give you written notice within 30 days after we receive your notice of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a. Reach an agreement with you;

    b. There is an entry of a final judgment; or

    c. There is a filing of an appraisal award with us.

11. **Abandonment**. You may not abandon property to us for any reason.

12. **Mortgagee Clause**. The word "mortgagee" includes trustee.

    If a mortgagee is named in this policy, any covered loss under Section I – LOSSES WE COVER for Dwelling Protection or Other Structures Protection will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

    If we deny your claim because you or any other **"insured"** has failed to comply with the terms and conditions of this policy that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

a. Promptly notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware; and

b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

c. Sends to us, within 60 days after our request, a signed sworn proof of loss which sets forth, to the best of the mortgagee's knowledge and belief:

    (1) The time and cause of loss;

    (2) The interest of the mortgagee and all others in the property involved and all liens on the property;

    (3) Other insurance which may cover the loss;

    (4) Changes in title or occupancy of the property during the term of the policy;

    (5) Specifications of damaged buildings and detailed repair estimates.

Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

d. Submits to examination under oath.

If we decide to cancel or not to renew this policy, the mortgagee will be properly notified at least 10 days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**13. No Benefit to Bailee**. We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**14. Salvage and Recovered Property.**

a. We have an interest in the salvage value of any property for which we have made a payment under the Loss Settlement Condition. At our option, property that we have paid for or replaced becomes our property.

b. If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property may be retained by you. If you retain the property, the loss payment, or any lesser amount to which we agree, must be refunded to us.

**15. Concealment, Misrepresentation or Fraud**. If you or any other **"insured"**, whether before or after an **"occurrence"** or loss under this policy has:

a. Intentionally concealed or misrepresented any material fact or circumstance;

b. Engaged in fraudulent conduct; or

c. Made false statements which, if known by us, would have caused us not to:

    (1) Issue the policy;

    (2) Issue the policy in as large an amount;

    (3) Provide coverage for the hazard resulting in the loss; or

    (4) Issue the policy for the same amount of premium or at the same rate

relating to the issuance of this policy or in the presentation of a claim, we may deny coverage or declare the entire policy void as to the interest of all **"insureds"** and refund the unearned premium as of the date of the conduct described in a., b., or c. above. Any unearned premium refund will be offset by any amounts paid to any **"insured"** under the policy after the date of the conduct described in a., b., or c. above.

We reserve all rights to seek recovery of the amount we pay from any person committing concealment, misrepresentation or fraud for all payments made and cost incurred.

**16. Duties to Determine and Maintain Policy Limits**. It is your responsibility to determine and maintain adequate amounts of insurance to totally replace or repair your dwelling, other structures and personal property.

**17. Adjustment to Building Cost**. The amount of insurance for Section l, Dwelling Protection, shown in the Declarations of this policy, will be revised at each policy renewal to reflect the rate of change in the replacement cost of your dwelling. The resulting limit will be rounded to the next $1,000.

Section l, Other Structures Protection, Personal Property Protection and Loss of Use, will also be adjusted. The rules then in use by us will determine the new amounts for these coverages.

These amounts will not be reduced without your consent.

You have the right to refuse any resulting change in amount. You must do so before the effective date of such change.

We have the right to change to another replacement cost calculation tool as of any renewal date. We will give you at least 30 days prior written notice if we do this. Such change must apply to all similar policies issued by us.

# SECTION II – LIABILITY COVERAGES

## COVERAGE E – Personal Liability

If a claim is made or a suit is brought against any **"insured"** for **"damages"** because of **"bodily injury"** or **"property damage"** caused by an **"occurrence"** to which this coverage applies, we will:

1. Pay up to our limit of liability for the **"damages"** for which the **"insured"** is legally liable; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for **"damages"** resulting from the **"occurrence"** equals our limit of liability. This coverage does not provide defense to any **"insured"** for criminal prosecution or proceedings.

We will not pay for punitive damages or exemplary damages, fines or penalties.

## COVERAGE F – Medical Payments to Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing **"bodily injury"**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except **"residence employees"**. As to others, this coverage applies only:

1. To a person on the **"insured location"** with the permission of any **"insured"**; or

2. To a person off the **"insured location"** if the **"bodily injury"**:

a. Arises out of a condition on the **"insured location"** or the ways immediately adjoining;

b. Is caused by the activities of any **"insured"**;

c. Is caused by a **"residence employee"** in the course of the **"residence employee's"** employment by any **"insured"**; or

d. Is caused by an animal owned by or in the care of any **"insured"**.

---

# SECTION II - EXCLUSIONS

1. **Coverage E – Personal Liability and Coverage F – Medical Payments to Others** do not apply to **"bodily injury"** or **"property damage"**:

   a. Which is reasonably expected or intended by any **"insured"** even if the resulting **"bodily injury"** or **"property damage"**:

      (1) Is of a different kind, quality or degree than initially expected or intended; or

      (2) Is sustained by a different person, entity, real or personal property, than initially expected or intended.

      However, this exclusion does not apply to **"bodily injury"** resulting from the use of lawful reasonable force by any **"insured"** to protect persons or property.

   b. (1) Arising out of or in connection with a **"business"** engaged in by any **"insured"**. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **"business"**.

      (2) Arising out of the rental or holding for rental of any part of any premises by any **"insured"**. This exclusion does not apply to the rental or holding for rental of any **"insured location"**.

         (a) On an occasional basis if used only as a residence;

         (b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

         (c) In part, as an office, school, studio or private garage;

   c. Arising out of the rendering or failure to render **"professional services"**;

   d. Arising out of a premises;

      (1) Owned by any **"insured"**; or

      (2) rented to any **"insured"**; or

      (3) rented to others by any **"insured"**;

      that is not an **"insured location"**;

   e. Arising out of:

      (1) The ownership, maintenance, use, loading or unloading of **"motor vehicles"** including trailers, owned or operated by or rented or loaned to any **"insured"**;

      (2) The entrustment by any **"insured"** of a **"motor vehicle"** to any person; or

      (3) Vicarious liability, whether or not statutorily imposed, for the actions of anyone using a **"motor vehicle"** excluded in paragraph (1) or (2) above.

This exclusion does not apply to the permissive use, loading or unloading of:

(1) A trailer not towed by or carried on a **"motor vehicle"**;

(2) A **"motor vehicle"** designed for recreational use off public roads, not subject to motor vehicle registration and;

    (a) Not owned by any **"insured"**; or

    (b) Owned by any **"insured"** provided the **"occurrence"** takes place on any **"insured location"**; or

    (c) Owned by any **"insured"** and designed or modified to operate at speeds not to exceed 15 miles per hour.

(3) A motorized golf cart that is designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an **"occurrence"**, is within the legal boundaries of:

    (a) A golfing facility and is parked or stored there, or being used by any **"insured"** to:

        (i) Play the game of golf or for other recreational or leisure activity allowed by the facility; or

        (ii) Travel to and from an area where **"motor vehicles"** or golf carts are parked or stored; or

        (iii) Cross public roads at designated points to access other parts of the golfing facility.

    (b) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an **"insured's"** residence.

(4) A **"motor vehicle"** not subject to motor vehicle registration which is:

    (a) Used to service any **"insured's"** residence; or

    (b) Designed for assisting the handicapped; or

    (c) In dead storage on an **"insured location"**.

f.  Arising out of:

(1) The ownership, maintenance, use, loading or unloading of; or

(2) The entrustment by any **"insured"** to any person of; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of anyone using:

a **"watercraft"** or **"personal watercraft"**.

This exclusion does not apply to any **"watercraft"** owned or borrowed by, or rented to any **"insured"**:

(1) With inboard, outboard or inboard-outdrive motor power of up to 50 horsepower: or

(2) That is a sailing vessel, with or without auxiliary power, which is up to 35 feet in length.

This exclusion does not apply to any **"personal watercraft"** or **"watercraft"** that is being stored.

g.  Arising out of:

(1) The ownership, maintenance, use, loading or unloading of; or

(2) The entrustment by any **"insured"** to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of anyone using:

an **"aircraft"** or **"hovercraft"**.

h. Caused directly or indirectly by **"war"** including any consequence of **"war"**. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

i. Arising out of the transmission of a communicable disease by any **"insured"**.

j. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s). Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

k. Arising out of the actual, alleged, or threatened discharge, dispersal, release, escape, seepage or migration of **"pollutants"** however caused and whenever occurring. This includes any loss, cost or expense arising out of any:

(1) Request, demand or order that any **"insured"** or others test for, monitor, clean up, remove, contain, treat, detoxify, or assess the effects of **"pollutants"**; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **"pollutants"**.

l. Arising out of exposure to lead paint or other lead-based products.

m. Arising out of exposure to asbestos.

n. Arising out of or caused by the commission of, attempting to flee from, or avoiding apprehension for a criminal act for which intent is a necessary element.

o. Arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of or presence of any **"fungus"**, or wet or dry rot, or bacteria.

p. Arising out of your failure, intentionally or unintentionally, to disclose information regarding the sale or transfer of real or personal property.

q. Arising out of any actual, alleged or threatened:

(1) Sexual misconduct; or

(2) Sexual harassment; or

(3) Sexual molestation.

r. Arising out of any actual, alleged or threatened physical or mental abuse.

Exclusions d., e., f., and g. do not apply to **"bodily injury"** to a **"residence employee"** arising out of and in the course of the **"residence employee's"** employment by any **"insured"**.

2. **Coverage E – Personal Liability does not apply to:**

a. Liability:

(1) For any loss assessment charged against you as a member of an association, corporation or community of property owners other than as provided in SECTION II – ADDITIONAL COVERAGES, Loss Assessment.

(2) Under any contract or agreement. However, this exclusion does not apply to written contracts:

(a) That directly relate to the ownership, maintenance or use of any **"insured location"**; or

(b) Where the liability of others is assumed by any **"insured"** prior to an **"occurrence"**;

unless excluded in (1) above or elsewhere in this policy.

b. **"Property damage"** to property owned by the **"insured".**

c. **"Property damage"** to property rented to, occupied or used by or in the care of any **"insured"**. This exclusion does not apply to **"property damage"** caused by fire, smoke or explosion.

d. **"Bodily injury"** to any person eligible to receive any benefits:

(1) Voluntarily provided; or

(2) Required to be provided, whether or not actually provided;

by any **"insured"** under any:

(1) Workers' compensation law;

(2) Non-occupational disability law; or

(3) Occupational disease law.

e. **"Bodily injury"** or **"property damage"** for which any **"insured"** under this policy:

(1) Is also an **"insured"** under a nuclear energy liability policy; or

(2) Would be an **"insured"** under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

(1) Nuclear Energy Liability Insurance Association;

(2) Mutual Atomic Energy Liability Underwriters;

(3) Nuclear Insurance Association of Canada; or any of their successors.

f. **"Bodily injury"** to you or any **"insured"** within the meaning of part a., b. or c. of **"insured"** as defined.

g. Punitive or exemplary damages, fines, or penalties.

3. **Coverage F – Medical Payments to Others** does not apply to **"bodily injury"**:

a. To a **"residence employee"** if the **"bodily injury"**:

(1) Occurs off the **"insured location"**; and

(2) Does not arise out of or in the course of the **"residence employee's"** employment by an **"insured"**.

b. To any person eligible to receive benefits:

(1) Voluntarily provided; or

(2) Required to be provided;

under any:

(1) Workers' compensation law; or

(2) Non-occupational disability law; or

(3) Occupational disease law.

c. From any:

(1) Nuclear reaction; or

(2) Nuclear radiation; or

(3) Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

(4) Any consequence of any of these.

d. To any person, other than a **"residence employee"** of any **"insured"**, regularly residing on any part of the **"insured location"** or residing on any part of the **"insured location"** for a period in excess of thirty consecutive days prior to the date of loss, if other permanent residency is established or claimed elsewhere.

# SECTION II – ADDITIONAL COVERAGES

Unless specifically addressed elsewhere in this policy, the coverages provided below are the only coverages provided for the following and do not reduce the limit of liability.

1. **Claim Expenses**. We pay:

   a. Expenses we incur and costs taxed against any **"insured"** in any suit we defend;

   b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

   c. Reasonable expenses incurred by any **"insured"** at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit;

   d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies;

   e. Prejudgment interest awarded against the **"insured"** on that part of the judgment we pay. If we make an offer to pay the applicable limit of liability, we will not pay any prejudgment interest based on that period of time after the offer.

2. **First Aid Expenses**. We will pay expenses for first aid to others incurred by any **"insured"** for **"bodily injury"** covered under this policy. We will not pay for first aid to you or any other **"insured"**.

3. **Damage to Property of Others**. We will pay, at replacement cost, up to $1,000 per **"occurrence"** for **"property damage"** to property of others caused by any **"insured"**.

We will not pay for **"property damage"**:

a. To the extent of any amount recoverable under SECTION I of this policy;

b. Caused intentionally by any **"insured"** who is 13 years of age or older;

c. To property owned by any **"insured"**;

d. To property owned by or rented to a tenant of any **"insured"** or a resident in your household; or

e. Arising out of:

   (1) A **"business"** engaged in by any **"insured"**;

   (2) Any act or omission in connection with a premises owned, rented or controlled by any **"insured"**, other than the **"insured location"**; or

   (3) The ownership, maintenance, occupancy, operation, use, loading or unloading of **"aircraft"**, **"hovercraft"**, **"watercraft"**, **"personal watercraft"** or **"motor vehicle"**. This exclusion e.(3) does not apply to a **"motor vehicle"** that:

      (a) Is designed for recreational use off public roads,

      (b) Is not owned by any **"insured"**; and

      (c) At the time and place of the **"occurrence",** is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

4. **Loss Assessment**. We will pay up to $10,000 for your share of loss assessment charged against you, by a corporation or association of property owners, when the assessment is made as a result of:

a. **"Bodily injury"** or **"property damage"** caused by an **"occurrence"** not excluded under SECTION II of this policy; or

b. Liability for an act committed by a director, officer or trustee during the policy period in the capacity as a director, officer or trustee, provided:

   (1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and

   (2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as an owner or tenant of the **"residence premises"**.

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $10,000 is the most we will pay for loss arising out of:

a. One **"occurrence"**, including continuous or repeated exposure to substantially the same general harmful conditions; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

SECTION II, Coverage E  Personal Liability Exclusion 2.a.(1) does not apply to this coverage.

This coverage is not limited by the expiration of this policy.

# SECTION II - CONDITIONS

1. **Limit of Liability**. The Coverage E limit is shown in the Declarations. This is our limit for all damages from each **"occurrence"** regardless of the number of **"insureds"**, claims made or persons injured. All **"bodily injury"** and **"property damage"** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one **"occurrence"**.

   The Coverage F limit is shown in the Declarations. This is our limit for all medical expenses payable for **"bodily injury"** to one person as the result of one accident.

2. **Severability of Insurance**. This insurance applies separately to each **"insured"**. This condition does not increase our limit of liability for any one **"occurrence"**.

3. **Concealment, Misrepresentation or Fraud**. If you or any other **"insured"**, whether before or after an **"occurrence"** or loss under this policy has:

a. Concealed or misrepresented any material fact or circumstance;

b. Engaged in fraudulent conduct; or

c. Made false statements which if known by us, would have caused us not to:

   (1) Issue the policy;

   (2) Issue the policy in as large an amount;

   (3) Provide coverage for the hazard resulting in the loss; or

   (4) Issue the policy for the same amount of premium or at the same rate

relating to the issuance of this policy or in the presentation of a claim we may deny coverage as to the interest of all **"insureds"**.

We reserve all rights to seek recovery from any person committing concealment, misrepresentation or fraud for all payments made and cost incurred.

4. **Duties After Loss**. In case of an accident or **"occurrence"**, the **"insured"** will perform the following duties that apply. You will help us by seeing that these duties are performed:

   a. Give written notice to us or our agent as soon as is practical, which sets forth:

      (1) The identity of the policy and **"insured"**;

      (2) Reasonably available information on the time, place and circumstances of the accident or **"occurrence"**; and

      (3) Names and addresses of any claimants and witnesses.

   b. Cooperate with us in the investigation, settlement or defense of any claim or suit.

   c. Promptly forward to us every notice, demand, summons or other process relating to the accident or **"occurrence."**

   d. At our request, help us:

      (1) To make settlement;

      (2) To enforce any right of contribution or indemnity against any person or organization who may be liable to any **"insured"**;

      (3) With the conduct of suits and attend hearings and trials;

      (4) To secure and give evidence and obtain the attendance of witnesses.

   e. Under Damage to Property of Others, if we request, submit to us within 60 days after notice of the loss, a statement of loss and show the damaged property, if in the **"insured's"** control.

   f. The **"insured"** will not, except at the **"insured's"** own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the **"bodily injury"**.

5. **Duties of an Injured Person – Coverage F – Medical Payments to Others**. The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

   The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

6. **Payment of Claim – Coverage F – Medical Payments to Others.** Payment under this coverage is not an admission of liability by any **"insured"** or us.

7. **Suit Against Us**. No action can be brought against us unless there has been compliance with the policy provisions.

   No one will have the right to join us as a party to any action against any **"insured"**. Also, no action with respect to Coverage E can be brought against us until the obligation of the **"insured"** has been determined by final judgment or agreement signed by us.

8. **Bankruptcy of any Insured**. Bankruptcy or insolvency of any **"insured"** will not relieve us of our obligations under this policy.

9. **Other Insurance – Coverage E – Personal Liability**. This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

# SECTIONS I AND II – CONDITIONS

1. **Policy Period**. This policy applies only to loss in SECTION I or **"bodily injury"** or **"property damage"** in SECTION II, which occurs during the policy period.

2. **Liberalization Clause**. If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

   This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

   a.  A subsequent edition of this policy; or

   b.  An amendatory endorsement.

3. **Waiver or Change of Policy Provisions**. A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

4. **Cancellation.**

   a.  You may cancel this policy at any time. But the effective date of cancellation cannot be earlier than the date of your request.

   b.  We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you by postal mail at your mailing address shown in the Declaration or provided to you electronically if we have your consent and agreement on file to receive documents electronically

Proof of mailing, whether by postal mail or by electronic media or communication channel, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant to an electronic transaction agreement, or upon directing it to an electronic mailbox or voice channel that you designate for the purpose of receiving mail.

(1)  When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

(2)  When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

(3)  When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

   (a)  Upon discovery of fraud, concealment or misrepresentation made by or with the knowledge of any **"insured"** in obtaining this policy, continuing the policy, or presenting a claim under this policy; or

   (b)  If the risk has changed substantially since the policy was issued; or

   (c)  Upon discovery that the **"insured"** does not meet USAA Group membership eligibility requirements; or

   (d)  Any other reason allowed by law.

   Cancellation can be done by notifying you at least 30 days before the date cancellation takes effect.

(4) When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

(5) If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**5.   Nonrenewal**. We may elect not to renew this policy. We may do so by letting you know in writing 30 days before policy termination. This nonrenewal notice may be delivered to you, mailed to you by postal mail at your mailing address shown in the Declarations or provided to you electronically if we have your consent and agreement on file to receive documents electronically.

Proof of mailing, whether by postal mail or by electronic media or communication channel, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant to an electronic transaction agreement, or upon directing it to an electronic mailbox or voice channel that you designate for the purpose of receiving mail.

**6.   Subrogation**. Any **"insured"** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **"insured"** must:

a.   Sign and deliver all related papers;

b.   Cooperate with us in a reasonable manner; and

c.   Do nothing after a loss to prejudice such rights.

**7.   Spouse Access**. The **"member"** and we agree that the **"member"** and resident spouse are customers and applicants for purposes of state and federal privacy and insurance laws. The resident spouse will have access to the same information available to the **"member"** and may conduct the same transactions as the **"member"** including making coverage changes, signing regulatory forms, terminating the policy, and selecting delivery preferences for policy documents.

The **"member"** may notify us that he/she no longer wants the resident spouse to have access or transaction authority on his/her policy, and we will not permit the resident spouse to access policy information or conduct transactions on this policy.

**8.   Assignment**. Assignment of this policy will not be valid unless we give our written consent.

**9.   Death**. If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a.   We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b.   For the purpose of this condition, **"insured"** includes:

(1) Any member of your household who is an **"insured"** at the time of your death, but only while a resident of the **"residence premises"**; and

(2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Copyright, USAA, 2008. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# EXHIBIT D



CIC 00235 34 64 71U
JUM1376
00000
DM00000

**UMBRELLA POLICY PACKET**

ROBERT AINSWORTH                                          March 4, 2016
2590 MORNING SKY CT
PARK CITY UT 84060-7065

Effective:  03/04/2016 to 12/07/2016
CIC 00235 34 64 71U

## Important Messages

Refer to your Declarations Page and endorsements to verify that coverage, limits and other policy details are correct and meet your insurance needs. Required information forms are also enclosed for your review.

This is not a bill. Any premium charge or return for this policy will be reflected on your next regular monthly statement. To receive this document and others electronically or to view your policy summary online, go to usaa.com. You may also contact us at  1-800-531-USAA (8722).

CIC 00235 34 64 71U
DM00000



USAA CASUALTY INSURANCE COMPANY
(A Stock Insurance Company)
9800 Fredericksburg Road, San Antonio, Texas 78288
**PERSONAL UMBRELLA POLICY DECLARATIONS - Amended**

Policy Number: CIC 00235 34 64 71U

Effective: From 03/04/2016 to 12/07/2016
(12:01 A.M. standard time at Umbrella Base Location)

Named Insured and Mailing Address:
ROBERT AINSWORTH
2590 MORNING SKY CT
PARK CITY UT 84060-7065

Umbrella Base Location:
2590 Morning Sky Ct
Park City, Summit, UT 84060

| | Limit (per occurrence) | Premium |
|---|---|---|
| Umbrella Liability | $3,000,000 | $210.00 |
| **Total** | | **$210.00** |

PREMIUM DUE AT INCEPTION

---

## SCHEDULE OF UNDERLYING INSURANCE

| TYPE OF INSURANCE | REQUIRED MINIMUM LIMITS | | | |
|---|---|---|---|---|
| | Bodily Injury | Property Damage | OR | Combined Single Limit |
| Private Passenger Vehicle Liability | $300,000/$500,000 | $100,000 | OR | $500,000 |
| Miscellaneous Vehicle Liability | $250,000/$500,000 | $100,000 | OR | $500,000 |
| Personal Liability | | | | $300,000 |
| Watercraft/Pers Watercraft Liability | | | | $300,000 |

**USAA requires you to maintain NO LESS THAN the above REQUIRED MINIMUM LIMITS.
See the Required Minimum Insurance Condition in your policy.**

**Please verify your actual limits and exposures on the attached Supplemental
Declarations.**

ADJUSTMENT REASON(S):

Change in Underlying Coverage

ENDORSEMENTS:

Added: NONE

Remain in Effect (Refer to Previous Policy) -  PU-100UT (09-10), PU-2009 (07-09), PU-2011
(04-11)

In WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at
San Antonio, Texas, on this date 03/04/2016.

Steven Alan Bennett, Secretary

Alan W. Krapf, President

PU2009D (05-13)

89853-0513
Page 1 of 1



CIC 00235 34 64 71U

# PERSONAL UMBRELLA POLICY
## Supplemental Declarations

**Effective:**
From **03/04/2016** to **12/07/2016**
(12:01 a.m. standard time at Umbrella Base Location)

Your Umbrella premium is based in part on the following. The limits shown below represent the lowest policy limits carried.

Please contact us if any changes are needed.

## DESCRIPTION OF KNOWN EXPOSURES

**Motor Vehicles (Includes Private Passenger and Miscellaneous Vehicles):**
        **Lowest Coverage Limit(s):** $300,000/$500,000/$300,000

2016 TOYOTA 4RUNNER

**Properties/Residences:**
        **Lowest Coverage Limit:** $300,000

2590 Morning Sky Ct, Park City, Summit, UT 84060

CIC 1234 56 78 70U



**USAA**
9800 Fredericksburg Road
San Antonio, Texas 78288

## PERSONAL UMBRELLA POLICY

### READ YOUR POLICY, DECLARATIONS AND ENDORSEMENTS CAREFULLY

This policy is a legal contract between the named insured and the company shown on the Declarations. And like other contracts, it contains certain duties and responsibilities of both parties to the contract.  This contract consists of this policy plus the Declarations page and any applicable endorsements. The Quick Reference section outlines essential information contained on the Declarations and the major parts of the policy.

This is a participating policy. You are entitled to dividends as may be declared by the company's Board of Directors.

If this policy is issued by United Services Automobile Association ("USAA"), a reciprocal interinsurance exchange, the following apply:

- By purchasing this policy you are a member of USAA and are subject to its bylaws.

- This is a non-assessable policy. You are liable only for the amount of your premium as USAA has a free surplus in compliance with Article 19.03 of the Texas Insurance Code of 1951, as amended.

- The USAA Board of Directors may annually allocate a portion of USAA's surplus to Subscriber's Accounts. Amounts allocated to such accounts remain a part of USAA's surplus and may be used as necessary to support the operations of the Association. A member shall have no right to any balance in the member's account except until following termination of membership, as provided in the bylaws.

## QUICK REFERENCE

|  |  | DECLARATIONS PAGE |
|---|---|---|
|  |  | Named Insured and Address |
|  |  | Policy Period |
|  |  | Policy Limits and Premiums |
|  |  | Schedule of Underlying Insurance |
|  |  | Endorsements |
| Beginning on Page | **2** | **Agreement and Definitions** |
|  | **4** | **Liability Coverages** |
|  |  | Insuring Agreement |
|  |  | Damages |
|  |  | Defense |
|  |  | Limit of Liability |
|  |  | Damages |
|  |  | Defense |
|  | **5** | **Exclusions** |
|  | **8** | **Conditions** |
|  |  | Bankruptcy |
|  |  | Concealment, Misrepresentation or Fraud |
|  |  | Duties After An Occurrence or Offense |
|  |  | Other Insurance |
|  |  | Our Right to Recover Payment |
|  |  | Ownership |
|  |  | Required Underlying Limits |
|  |  | Spouse Access |
|  |  | Suit Against Us |
|  |  | Termination |
|  |  | Cancellation |
|  |  | Nonrenewal |
|  |  | Other Termination Provisions |
|  |  | Transfer of Your Interest in This Policy |
|  |  | Waiver or Change of Policy Provisions |

CIC 1234 56 78 70U

---

## AGREEMENT

In return for payment of premium and subject to all terms of this policy, we will provide the insurance described.

However, this policy provides no uninsured motorists coverage, underinsured motorists coverage, auto no-fault coverage or medical payments coverage.

---

## DEFINITIONS

The words defined below are used throughout this policy.  They are in **boldface** when used.

A.  "**You**" and "**your**" refer to the "named insured" shown on the Declarations and spouse if a resident of the same household.

B.  "**We**," "**us**" and "**our**" refer to the Company providing this insurance.

C.  "**Aircraft**" means any conveyance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

D.  "**Bodily injury**."

1.  "**Bodily injury**" means bodily harm, sickness, disease or death.

2.  "**Bodily injury**" does not include mental injury such as emotional distress, mental anguish, humiliation, mental distress, or any similar injury unless it arises out of physical injury to some person.

E.  "**Business**" means any full or part-time activity arising out of or related to any trade, profession or occupation of any **insured**.

F.  "**Business property**" means any property on which a **business** is conducted.

G.  "**Driving contest or challenge**" includes, but is not limited to:

1.  A competition against other people, vehicles, or time; or

2.  An activity that challenges the speed or handling characteristics of a vehicle or improves or demonstrates driving skills, provided the activity occurs on a track or course that is closed from non-participants.

H.  "**Family member**" means a person related to **you** by blood, marriage, or adoption who is a resident of **your** household. This includes a ward or foster child who is a resident of **your** household.

I.  "**Fungus**" or "**fungi**" means any microorganism or byproduct of any microorganism, including but not limited to mold, mildew, fungi, mycotoxins and spores.

J.  "**Hovercraft**" means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles.

K.  "**Insured**."

1.  "**Insured**" means:

a.  **You** and any **family member**;

b.  Other residents of **your** household under the age of 21 and in the care of **you** or any **family member**;

c.  Any person or organization legally responsible for animals, **watercraft** or **personal watercraft**:

(1)  To which this policy applies; and

(2)  Which are owned by any person in K.1.a. or K.1.b. above.

d.  Any person using a **motor vehicle**, **watercraft** or **personal watercraft** to which this policy applies, provided that such use is with the consent of any **insured**.

2.  However, "**insured**" does not include:

CIC 1234 56 78 70U

a. The owner of a **motor vehicle**, **watercraft** or **personal watercraft** loaned or rented to any **insured**. "Owner" in this paragraph includes the owner's agents or employees.

b. Any **motor vehicle** sales agencies, repair shops, service stations, storage garages or public parking lots, their owners, agents or employees.

c. Any shipyards, **watercraft** repair yards, marinas, yacht clubs, **watercraft** sales agencies, **watercraft** service stations and the like, their owners, agents or employees.

d. The lessee of a **motor vehicle**, **watercraft** or **personal watercraft** owned by any **insured**.

e. A person or organization using or having custody of animals, **watercraft** or **personal watercraft**, to which this policy applies, in the course of any **business** or without the consent of any **insured**.

L. "**Miscellaneous vehicle**" means the following motorized vehicles: all terrain vehicles; antique vehicles; classic vehicles; dune buggies; golf carts; motorcycles; motor homes; and snowmobiles.

M. "**Motor vehicle**" means any type of motorized land vehicle or conveyance, whether or not subject to motor vehicle registration.  **Motor vehicle** includes:

1. Private passenger vehicles, other than antique vehicles and classic vehicles; and

2. **Miscellaneous vehicles**.

N. "**Occurrence**" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in **bodily injury** or **property damage**.

O. "**Personal injury**" means injury arising out of one or more of the offenses listed below, but only if the **insured's** act occurred during the policy period.  A series of similar or related acts by an **insured**, multiple publications of the same statement, and continuous or repeated injury from the same act or publication, will be considered a single offense and injury during the single policy period in which the first act or publication occurred.

1. Oral, written or electronic publication of a false statement that defames a person's or organization's character or reputation.

2. Oral, written or electronic publication of material that violates a person's right of privacy by publicly disclosing private facts.

3. Malicious prosecution.

4. False arrest, false imprisonment, wrongful detention.

5. When committed by or on behalf of the owner, landlord or lessor of a room, dwelling or premises that a person occupies:

a. Wrongful eviction;

b. Wrongful entry; or

c. Invasion of the right of private occupancy.

6. Assault and battery if committed by any **insured**, or at his direction, to protect persons or property. This applies only when the conduct is not criminal.

P. "**Personal watercraft**" means a conveyance, used or designed to be used on water that uses a jet pump powered by an internal combustion engine as the primary source of propulsion.

Q. "**Professional services**" means any type of service to the public that requires the person rendering the service to obtain:

1. An advanced degree; or

2. A license; or

3. Other legal authorization to provide the service.

R. "**Property damage**."

1. "**Property damage**" means physical damage to or destruction of tangible property including loss of use of this property.

2. For purposes of this policy, electronic data is not tangible property. Electronic data means information, facts or programs:

   a. Stored as or on;

   b. Created or used on; or

   c. Transmitted to or from;

   computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

S. "**Retained limit**" means the required minimum limit of liability for the applicable personal lines insurance coverage shown in the Schedule of Underlying Insurance on the Declarations. Where **underlying insurance** is payable for any one **occurrence** to which this policy also applies**,** the amount of the **retained limit** will be either:

1. The split Bodily Injury/Property Damage limit shown in the Schedule, if **underlying insurance** has split limits; or

2. The Combined Single Limit shown in the Schedule, if **underlying insurance** has a combined single limit.

Where **underlying insurance** is not payable for any one **occurrence** to which this policy applies**,** the amount of the **retained limit** will be the split Bodily Injury/Property Damage limit shown in the Schedule.

T. "**Underlying insurance**" means the types of personal lines insurance coverages for which limits are shown in the Schedule of Underlying Insurance on the Declarations.

U. "**Watercraft**" means a conveyance principally designed to be propelled on or in water by wind, current, paddles, oars, engine power or electric motor.

---

## LIABILITY COVERAGES

INSURING AGREEMENT

A. Damages.

1. **We** will pay for damages, in excess of the **retained limit**, that an **insured** becomes legally obligated to pay because of **bodily injury** or **property damage** resulting from an **occurrence**.

2. **We** will pay for damages that an **insured** becomes legally obligated to pay because of **personal injury**.

B. Defense.

1. If a claim is made or a suit is brought against any **insured** for **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, or for **personal injury** to which this policy applies, **we** will provide a defense at **our** expense by counsel of **our** choice, even if the suit is groundless, false or fraudulent.

   However, **we** will not provide a defense:

   a. To any **insured** for criminal prosecution or proceedings; or

   b. If the **occurrence** or offense is covered by **underlying insurance** or any other liability insurance available to any **insured.**

2. **We** may investigate and settle any claim or suit that **we** decide is appropriate. **Our** duty to defend ends when the amount **we** pay to settle any claim, or in full or partial satisfaction of any judgment for damages resulting from the **occurrence** or offense, equals the Umbrella Liability Limit shown on the Declarations.

3. **We** have the right, but not the duty, to join with any **insured** or with the insurer providing **underlying insurance** in the investigation, defense or settlement of any claim or suit, or in any alternative dispute resolution process, which may require **us** to pay.

4. **We** may appeal a judgment in excess of the **retained limit** even if either the **insured** or the insurer providing the **underlying insurance** chooses not to appeal. If **we** do appeal, **we** will pay all related expenses.

LIMIT OF LIABILITY

A. Damages.

1. **Our** maximum limit of liability under this policy for all damages resulting from any one **occurrence,** or any one offense listed as **personal injury**, is the Umbrella Liability Limit shown on the Declarations.

2. This Umbrella Liability Limit is the most **we** will pay regardless of the number of suits or size of awards made, and regardless of the number of **insureds**, claims made or persons injured.

B. Defense. Defense costs are in addition to the Umbrella Liability Limit shown on the Declarations and include the following:

1. Premiums on appeal bonds and bonds to release attachments in any suit **we** defend. But **we** will not pay the premium for bonds with a face value over the Umbrella Liability Limit shown on the Declarations. **We** have the right, but not the duty, to either apply for or furnish any bond.

2. Expenses incurred by **us** or at **our** request on behalf of any **insured**, including court costs. **We** will pay interest on any part of a judgment covered by this policy.

3. Prejudgment interest awarded against any **insured** on that part of the judgment that is covered by this policy. If **we** make an offer to pay the applicable limit of liability available under this policy, **we** will not pay any prejudgment interest incurred or accrued after the offer is made.

4. Reasonable expenses incurred by any **insured** at **our** request, including actual loss of earnings (but not loss of other income) up to $250 per day for assisting **us** in the investigation or defense of a claim or suit.

## EXCLUSIONS

A. This insurance does not apply to:

1. Any loss assessments charged against any **insured** as a member of an association, corporation or community of property owners.

2. A nuclear energy **occurrence** that is covered by a nuclear energy liability policy, or would have been covered if the available liability insurance had not been used up.

3. Punitive or exemplary damages, fines or penalties.

CIC 1234 56 78 70U

B. This insurance does not apply to **bodily injury** to any person eligible to receive any benefits, whether voluntarily provided or required to be provided, by any **insured** under any:

1. Workers' Compensation law;

2. Non-occupational Disability law; or

3. Occupational Disease law.

C. This insurance does not apply to **property damage** to:

1. Property owned by any **insured**.

2. Any **aircraft** owned, hired, rented or used by, or in the care, custody or control of, any **insured**.

3. Property owned by others when any **insured** has physical control of such property, or has agreed to be responsible for or insure such property.

   Paragraph 3. of this exclusion (C.) does not apply to the extent that liability coverage is provided by **underlying insurance** and is not excluded elsewhere in this policy.

D. This insurance does not apply to **personal injury** which results from a false statement if done by or at the direction of any **insured** with knowledge that the statement was false, or made with reckless disregard for the truth.

E. This insurance does not apply to **bodily injury** or **property damage**:

1. Caused by the intentional or purposeful acts of any **insured** that would be expected by any reasonable person to result in **bodily injury** or **property damage**. This applies even if the resulting **bodily injury** or **property damage**:

   a. Is of a different kind, quality or degree than initially expected or intended; or

   b. Is sustained by a different person, entity, real property or personal property than initially expected or intended.

This exclusion (E.1.) does not apply to **bodily injury** or **property damage** resulting from the use of lawful reasonable force by any **insured** to protect persons or property.

2. Arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of or presence of any **fungus**, wet or dry rot, or bacteria.

   This exclusion (E.2.) does not apply to any **fungi** or bacteria that are, are on, or are contained in, a good or product intended for consumption.

3. Arising out of the use of any **motor vehicle** while that **motor vehicle** is being operated in, or in practice for, any **driving contest** or **challenge**.

F. This insurance does not apply to **bodily injury** or **personal injury**:

1. Sustained by any **insured**.

2. Arising out of illegal discrimination or violation of civil rights.

3. Arising out of any actual, alleged or threatened:

   a. Sexual misconduct;

   b. Sexual harassment;

   c. Sexual molestation; or

   d. Physical or mental abuse.

4. Arising out of the transmission of any communicable disease by any **insured**.

G. This insurance does not apply to **bodily injury, property damage** or **personal injury**:

1. Arising out of property any **insured** sells, gives away or abandons.

   This exclusion (G.1.) does not apply to the extent that liability coverage is provided by **underlying insurance** and is not excluded elsewhere in this policy.

2. Arising out of:

CIC 1234 56 78 70U

a. The ownership, maintenance, use, loading or unloading of; or

b. The entrustment by any **insured** of; or

c. Vicarious liability, whether or not statutorily imposed, for the actions of anyone using;

a **motor vehicle, personal watercraft** or **watercraft**.

This exclusion (G.2.) does not apply to the extent that liability coverage is provided by **underlying insurance** and is not excluded elsewhere in this policy.

3. Arising out of:

a. The ownership, maintenance, use, loading or unloading of; or

b. The entrustment of any **insured** of; or

c. Vicarious liability, whether or not statutorily imposed, for the actions of anyone using;

an **aircraft** or **hovercraft**.

4. Arising out of the rental or holding for rental of any part of any premises, including any real property or real estate, by any **insured**.

This exclusion (G.4.) does not apply to the extent that liability coverage is provided by **underlying insurance** and is not excluded elsewhere in this policy.

5. Arising out of any **business** or **business property** of any **insured**.

This exclusion (G.5.) does not apply to the extent that liability coverage is provided by **underlying insurance** and is not excluded elsewhere in this policy.

6. Arising out of the rendering of or failure to render **professional services**.

7. Arising out of a criminal act or omission by, or with either the knowledge or consent of, any **insured**.

8. Arising directly or indirectly out of, or conduct resulting in: war including undeclared war; civil war; insurrection; rebellion; revolution; warlike act by a military force or military personnel; or destruction or seizure or use for a military purpose. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

9. Arising out of any **insured's** activities as an officer or member of a board of directors of any organization.

This exclusion (G.9.) does not apply to non-profit religious, charitable or civic organizations when:

a. The activity is not connected with any **insured's business**; and

b. The **insured** is not compensated for the activity other than reimbursement of out-of-pocket expenses.

10. Arising out of any contract or agreement.

This exclusion (G.10) does not apply to the extent that liability coverage is provided by **underlying insurance** and is not excluded elsewhere in this policy.

11. Arising out of the actual, alleged or threatened discharge, dispersal, release, escape, seepage or migration of pollutants however caused and whenever occurring. This includes any loss, cost or expense arising out of any:

a. Request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

CIC 1234 56 78 70U

b.  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants, as used in this exclusion (G.11.) means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials which are to be recycled, reconditioned or reclaimed.

12  Arising out of exposure to lead paint or other lead-based products.

13  Arising out of exposure to asbestos.

14  Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s). Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs.

This exclusion (G.14.) does not apply to the extent that liability coverage is provided by **underlying insurance** and is not excluded elsewhere in this policy.

---

## CONDITIONS

A.  Bankruptcy. Bankruptcy or insolvency of any **insured** will not relieve **us** of **our** obligations under this policy.

B.  Concealment, Misrepresentation or Fraud.

1.  If **you** or any other **insured**, whether before or after an **occurrence** or offense to which this policy applies, has done any of the following related to the issuance of this policy or in the presentation of a claim, **we** may deny coverage as to the interest of all **insureds**:

    a.  Intentionally concealed or misrepresented any material fact or circumstance.

    b.  Engaged in fraudulent conduct.

    c.  Made false statements which if known by **us** would have caused **us** not to:

        (1)  Issue the policy;

        (2)  Issue the policy in as large an amount;

        (3)  Provide coverage for the hazard resulting in the loss; or

        (4)  Issue the policy for the same amount of premium or at the same rate.

2.  **We** reserve all rights to seek recovery from any person committing concealment, misrepresentation or fraud for all payments made and costs incurred.

C.  Duties After an **Occurrence** or Offense. **We** will not be required to provide coverage under this policy unless there has been full compliance with these duties. In case of an **occurrence** or offense, **you** or **your** representative will perform the following duties that apply:

1.  Give written notice to **us** or **our** agent as soon as is practical, which sets forth:

    a.  The identity of the named insured shown on the Declarations;

    b.  Reasonably available information about the time, place and circumstances of the **occurrence** or offense; and

    c.  Names and addresses of any claimants and witnesses.

CIC 1234 56 78 70U

2. Cooperate with **us** in the investigation, settlement or defense of any claim or suit.

3. Promptly forward to **us** every notice, demand, summons or other process relating to the **occurrence** or offense.

4. At **our** request, help **us**:

   a. Make settlement;

   b. Enforce any right of contribution or indemnity against any person or organization who may be liable to any **insured**;

   c. With the conduct of suits and attend hearings and trials; and

   d. Secure and give evidence and obtain the attendance of witnesses.

5. For **property damage** losses, if **we** request, submit to **us** within 60 days after notice of loss a statement of loss and show the damaged property if in the control of any **insured**.

6. No **insured** will, except at the **insured's** own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the **bodily injury**.

D. Other Insurance. The coverage afforded by this policy is excess over any other insurance available to an **insured**, except insurance written specifically to be excess over this policy.

E. **Our** Right to Recover Payment.

1. If **we** make a payment under this policy, **we** are entitled, but not required, to exercise the **insured's** rights of recovery against any person or other entity liable for the **occurrence** or offense.

2. **We** can join with any **insured** and any insurer providing **underlying insurance** in the exercise of these rights.

3. The **insured** must do whatever is necessary to enable **us** to exercise these rights, and shall do nothing after

an **occurrence** or offense to prejudice or defeat them.

F. Ownership. For purposes of this policy, a vehicle is deemed to be owned by a person if leased under a written agreement to that person for a continuous period of at least six months.

G. Required **Underlying Insurance**.

1. If **underlying insurance** for **bodily injury** or **property damage** has terminated, is uncollectible, or has a limit less than the **retained limit**, this will not void coverage. However, **we** will pay for **bodily injury** or **property damage** only as though the **underlying insurance** was collectible and in force in the amount of the **retained limit**.

2. **We** will not pay the difference between the **retained limit** and any lower limit actually in effect.

H. Spouse Access.

1. The named insured and **we** agree that the named insured and resident spouse are "customers" for purposes of state and federal privacy laws. The resident spouse will have access to the same information available to the named insured and may initiate the same transactions as the named insured.

2. The named insured may notify **us** that he/she no longer agrees that the resident spouse shall be treated as a "customer" for purposes of state and federal privacy laws, and **we** will not permit the resident spouse to access policy information.

I. Suit Against **Us**.

1. No action can be brought against **us**:

   a. Unless there has been full compliance with the policy provisions; and

   b. Until the obligation of the **insured** has been determined by final judgment or by agreement signed by **us**.

CIC 1234 56 78 70U

2. No person or organization has any right under this policy to join **us** as a party to any legal action against any **insured**.

J. Termination.

1. Cancellation.

   a. **You** may cancel this policy at any time. However, the effective date of the cancellation cannot be earlier than the date of **your** request unless **we** agree to an earlier date.

   b. **We** may cancel this policy by sending an electronic notice, where allowed by law, to the named insured shown on the Declarations, or at **our** sole option, **we** may cancel by sending notice to the named insured by regular mail to the most recent address **you** provided to **us**. In either event, notice will be sent:

      (1) At least 10 days before the effective date of cancellation if cancellation is for nonpayment of premium; or

      (2) At least 30 days before the effective date of cancellation in all other cases.

2. Nonrenewal. If **we** decide not to renew this policy, **we** will send electronic notice, where allowed by law, to the named insured shown on the Declarations, or, at **our** sole option, **we** may send the named insured notice by regular mail to the most recent address **you** provided to **us**. In either event, notice will be sent at least 30 days before the end of the policy period.

3. Other Termination Provisions.

   a. Proof of mailing or electronic transmission of any notice will be sufficient proof of notice.

   b. If this policy is cancelled, the named insured may be entitled to a premium refund. The premium refund, if any, will be computed according to **our** manuals. However, making or offering to make the refund is not a condition of cancellation.

   c. The effective date of cancellation stated in the notice will become the end of the policy period.

K. Transfer of **Your** Interest in This Policy.

   **Your** rights and duties under this policy may not be assigned without **our** written consent. However, if the named insured shown on the Declarations dies, **we** will provide coverage until the end of the policy period for:

   1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown on the Declarations;

   2. Any **family member** who is an **insured** at the time of **your** death, but only while a resident of **your** household; and

   3. The legal representative of the deceased named insured, but only with respect to **occurrences** covered by this policy and for which the deceased named insured would have been liable.

L. Waiver or Change of Policy Provisions. This policy contains all the agreements between **you** and **us**. Its provisions may not be changed or waived except by endorsement issued by **us**. If a change requires a premium adjustment, **we** will adjust the premium as of the effective date of the change.

Copyright. USAA. 2009. All rights reserved
Includes copyrighted material of Insurance Services Office Inc., with its permission.

# EXHIBIT E



# RENTERS POLICY PACKET

```
                                        GAR      01326 75 75 REN 001
                            EFFECTIVE: 06-17-15 TO: 06-17-16
```

GILLIAN AINSWORTH
PO BOX 982072
PARK CITY UT 84098-2072

## IMPORTANT MESSAGES

Attached are your policy documents and other information you may find helpful concerning your insurance coverages and premiums. Please take a few minutes to review them, and then file them with your policy records.

1) USAA considers many factors when determining your premium.  A history of claim activity will affect your policy premium.

# THIS IS NOT A BILL. Any premium charge or return for this policy will be reflected on your next regular monthly statement.

RECEIVE THIS DOCUMENT AND OTHERS ELECTRONICALLY.  SIGN UP AT **usaa.com.**

FOR U.S. CALLS:   POLICY SERVICE 1-800-531-8722.   CLAIMS 1-800-531-8722.

**Thank you for letting us serve you. We appreciate your business.**

RPCS1                                                          64831-0907

THIS PAGE INTENTIONALLY LEFT BLANK



**GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY**

9800 Fredericksburg Road – San Antonio, Texas 78288

**RENTERS PROTECTION POLICY DECLARATIONS**

The Policy is complete only when the following are combined: Policy Packet **(Part One),** Declarations Page **(Part Two),**
**GENERAL PROVISIONS** and when purchased, **PERSONAL PROPERTY** and/or **PERSONAL LIABILITY.**

**PART TWO**

| Named Insured and Basing Address | Policy Number |
|---|---|
| GILLIAN AINSWORTH<br>5479 LUGE LN<br>PARK CITY, UT 84098-7620<br>COUNTY: SUMMIT | GAR   01326 75 75  REN 001 |

POLICY PERIOD: FROM 06/17/15 TO 06/17/16    (12:01 A.M. Standard Time at location of the property described)

| PERSONAL PROPERTY | | | Premium |
|---|---|---|---|
| DEDUCTIBLES<br>We cover only that part of the loss over the deductible stated.<br>  OTHER PERILS         $       250<br>  EARTHQUAKE       $    1,500 | Limit of Liability<br>$    10,000 | | $98.36 |
| **PERSONAL LIABILITY** | | | |
| Coverages | | Limit of Liability | |
| **LIABILITY** | Each Occurrence | $   300,000 | $49.97 |
| **MEDICAL PAYMENTS TO OTHERS** | Each Person | $     5,000 | |
| **OPTIONAL COVERAGES** | | | |
| | | | |
| **TOTAL ANNUAL PREMIUM** | | | $148.33 |

PREMIUM DUE AT INCEPTION. THIS IS NOT A BILL. STATEMENT TO FOLLOW.

Forms and endorsement(s) made a part of this policy at time of issue or amendment.
  ESA (0205), R-IDF (0703), R-MCOVUT (0609), R-UT (1006), R-20 (0486)
  RP-MLD (0803), RP-1 (0486), RP-3 (0486), RP-6 (0486)

Loss Payable Clause: Loss, if any, will be paid to you and

as interests may appear.

In WITNESS WHEREOF, this policy is signed on  06/16/15

Steven Alan Bennett, Secretary          Alan W. Krapf, President

RP-D   4-86   (REV. 3-04)

(THIS PAGE INTENTIONALLY LEFT BLANK)



GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY

**RENTERS PROTECTION POLICY DECLARATIONS**

|  | **Policy Number** | **Policy Term:** | 06/17/15 | 06/17/16 |
|---|---|---|---|---|
| GAR | 01326 75 75 REN 001 | | **Inception** | **Expiration** |

YOUR PREMIUM HAS BEEN REDUCED BY THE FOLLOWING CREDITS AND DISCOUNTS:
AUTO/RENTERS COMBINATION                                    $16.48
CLAIMS FREE DISCOUNT                                        $46.84

**RP-DOF (01-97)**

(THIS PAGE INTENTIONALLY LEFT BLANK)

PAGE   7
GAR   01326 75 75        REN 001

The Easy Reading **RENTERS PROTECTION POLICY**

# QUICK REFERENCE

| DECLARATIONS PAGE |
|---|
| - Your Name And Mailing Address |
| - Policy Period |
| - PERSONAL PROPERTY (If purchased) |
|   Limit of Liability |
|   Deductible |
| - PERSONAL LIABILITY (If purchased) |
|   Limit of Liability |
| - OPTIONAL COVERAGES |

| Beginning **GENERAL  PROVISIONS** | |
|---|---|
| on Page | (4 Pages) |
| GP-1 | Agreement |
| GP-1 | Definitions |
| GP-3 | Policy  Period |
| GP-3 | Cancellation and Non-Renewal |

| PERSONAL PROPERTY (If Purchased) | |
|---|---|
| (10 Pages) | |
| PP-1 | Property Covered |
| PP-1 | Deductible |
| PP-2 | Property Not Covered |
| PP-3 | Causes of Loss Covered |
| PP-4 | Causes of Loss Not Covered |

| ADDITIONAL PERSONAL PROPERTY COVERAGES | |
|---|---|
| PP-5 | Moving and Storage |
| PP-6 | Food Spoilage |
| PP-6 | Lock Replacement |
| PP-6 | Loss of Use |

| PERSONAL PROPERTY CONDITIONS | |
|---|---|
| PP-8 | Insurable Interest |
| PP-8 | Duties After Loss |
| PP-9 | Loss Settlement |
| PP-10 | Other Insurance |

| PERSONAL LIABILITY (If Purchased. Not | |
|---|---|
| (7 Pages)                applicable in Texas.) | |
| PL-1 | Liability |
| PL-1 | Medical Payments to Others |
| PL-1 | Exclusions |

| ADDITIONAL PERSONAL LIABILITY COVERAGES | |
|---|---|
| PL-4 | Claim Expense |
| PL-5 | Damage to Property of Others |
| PL-5 | Damage to Government Housing |

| PERSONAL LIABILITY CONDITIONS | |
|---|---|
| PL-6 | Limit of Liability |
| PL-6 | Duties After Loss |
| PL-7 | Other Insurance |

## Part One

This Policy is not complete unless it is issued with Declarations (Part Two) **and GENERAL PROVISIONS.**

### POLICY SUMMARY

This is a legal contract between you, the policyholder and us, your insurer. And like other contracts, it contains certain duties and responsibilities of both parties to the contract.

Optional coverages you have purchased will be shown on the Declarations Page with appropriate premium. These coverages are subject, however, to those limitations and restrictions explained in the policy.

If you have purchased PERSONAL PROPERTY coverage, the RENTERS PROTECTION policy insures most of the personal possessions you - and others listed on GP-1, GENERAL PROVISIONS - own. The causes of loss or damage to personal property which this policy insures against are specifically identified and further explained where necessary.

If you have purchased PERSONAL LIABILITY coverage, this policy provides financial protection when you are held liable for damage to the property of others or for injury to others - both on and off your property.

The Quick Reference will help you readily locate parts of the policy to which you wish to refer.

We have tried to make this policy easy to read and understand. But should you need clarification on some point, we will be glad to provide it.

### United Services Automobile Association
### (A Reciprocal Interinsurance Exchange)

In your policy these sets of words have the same meaning: Policy means Contract; You and your means the Subscriber and the spouse when a resident of the same household; We, us, our, USAA, Company, Reciprocal or Interinsurance Exchange means United Services Automobile Association; Premium means Deposit; Attorney-in-Fact means USAA Reciprocal Attorney-in-Fact, Inc.

If this policy is issued by United Services Automobile Association ("USAA"), a reciprocal interinsurance exchange, the following apply:

- By purchasing this policy you are a member of USAA and are subject to its bylaws.
- This is a non-assessable policy. You are liable only for the amount of your premium as USAA has a free surplus in compliance with Article 19.03 of the Texas Insurance Code of 1951, as amended.
- This is a participating policy. You are entitled dividends as may be declared by the USAA Board of Directors.
- The USAA Board of Directors may annually allocate a portion of USAA's surplus to subscriber's accounts. Amounts allocated to such accounts remain a part of USAA's surplus and may be used as necessary to support the operations of the Association. A member shall have no right to any balance in the member's account except until following termination of membership, as provided in the bylaws.

PAGE    8
GAR     01326 75 75      REN 001

## RENTERS PROTECTION POLICY
### - GENERAL PROVISIONS -

**GENERAL PROVISIONS** contains the definitions and provisions that apply to this Policy. But **GENERAL PROVISIONS** applies only to the section for which a premium is shown on the Declarations Page.

---

**AGREEMENT**

In return for your payment of premium and subject to the terms of this policy, we will provide the insurance described.

The full limit of liability under this policy will be automatically reinstated after a loss.

---

**DEFINITIONS**

To help you understand your Policy:

&ndash;   "We", "us", and "our" mean the company providing this insurance.

&ndash;   "You" and "your" mean the person named on the Declarations Page. We also mean your spouse when a resident of your household.

In addition, certain words and phrases are defined as follows:

1.   **"actual cash value"** means the replacement cost of the property at the time of loss less a deduction for depreciation based on its age and usage.

2.   **"bodily injury"** means bodily harm, sickness or disease, including required care, loss of services and death that results.

3.   **"business"** includes trade, profession or occupation.

4.   **"insured"** means you and residents of your household who are:

   a.   your relatives; or

   b.   other persons under the age of 21 and in the care of any person named above.

Under **PERSONAL LIABILITY, "insured"** also means:

   c.   with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in a. or b. above.

      A person or organization using or having custody of these animals or watercraft in the course of any **business** or without consent of the owner is not an **insured;**

   d.   with respect to any vehicle or conveyance to which this policy applies:

      (1)   persons while engaged in your employ or that of any person included in a. or b. above; or

      (2)   other persons using the vehicle on an **insured location** with your consent.

**RP-1   Ed. 4-86**                     **GENERAL PROVISIONS**                                    **GP-1**
                                              (4 Pages)

5. **"insured location"** means:

   a.  if your principal place of residence:

      (1)  a one to four family residence; or

      (2)  that part of any other building where you reside;

   b.  the part of other premises, other structures and grounds used by you as another residence;

   c.  any premises used by you in connection with a or b above;

   d.  any part of a premises:

      (1)  not owned by an **insured; and**

      (2)  where an **insured** is temporarily residing;

   e.  vacant land, other than farm land, owned by or rented to an **insured;**

   f.  land owned by or rented to an **insured** on which a one or two family dwelling is being built as a residence for an **insured;**

   g.  individual or family cemetery plots or burial vaults of an **insured;** or

   h.  any part of a premises occasionally rented to an **insured** for other than **business** use.

6. **"property damage"** means physical injury to, destruction of, or loss of use of tangible property.

7. **"residence employee"** means:

   a.  an employee of an **insured** whose duties are related to the maintenance or use of the place of residence, including household or domestic services; or

   b.  one who performs similar duties elsewhere not related to the **business** of an **insured.**

---

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

The entire policy is void if, whether before or after a loss, an **insured:**

   a.  intentionally conceals or misrepresents any material fact or circumstance; or

   b.  makes false statements or engages in fraudulent conduct,

relating to this insurance.

---

**LIBERALIZATION CLAUSE**

If we adopt any revision which would broaden the coverage under this policy without additional premium within 60 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

---

PAGE   10
GAR    01326  75  75     REN  001

**WAIVER OR POLICY CHANGES**

No waiver or change to the coverages stated in this policy may be made except by us, in writing. Our request for an appraisal or examination will not waive any of our rights.

---

**CONFORMITY TO STATUTE**

Terms of this policy in conflict with written laws of the state in which the policy is issued are changed to conform to such laws.

---

**ASSIGNMENT**

Assignment of this policy will not be valid unless we give our written consent.

---

**RECOVERY FROM OTHERS**

a. You must assign to us your rights of recovery against persons causing damage or loss to your property for which a claim is paid. You need only assign to us the amount of the claim paid.

b. If an assignment is sought, you must sign and deliver all related papers and cooperate with us.

c. **Recovery From Others** does not apply to **Medical Payments to Others** or to **Damage to Property of Others** under **PERSONAL LIABILITY** when it is a part of the Policy.

---

**POLICY PERIOD**

This policy applies only to loss which occurs during the policy period.

---

**CANCELLATION AND NON-RENEWAL**

**Cancellation.**

a. You may cancel this policy at any time. But the effective date of cancellation cannot be earlier than the date of your request.

b. We may cancel this policy by notifying you in writing at least 30 days before the date cancellation takes effect. This cancellation notice will be mailed to you at your last known mailing address. Proof of mailing will be sufficient proof of notice.

c. When this policy is cancelled, the pro rata premium for the period from the date of cancellation to the expiration date will be refunded.

d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

e. When you have not paid your premium, we may cancel at any time by mailing to your last known address written notice at least 10 days before the date cancellation takes effect.

**Non-Renewal.**
We may elect not to renew this policy. We may do so by mailing to you at your last known mailing address, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

---

RP-1 Ed. 4-86                    **GENERAL PROVISIONS**                    **GP-3**
(4 Pages)

PAGE   11
GAR      01326  75  75          REN  001

**DEATH**

If the person named on the Declarations Page or the spouse, if a resident of the same household, dies:

a.  we insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b.  **insured** includes:

   (1)  any member of your household who is an **insured** at the time of your death; and

   (2)  with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

## RENTERS PROTECTION POLICY

### - BROAD PERSONAL PROPERTY WITH REPLACEMENT COST -

**PERSONAL PROPERTY** describes the coverage you have in case of loss to your household goods and other personal property.

**PERSONAL PROPERTY** is not complete without **Parts One** and **Two** and **GENERAL PROVISIONS,** and is not in effect unless a premium is shown for it on the Declarations Page.

---

| | |
|---|---|
| **PROPERTY COVERED** | Subject to the **PROPERTY NOT COVERED** provisions of this policy, we cover all personal property, anywhere in the world, owned by:<br><br>any insured;<br><br>someone else when it is at your residence or in your custody. |

---

| | |
|---|---|
| **DEDUCTIBLE** | All covered losses are subject to the deductible shown on the Declarations Page, except where otherwise stated in this policy. |

---

**DOLLAR LIMITS ON SOME PROPERTY**

The dollar limit shown below for each group is the most we will pay for a loss to one or more items in that group:

1. **$3,000**  For motorized golf carts and their equipment and accessories. But if, at the time of loss, there is an automobile policy covering physical loss to golf carts, then this policy does not apply to those golf carts and their equipment and accessories.

2. **$2,500**  For theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware.

3. **(a) $2,500**  For **business** property at your residence.

   **(b) $250**  For **business** property away from your residence.

4. **$2,000**  For theft of firearms and their equipment and accessories.

5. **$1,000**  For theft of jewelry, watches, furs and precious and semi-precious stones.

6. **$1,000**  For securities, accounts, deeds, evidences of debt, personal records, letters of credit, notes other than bank notes, manuscripts, passports, airline or other transportation tickets, stamps including postage stamps, and other philatelic property.

   This limit applies to these categories regardless of the medium.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

7. **$1,000**  For trailers not used with watercraft.

8. **$1,000**  For watercraft including their trailers, their attached equipment and accessories and outboard motors.

9. **$200**  For money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

---

**PROPERTY NOT COVERED**

The following are not covered by this policy:

1.  Property separately described and specifically insured in whole or in part of another policy.

2.  Aircraft and Parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

3.  Animals, birds or fish.

4.  Building materials and supplies for construction, reconstruction or remodeling of a building or structure.

5.  **business** data including such data stored in:

    a.  books of account, drawings or other paper records; or

    b.  electronic data processing tapes, wires, records, discs or other software media.

    But we will cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market. The most we will pay is the limit of liability for **business** property.

6.  Food stamps, gasoline coupons, and tokens.

7.  Motor vehicles or all other motorized land conveyances. This includes:

    a.  equipment and accessories; or

    b.  any device or instrument for the transmitting, recording, receiving or reproduction of sound or pictures which is operated by power from the electrical system of motor vehicles or all other motorized land conveyances, including:

        (1)  accessories or antennas; or

        (2)  tapes, wires, records, discs or other media for use with any such device or instrument;

    while in or upon the vehicle or conveyance.

    We do cover vehicles or conveyances not subject to motor vehicle registration which are:

    a.  used to service an **insured's** residence or

    b.  designed for assisting the handicapped.

    We also cover motorized golf carts and their equipment and accessories, subject to the DOLLAR LIMIT ON SOME PROPERTY.

8.  Property in the custody of a government mail or private mail or package delivery service.

9.  Property rented to others or held for rental except property you leave in your permanent residence when you temporarily rent the residence. And then, money, securities, jewelry, watches, gems, precious or semi-precious stones, and articles of gold, silver or platinum are not covered. Nor is any loss to your covered property if caused by your tenant, his employee(s) or a member of his household.

10. Property of roomers, boarders, tenants or other residents. This exclusion does not apply to property of those related to an insured or to property of a **residence employee.**

There are other specific circumstances and conditions where the policy restricts or excludes coverage. These are described under **CAUSES OF LOSS NOT COVERED**, where applicable.

| | |
|---|---|
| **CAUSES OF LOSS COVERED** | We insure for direct physical loss to covered property when caused by any one or more of the following **CAUSES OF LOSS** and when not contributed to concurrently or in any sequence by any cause or event excluded in **CAUSES OF LOSS NOT COVERED.** |

## DESCRIPTIONS  AND  LIMITATIONS

**1. FIRE AND LIGHTNING**

**2. WINDSTORM OR HAIL**

An opening in the roof or wall must be made by the direct force of wind or hail before we will cover damage due to rain, snow, sleet, sand or dust.

**3. FLOOD AND WATER**

a.  Damage caused by flood, surface water, tidal wave, overflow of a body of water, or spray from any of these, even if driven by wind, will be covered.

b.  Damage caused by water which backs up through sewers or drains will be covered.

c.  Damage caused by accidental escape of water from plumbing, heating or air conditioning pipes, fixtures or equipment or domestic appliances will be covered.

d.  We will not cover damage caused by gradual seepage of water through building or basement walls, roofs, windows, doors, foundations or floors.

**4. EARTHQUAKE**

This includes land shock waves or tremors before, during or after a volcanic eruption.

One or more earthquake shocks that occur within a seventy-two hour period will constitute a single earthquake.

**5. EXPLOSION**

**6. SMOKE**

We will not cover smoke damage from agricultural smudging or industrial operations.

**7. AIRCRAFT**

This includes self-propelled missiles and spacecraft.

**8. VEHICLES**

**9. COLLAPSE OF BUILDING**

We will cover damage to covered personal property caused by collapse of a building or any part of the building.

**10. THEFT**

a.  Theft includes attempted theft, pilferage, larceny, burglary, robbery, holdup and embezzlement. It also includes loss from a known place when it is likely the property has been stolen.

b.  We will not cover property lost or misplaced.

**11. VANDALISM AND MALICIOUS MISCHIEF**

Property is covered against intentional and malicious damage.

**12. RIOT AND**
**CIVIL COMMOTION**

**13. FALLING OBJECTS**
We do not cover loss to property contained in a building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not covered.

**14. SUDDEN AND ACCIDENTAL TEARING APART, CRACKING, BURNING OR BULGING**
We cover loss to a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This **CAUSE OF LOSS** does not include loss caused by or resulting from freezing except as provided in **FREEZING** below.

**15. FREEZING**
We cover freezing loss to a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This **CAUSE OF LOSS** does not include loss at your place of residence while unoccupied unless you have used reasonable care to:

    a.   maintain heat in the building; or

    b.   shut off the water supply and drain the system and appliances of water.

**16. SUDDEN AND ACCIDENTAL DAMAGE FROM ARTIFICIALLY GENERATED ELECTRICAL CURRENT**
Loss to a tube, transistor or like electronic component is not covered.

**17. VOLCANIC ERUPTION**
This does not include loss caused by earthquake, land shock waves or tremors.

**CAUSES OF LOSS NOT COVERED**
We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss:

    1.      War.
            Undeclared war.
            Civil war.
            Insurrection.
            Rebellion.
            Revolution.
            Warlike act by a military force or military personnel.
            Destruction, seizure or use for a military purpose.

       Nor is any consequence of these covered.

       Discharge of a nuclear weapon will be deemed a warlike act, even if accidental.

**PERSONAL PROPERTY**
(10 Pages)

2.  Nuclear reaction, radiation or radioactive contamination. All whether controlled or uncontrolled, however caused.

Nor is any consequence of these covered. Loss caused by these shall not be considered loss caused by fire, explosion, or smoke. But we do cover direct loss by fire resulting from nuclear reaction, nuclear radiation, or radioactive contamination.

3.  Neglect of an **insured** to use all reasonable means to save and preserve the property at and after the time of loss.

4.  Intentional loss, meaning any loss arising out of any act committed:

    (a)  by or at the direction of an **insured;** and

    (b)  with the intent to cause a loss.

5.  Power failure, meaning the failure of power or other utility service if the failure takes place off your premises. But if a covered loss ensues on your premises, we will cover that ensuing loss.

---

## THE FOLLOWING ARE ADDITIONAL COVERAGES.

---

**MOVING AND STORAGE**

This additional coverage does not apply to any part of your property already in transit or in storage when this policy first becomes effective. However, the previously described **CAUSES OF LOSS COVERED** do apply to such property.

A.  **MOVING AND STORAGE** begins when your property passes into the custody of a public carrier, including United States government trucks, aircraft and vessels, or a storage facility. It must be under a bill of lading, a mover's contract, baggage check, or other form of shipping or storage document.

It ends when your property is delivered to your permanent or temporary address in accordance with the shipping document. Or when you take possession of your property from storage.

B.  In addition to the previously described **CAUSES OF LOSS COVERED** there is coverage under **MOVING AND STORAGE** for:

1.  loss of your property if, when described under a bill of lading, mover's contract, baggage check, or other form of shipping or storage document, it cannot be located after a reasonable search.

2.  loss or damage caused by the stranding, sinking, overturning, crashing, ditching, derailment, burning or collision of a public conveyance.

3.  loss or damage caused by water, except as excluded in C. below.

4.  your share of general average and salvage charges. These charges do not change the amount shown on the Declarations Page for **PERSONAL PROPERTY.**

C.  We will not cover loss or damage caused by:

1.  Breakage, marring, scratching or handling.

2.  Delay during shipment.

3.  Humidity or temperature changes.

4.  Mildew and mold.

5.  Inherent defect of the property.

6.  Insufficient packing or address.

7.  Insects, rodents and vermin.

D.  This coverage does not change the amount shown on the Declarations Page for **PERSONAL PROPERTY.**

---

**FOOD SPOILAGE**

We will pay you up to $500 for loss caused by power failure to the contents of a freezer or a refrigerator that is at your residence. Item 5 under CAUSES OF LOSS NOT COVERED does not apply to Food Spoilage.

This coverage does not change the amount shown on the Declarations Page for **PERSONAL PROPERTY.**

No deductible applies to this coverage.

---

**LOCK REPLACEMENT**

When the residence door keys are stolen in a covered theft loss, we will pay the cost to:

    a.  change the combination in the lock cylinder of the door locks as needed; or

    b.  change the lock hardware of the doors as needed.

The limit of liability for **LOCK REPLACEMENT** is $250.

This coverage does not change the amount shown on the Declarations Page for **PERSONAL PROPERTY.**

No deductible applies to this coverage.

---

**LOSS OF USE**

**LOSS OF USE** as described below has no limit.

1.  If a covered loss to covered property or to the building containing the property makes the place where you reside not fit to live in, we cover, at your choice, either of the following:

    a.  **Additional Living Expense -** meaning any necessary increase in living expenses incurred by you to maintain your normal standard of living; or

    b.  **Fair Rental Value -** meaning the fair rental value of that part of the place where you reside less any expenses that do not continue while the premises is not fit to live in.

    However, if this residence is not your principal place of residence, we will not provide this option.

The amount we pay under a. or b. will be for the shorter of:

    the period of time reasonably required to repair or replace the damage, or

    the period of time needed to permanently settle your household in new quarters.

2.  If a covered loss makes that part of your residence rented to others or held for rental by you not fit to live in, we cover the:

    **Fair Rental Value -** meaning the fair rental value of that part of your residence rented to others or held for rental by you, less any expenses that do not continue while it is not fit to live in.

We will pay for the shortest time reasonably required to repair or replace that part of your premises rented or held for rental.

3.  If a civil authority prohibits you from use of the place where you reside as a result of direct damage to neighboring premises by a covered cause of loss, we cover the **Additional Living Expense** or **Fair Rental Value** loss as provided under 1 and 2 above, for no more than two weeks.

The limit for this coverage is in addition to the amount shown on the Declarations Page for **PERSONAL PROPERTY.**

The periods of time under 1, 2, and 3 above are not limited by expiration of the policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

No deductible applies to this coverage.

       **PERSONAL PROPERTY**
(10 Pages)       

| | |
|---|---|
| **BUILDING ADDITIONS AND ALTERATIONS** | We cover damage from a covered loss to building improvements or installations made or acquired at your expense to that part of the residence used exclusively by you. The most we will pay is 10% of the amount for **PERSONAL PROPERTY** as shown on the Declarations Page.<br><br>This limit is in addition to the amount shown on the Declarations Page for **PERSONAL PROPERTY.** |

---

**CREDIT CARD, FUND TRANSFER CARD, FORGERY AND COUNTERFEIT MONEY**

We will pay up to $1,000 for:

1. an **insured's** legal duty to pay because of the theft or unauthorized use of credit cards issued to or registered in an **insured's** name.

2. loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an **insured's** name.

3. loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

4. loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

We do not cover use of a credit card or fund transfer card:

   1. by a resident of your household;

   2. by a person who has been entrusted with either type of card; or

   3. if an **insured** has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising when the cards are used for **business.** Nor do we cover loss caused by dishonesty of anyone whose property is insured by this policy.

   LEGAL DEFENSE

   1. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay, offer or tender to a court for the loss equals the limit of liability for this coverage.

   2. If a claim is made or a suit is brought against an **insured** for liability under the **CREDIT CARD** or **FUND TRANSFER CARD** coverage, we will provide a defense at our expense by counsel of our choice.

   3. We have the option to defend at our expense an **insured's** bank against any suit for the enforcement of payment under the **FORGERY** coverage.

   4. You must cooperate with us and provide us with any aid we require in settling a claim under this coverage.

No deductible applies to this coverage.

This coverage is additional insurance.

---

**FIRE DEPARTMENT SERVICE CHARGE**

We will pay up to $500 for fire department charges you must pay when the fire department is called to save or protect covered property. The loss must result from one of the covered losses and you must have assumed the charges by contract or by agreement.

No deductible applies to this coverage.

This coverage is additional insurance.

---

| | |
|---|---|
| **REASONABLE REPAIRS** | We will pay the reasonable cost incurred by you for needed repairs made solely to protect covered property from further damage from a covered loss. |
| | This coverage does not change the limit of liability that applies to the damaged property. |

| | |
|---|---|
| **PROPERTY REMOVED** | We cover your property against direct loss from any cause while being removed from a premises endangered by a covered loss, and for no more than 30 days while removed. |
| | This coverage does not change the limit of liability that applies to the property being removed. |

| | |
|---|---|
| **DEBRIS REMOVAL** | We will pay the reasonable cost incurred by you to remove: |

a.  debris of covered property if the loss is from a covered loss; or

b.  ash, dust or particles from a volcanic eruption that causes direct loss to covered property.

If the amount we must pay for the actual damage to your property plus the cost to remove the debris is more than the limit of liability for the damaged property, an additional 5% of that limit is available for debris removal expense.

This coverage does not change the limit of liability that applies to the damaged property.

---

## PERSONAL PROPERTY CONDITIONS

| | |
|---|---|
| **INSURABLE INTEREST** | Even if more than one person has an insurable interest in the property covered, our coverage in any one loss will be the lesser of: |

a.  the amount of an **insured's** interest at the time of loss, or

b.  the applicable limit of liability.

If there is an accident or incident that may be covered by this policy you must do the following:

**DUTIES AFTER LOSS**

1.  In the case of a loss by theft, vandalism, or malicious mischief, immediately notify the police or military authority, whichever has jurisdiction over the location where the loss occurred. Immediately notify the credit card or fund transfer card company in case of loss under **CREDIT CARD** or **FUND TRANSFER CARD** coverage.

2.  Protect the property from further damage.

3.  Contact us as soon as possible and tell us as much as you can about the loss. Give us the price and date of purchase, actual cash value and a complete description of the article(s) involved.

4.  Submit a proof of loss when required by us.

5.  Send us receipts, appraisals or other proof of ownership or value. Tell us if there is a lien on the property, and who holds it. You must tell us if there is other insurance on the property.

6.  If required by us, you must show us the property and answer our questions under oath about the loss or damage.

7.  You must tell us about the loss within 91 days after the loss is discovered. Unless you are reasonably prevented from doing this, your claims will not be accepted.

---

GAR   01326 75 75   REN 001

| | |
|---|---|
| **SUIT AGAINST US** | There is a time limit for bringing legal action against us concerning this policy. It must be filed within two years after the loss occurs. You must also comply with all policy provisions. |

**LOSS SETTLEMENT**

We will pay the full cost of repair or replacement, subject to all policy provisions. No deduction will be made for depreciation.

The value of the covered property is not agreed upon, but shall be set at the time of loss or damage.

1.  It is our option to:

    a.  replace, or pay you our cost to replace the property with new property of like kind and quality, without deduction for depreciation, or

    b.  pay you the cost to repair or restore the property to the condition it was in just before the loss.

2.  The following property is not eligible for replacement cost loss settlement:

    items of rarity or antiquity that cannot be replaced;

    articles whose age or history contributes substantially to their value. These include but are not limited to, memorabilia, souvenirs and collectors' items;

    motorized golf carts and their equipment and accessories.

    On losses to these items it is our option to:

    a.  pay you the **actual cash value;** or

    b.  replace, or to pay you our cost to replace the property with property of like kind, quality and condition; or

    c.  pay you the cost to repair or restore the property to the condition it was in just before the loss.

3.  We will not pay more than the limit of liability shown on the Declarations Page for **PERSONAL PROPERTY.** Nor more than any other limits stated in the policy.

4.  When the cost to repair or replace an item is more than $500, no more than **actual cash value** will be paid until repair or replacement is completed.

    You may make a claim for loss on an actual cash value basis and then make claim within 180 days after the loss for any additional liability.

5.  We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a.  we reach an agreement with you; or

    b.  there is an entry of a final judgment; or

    c.  there is a filing of an appraisal award with us.

**PAIRS AND SETS**

In case of loss of an article which is part of a pair or set, we will consider the importance of the article in settling your claim fairly and reasonably.

We will not pay you for the loss of the entire pair or set because of the partial loss.

**RECOVERED PROPERTY**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. Your choice will be to have the property returned to or retained by you or it will become our property.

If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

| | |
|---|---|
| **ABANDONMENT** | You may not abandon property to us for any reason. |

**APPRAISAL**

1. If you and we do not agree on the amount of loss, either party can demand that the amount of the loss be determined by appraisal.

2. If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand.

   The two appraisers will then select a competent, impartial umpire. If the two appraisers are not able to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the property is located to select an umpire.

3. The appraisers will then set the amount of the loss. If they submit a written report of any agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree within a reasonable time, they will submit their differences to the umpire.

   Written agreement signed by any two of these three will set the amount of the loss. Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by you and us.

**PROPERTY HELD BY OTHERS**

We will not recognize any assignment to nor will we provide any coverage for the benefit of anyone holding, storing or transporting your property for a fee.

**OTHER INSURANCE**

1. If, at the time of loss:

   a. there is trip transit coverage in force, or

   b. there is coverage provided under our Personal Computer Endorsement

   then this policy will apply only when that coverage has been exhausted.

2. If there is insurance other than described above, payment under this policy will be prorated on the basis of the total amount of insurance applying to the loss.

3. Under **LOSS OF USE** the following applies to **Additional Living Expense:**

   We will share payment equally up to the limit of liability for similar coverage provided by other insurance. Expense in excess of the limit in any other insurance will be covered by this policy.

## RENTERS PROTECTION POLICY
## -PERSONAL LIABILITY-

**PERSONAL LIABILITY** describes the protection you have against liability arising out of your residence and your personal activities.

**PERSONAL LIABILITY** is not complete without **Parts One** and **Two and GENERAL PROVISIONS** and is not in effect unless a premium is shown for it on the Declarations Page.

---

**LIABILITY**

If claim is made or suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an occurrence to which this coverage applies:

We will

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate.

Our duty to settle or defend ends when the amount we pay equals our limit of liability for **PERSONAL LIABILITY.**

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

- **bodily injury;** or
- **property damage.**

---

**MEDICAL PAYMENTS TO OTHERS**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing **bodily injury.** Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services.

This coverage does not apply to you or regular residents of your household except **residence employees.** As to others, this coverage applies only:

1. to a person on the **insured location** with the permission of an **insured;** or

2. to a person off the **insured location,** if the **bodily injury:**

   a. arises out of a condition on the **insured location** or the ways immediately adjoining;

   b. is caused by the activities of an **insured;**

   c. is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured;** or

   d. is caused by an animal owned by or in the care of an **insured.**

---

**LIABILITY AND MEDICAL PAYMENTS EXCLUSIONS**

1. **LIABILITY** and **MEDICAL PAYMENTS TO OTHERS** do not apply to **bodily injury** or **property damage:**

   a. which is expected or intended by the **insured;**

   b. arising out of business pursuits of an **insured** or the rental or holding for rental of any part of any premises by an **insured.**

   This exclusion does not apply to:

   (1) activities which are usual to non-business pursuits; or

   (2) the rental or holding for rental of an **insured location;**

       (a) on an occasional basis if used only as a residence;

---

PAGE   23
GAR      01326 75 75      REN 001

(b)  in part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(c)  in part, as an office, school, studio or private garage;

c.  arising out of the rendering of or failure to render professional services;

d.  arising out of a premises:

(1)  owned by an **insured;**

(2)  rented to an **insured;**

(3)  rented to others by an **insured;**

that is not an **insured location.**

e.  arising out of:

(1)  the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an **insured;**

(2)  the entrustment by an **insured** of a motor vehicle or any other motorized land conveyance to any person; or

(3)  vicarious parental liability imposed by statute for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

This exclusion does not apply to:

(1)  a trailer not towed by or carried on a motorized land conveyance.

(2)  a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

(a)  not owned by an **insured;** or

(b)  owned by an **insured** and on an **insured location.**

(3)  a motorized golf cart when used to play golf on a golf course.

(4)  a vehicle or conveyance not subject to motor vehicle registration which is:

(a)  used to service an **insured's** residence;

(b)  designed for assisting the handicapped; or

(c)  in dead storage on an **insured location.**

f.  arising out of:

(1)  the ownership, maintenance, use, loading or unloading of a watercraft described below;

(2)  the entrustment by an **insured** of a watercraft described below to any person; or

(3)  vicarious parental liability imposed by statute for the actions of a child or minor using a watercraft described below.

Watercraft:

(1)  with inboard or inboard-outdrive motor power of more than 50 horsepower owned by or rented to an **insured;**

(2)  that is a sailing vessel, with or without auxiliary power, which is more than 35 feet in length owned by or rented to an **insured;** or

(3)  powered by one or more outboard motor(s) with more than 50 total horsepower if the outboard motor(s) is owned by an **insured.** But, watercraft with outboard motors of more than 50 total horsepower are covered for the policy period if:

(a)  acquired prior to the policy period and:

(i)  you declare them at policy inception; or

(ii)  you tell us in writing, within 45 days after you acquire them, that you intend to insure them.

(b)  acquired during the policy period.

This exclusion does not apply while the watercraft is stored.

g.  arising out of:

(1)  the ownership, maintenance, use, loading or unloading of an aircraft;

(2)  the entrustment by an **insured** of an aircraft to any person; or

(3)  vicarious parental liability imposed by statute for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

h.  caused directly or indirectly by war, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

i.  which arises out of the transmission of a communicable disease by an **insured.**

Exclusions d., e., f., and g. do not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured.**

**LIABILITY EXCLUSIONS**

2.  **LIABILITY** does not apply to:

a.  liability:

(1)  for your share of any loss assessment charged against all members of an association, corporation or community of property owners;

(2)  under any other contract or agreement. However, this exclusion does not apply to written contracts:

(a)  that directly relate to the ownership, maintenance or use of an **insured location;** or

(b)  where the liability of others is assumed by the **insured** prior to an **occurrence;**

unless excluded in (1) above or elsewhere in this policy;

b.  **property damage** to property owned by the **insured;**

c.  **property damage** to property rented to, occupied or used by or in the care of the **insured.** This exclusion does not apply to **property damage** caused by fire, smoke or explosion;

d.  **bodily injury** to any person eligible to receive any benefits:

(1)  voluntarily provided; or

(2)  required to be provided;

by the **insured** under any:

(1)  workers' compensation law;

(2)  non-occupational disability law; or

(3)  occupational disease law;

e.  **bodily injury** or **property damage** for which an **insured** under this policy:

(1)  is also an **insured** under a nuclear energy liability policy; or

(2)  would be an **insured** under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

(1)  American Nuclear Insurers;

(2)  Mutual Atomic Energy Liability Underwriters;

(3)  Nuclear Insurance Association of Canada;

or any of their successors;

f. **bodily injury** to you or an **insured** within the meaning of part a or b of the definition of "**insured**".

**MEDICAL PAYMENTS EXCLUSIONS**

3. **MEDICAL PAYMENTS TO OTHERS** does not apply to **bodily injury:**

a. to a **residence employee** if the **bodily injury:**
   (1) occurs off the **insured location;** and
   (2) does not arise out of or in the course of the **residence employee's** employment by an **insured;**

b. to any person eligible to receive benefits:
   (1) voluntarily provided; or
   (2) required to be provided;
   under any:
   (1) workers' compensation law;
   (2) non-occupational disability law; or
   (3) occupational disease law;

c. from any:
   (1) nuclear reaction;
   (2) nuclear radiation; or
   (3) radioactive contamination:
   all whether controlled or uncontrolled or however caused; or
   (4) any consequence of any of these.

d. to any person, other than a **residence employee** of an **insured,** regularly residing on any part of the **insured location.**

---

## PERSONAL LIABILITY ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability shown on the Declarations Page for **PERSONAL LIABILITY.**

**CLAIM EXPENSE**

We pay:

a. expenses we incur and costs taxed against an **insured** in any suit we defend;

b. premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for **LIABILITY.** We need not apply for or furnish any bond;

c. reasonable expenses incurred by an **insured** at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit;

d. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies;

e. prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of liability, we will not pay any prejudgment interest based on that period of time after the offer.

**FIRST AID EXPENSE**

We will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured.**

**DAMAGE TO PROPERTY OF OTHERS**

We will pay, at replacement cost, up to $500 per occurrence for property damage to property of others caused by an **insured.**

We will not pay for **property damage:**

  a. to the extent of any amount recoverable under **PERSONAL PROPERTY** if a part of this policy;

  b. caused intentionally by an **insured** who is 13 years of age or older;

  c. to property owned by an **insured;**

  d. to property owned by or rented to a tenant of an **insured** or a resident in your household; or

  e. arising out of:

    (1) **business** pursuits;

    (2) any act or omission in connection with a premises owned, rented or controlled by an **insured,** other than the **insured location;** or

    (3) the ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

    This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an **insured.**

---

The following do not change the limit of liability shown on the Declarations Page for **PERSONAL LIABILITY.**

---

**DAMAGE TO GOVERNMENT HOUSING**

We will pay for **DAMAGE TO GOVERNMENT HOUSING,** subject to these conditions:

  a. You must be an officer

    (1) of the U.S. Army, Navy, Marine Corps, Air Force or Coast Guard, and

    (2) on active duty at the time of damage.

  b. This coverage applies only to:

    (1) damage to Government-controlled family or unaccompanied personnel housing and its Government-owned furnishings; and

    (2) damage for which you have been found responsible or liable under the report of survey system utilized by the armed service.

  c. We will not pay more than your monthly basic pay at the time of damage.

  d. We will not pay for damage resulting from deliberate unauthorized use of the housing, its furnishings and equipment. Nor for damage resulting from violation of military rules pertaining to the occupancy of the housing.

  e. We will not pay for Government expense in routine or regular maintenance, replacement or cleanup resulting from normal use, wear and tear, or poor housekeeping.

  f. We will not pay for **property damage** to the extent of any amount recoverable under **PERSONAL PROPERTY** if a part of this policy.

  g. Exclusion 2c of **LIABILITY EXCLUSIONS** does not apply to this coverage.

---

**LOSS ASSESSMENT**

We will pay up to $1000 for your share of any loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

  a. each occurrence to which **PERSONAL LIABILITY** of this policy would apply;

  b. liability for each act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

    (1) the director, officer or trustee is elected by the members of a corporation or association of property owners; and

    (2) the director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of your place of residence.

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Exclusion 2a (1) under **LIABILITY EXCLUSIONS** does not apply to this coverage.

## PERSONAL LIABILITY CONDITIONS

**LIMIT OF LIABILITY**

Our total liability under **LIABILITY** for all damages resulting from any one occurrence will not be more than the limit of liability for **LIABILITY** as shown on the Declarations Page. This limit is the same regardless of the number of **insureds**, claims made or persons injured. All **bodily injury** and **property damage** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

Our total liability under **MEDICAL PAYMENTS TO OTHERS,** for all medical expense payable for **bodily injury,** to one person as the result of one accident will not be more than the limit of liability for **MEDICAL PAYMENTS TO OTHERS** as shown on the Declarations Page.

**SEVERABILITY OF INSURANCE**

This insurance applies separately to each **insured.** This condition will not increase our limit of liability for any one occurrence.

**DUTIES AFTER LOSS**

In case of an accident or occurrence, the **insured** will perform the following duties that apply. You will help us by seeing that these duties are performed:

a. give written notice to us as soon as is practical, which sets forth:

    (1) the identity of the policy and **insured;**

    (2) reasonably available information on the time, place and circumstances of the accident or occurrence; and

    (3) names and addresses of any claimants and witnesses;

b. promptly forward to us every notice, demand, summons or other process relating to the accident or occurrence;

c. at our request, help us:

    (1) to make settlement;

    (2) to enforce any right of contribution or indemnity against any person or organization who may be liable to an **insured;**

    (3) with the conduct of suits and attend hearings and trials;

    (4) to secure and give evidence and obtain the attendance of witnesses;

d. under the coverage – **DAMAGE TO PROPERTY OF OTHERS** - submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the **insured's** control;

e. the **insured** will not, except at the **insured's** own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the **bodily injury.**

| | |
|---|---|
| **DUTIES OF AN INJURED PERSON - MEDICAL PAYMENTS TO OTHERS** | The injured person or someone acting for the injured person will: |

    a.  give us written proof of claim, under oath if required, as soon as is practical; and

    b.  authorize us to obtain copies of medical reports and records.

    c.  The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

| | |
|---|---|
| **PAYMENT OF CLAIM - MEDICAL PAYMENTS TO OTHERS** | Payment under this coverage is not an admission of liability by an **insured or us.** |

| | |
|---|---|
| **SUIT AGAINST US** | No action can be brought against us unless there has been compliance with the policy provisions. |

No one will have the right to join us as a party to any action against an **insured.** Also, no action with respect to **LIABILITY** coverage can be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

| | |
|---|---|
| **BANKRUPTCY OF AN INSURED** | Bankruptcy or insolvency of an **insured** will not relieve us of our obligations under this policy. |

| | |
|---|---|
| **OTHER INSURANCE - LIABILITY** | This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy. |

GAR      01326 75 75          REN 001

**ADJUSTED CONTENTS ENDORSEMENT**                                **R-20**
(Renters Protection Policy)                                      Ed. 4–86

**AGREEMENT**          **PERSONAL PROPERTY.**

It is agreed that the Limit of Liability for PERSONAL PROPERTY shown on the Declarations Page will be adjusted at each renewal of this policy. The adjustment will reflect the averaged rate of change of the

– House furnishings,
– Entertainment Commodities, and
– Apparel Commodities

portions of the Consumer Price Index of the U.S. Department of Labor. The resulting limit will be rounded to the nearest $100. We will not reduce this limit without your consent.

You have the right to refuse any change in the Limit of Liability for PERSONAL PROPERTY. To do this, you must notify us before the effective date of such change. If you do reject the new limit, we may, at our option, delete this endorsement from your policy.

**OTHER**              None of the other provisions of this policy are changed.
**POLICY**
**PROVISIONS**

**R-20** Ed. 4–86

GAR      01326  75  75          REN  001

**R-MCOVUT** (0609)

**MILITARY COVERAGE**
(Renters Protection Plan)
Utah

The following are added to **ADDITIONAL COVERAGES**:

**MILITARY UNIFORMS AND EQUIPMENT**

We will waive your deductible for loss to uniforms and military equipment, owned by you, including but not limited to clothing, insignia, flight cases, headsets, personal body armor and GPS devices for a loss described under **CAUSES OF LOSS COVERED** while you are on active or active reserve duty.

This coverage reduces the **PERSONAL PROPERTY** limit of liability.

No deductible applies to this coverage.

**WAR**

To the extent that coverage for war is provided here, item 1. **CAUSES OF LOSS NOT COVERED** and the war exclusion in any endorsement attached to this policy do not apply.

We will pay the lesser of:

a.   Your PERSONAL PROPERTY limit; or

b.   $10,000

for:

a.   Direct loss or damage to your personal property caused by **war**; or

b.   Abandonment as a consequence of **war**

subject to these conditions:

"**War**" means war whether declared or undeclared; civil war; insurrection; rebellion; revolution; any warlike act by friendly or enemy forces; destruction or seizure for a military purpose.

This coverage applies only:

a.   To any **insured** who is subject to government reimbursement for loss to personal property under 31 USC 3721, commonly referred to as the Military Personnel and Civilian Employees Claims Act, as amended and supplemented, or any successor or replacement act; and

b.   To loss that occurs anywhere outside the Continental United States, Alaska or Hawaii.

In addition to compliance with the other provisions of **DUTIES AFTER LOSS**, you must:

a.   Report your claim to the U.S. Government, its affiliate or agency, and comply with its requirements;

b.   Send us, within 60 days after our request, copies of all actual documents which outline the basis of the government's reimbursement for your loss including the amount paid.

The **LOSS SETTLEMENT** clause in this policy is changed for loss by **war**, only to read:

> **War** loss to personal property under this policy is not payable until the U.S. Government has made its final payment to you for the loss under 31 USC 3721 as amended and supplemented, or any successor or replacement act.
>
> Subject to all policy provisions, our payment will be the total amount of your loss minus the U.S. Government payment.
>
> We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss, and satisfactory evidence of the amount of the U.S. Government payment, or we reach an agreement with you.

Paragraph 2. of the **OTHER INSURANCE** clause is changed for loss by **war** only to read:

> 2.   If, at the time of loss there is other insurance in force, then this policy will apply only when that coverage has been exhausted.
>
> Government payment for loss is not insurance, but our payment will not be made until after the U.S. Government has made its final payment for your loss.

This coverage reduces the **PERSONAL PROPERTY** limit of liability.

The policy deductible applies to this coverage.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

Copyright, USAA, 2009. All rights reserved.

**AMENDATORY ENDORSEMENT - UTAH**　　　　　　　**R-UT**
(Renters Protection Policy)　　　　　　　　　　　　(1006)

## GENERAL PROVISIONS

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

**CONCEALMENT, MISREPRESENTATION OR FRAUD** is deleted and replaced by:

We do not provide coverage to any **insured** who, whether before or after a loss, has:

a) intentionally concealed or misrepresented any material fact or circumstance;

b) engaged in fraudulent conduct; or

c) made false statements;

relating to this insurance.

**RECOVERY FROM OTHERS**

**RECOVERY FROM OTHERS** is deleted and replaced by:

An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **insured** must sign and deliver all related papers and cooperate with us.

If we make a payment under this policy and the person to or for whom payment was made recovers damages from another, that person shall hold in trust for us the proceeds of the recovery and reimburse us to the extent of our payment.

Recovery from others does not apply to **MEDICAL PAYMENTS TO OTHERS** or to **DAMAGE TO PROPERTY OF OTHERS** under **PERSONAL LIABILITY** when it is a part of the Policy.

**CANCELLATION AND NON-RENEWAL**

**CANCELLATION AND NON-RENEWAL** is deleted and replaced by:

**CANCELLATION**

a. You may cancel this policy at any time. But the effective date of cancellation cannot be earlier than the date of your request. Return premium will be computed on a pro rata basis.

b. We may cancel this policy only for the reasons stated in this condition by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you or mailed to you at your mailing address shown on the Declarations Page. Proof of mailing shall be sufficient proof of notice.

　　1. When you have not paid the premium, whether payable to us or to our agent or under any finance or credit plan, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect.

2. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

3. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel for one or more of the following reasons by notifying you 30 days before the cancellation takes effect.

   (a)  there has been a material misrepresentation;

   (b) the risk has changed substantially since the policy was issued, unless we could have reasonably foreseen the change or contemplated the risk in writing the policy; or

   (c) there has been a substantial breach of a contractual duty, condition or warranty.

4. When this policy is written for a period of more than one year or for an indefinite term, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

c.  When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded. When the policy is canceled, the return premium will be pro rata.

d.  If we cancel this policy, the unearned premium shall be refunded within 30 days after the effective date of cancellation. When you request cancellation, the return premium will be refunded within a reasonable time after the date cancellation takes effect.

**NON-RENEWAL**

We may elect not to renew this policy. If we elect not to renew, we will let you know in writing at least 30 days before the expiration date of the policy. The non-renewal notice may be delivered to you or mailed through first class mail to your last address known to us. Proof of mailing will be sufficient proof of notice.

**\* PERSONAL PROPERTY**

**DOLLAR LIMITS ON SOME PROPERTY**

Item **9**. in the RP-2 and RP-3 contracts and Item **10**. in the RP-4 and RP-5 contracts are deleted and replaced by:

$200   For money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins, medals, food stamps, gasoline coupons, and tokens.

**PROPERTY NOT COVERED**

Item **6**. is deleted.

**CAUSES OF LOSS
COVERED**

Item **3. FLOOD AND WATER** in the RP-2 and RP-3 contracts is deleted and replaced by:

a. Flood means:

   1. the overflow of inland or tidal waters;

   2. the unusual and rapid accumulation or runoff of surface waters from any source; or

   3. mudslides which are proximately caused by the overflow of inland or tidal waters and are akin to a river or liquid and flowing mud on the surfaces of normally dry land areas including your residence, as when earth is carried by a current of water and deposited along the path of the current.

b. Water means:

   1. damage caused by water which backs up through sewers or drains;

   2. damage caused by accidental escape of water from plumbing, heating, or air condition pipes, fixtures, or equipment or domestic appliances.

We will not cover damage caused by gradual seepage of water through building or basement walls, roofs, windows, doors, foundations, or floors. This **CAUSE OF LOSS** does not include loss caused by or resulting from freezing except as provided in Item **15. FREEZING**.

Item **14. SUDDEN AND ACCIDENTAL TEARING APART, CRACKING, BURNING OR BULGING** in the RP-2 and RP-3 contracts is deleted and replaced by:

We cover loss caused by sudden and accidental tearing apart, cracking, burning, or bulging, of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This **CAUSE OF LOSS** does not include loss caused by or resulting from freezing except as provided in Item **15. FREEZING**.

Under Item **16. SUDDEN AND ACCIDENTAL DAMAGE FROM ARTIFICIALLY GENERATED ELECTRICAL CURRENT** in the RP-2 and RP-3 contracts, the exclusion for loss to a tube, transistor or like electronic component is deleted.

**CAUSES OF LOSS
NOT COVERED**

Item **13.** in the RP-4 and RP-5 contracts is deleted and replaced by:

13. When your property is in transit or storage, meaning in the custody of a public carrier or storage facility under a bill of lading, a mover's contract, baggage check, or other form of shipping or storage document, we do not insure for loss caused directly or indirectly by any of the following:

   a. Damage or breakage incurred while loading or unloading.

b. Delay during shipment.

c. Insufficient packing or address.

d. Breakage.  But there is coverage for breakage caused by the stranding, sinking, overturning, crashing, ditching, derailment, burning or collision of a public conveyance.

Exclusion 7. does not apply.

**ADDITIONAL COVERAGES**

**MOVING AND STORAGE** in the RP-2 and RP-3 contracts is deleted and replaced by:

**MOVING AND STORAGE:**

a. begins when YOUR PROPERTY PASSES INTO THE CUSTODY OF A PUBLIC CARRIER, INCLUDING United States government trucks, aircraft and vessels, or a storage facility.  Your property must be under a bill of lading, a mover's contract, baggage check, or other form of shipping or storage document.

This coverage ends:

1. when your property is delivered to your permanent or temporary address in accordance with the shipping document; or

2. when you take possession of your property from storage.

b. provides coverage, in addition to the previously described **CAUSES OF LOSS COVERED,** for:

1. loss of your property if, when described under a bill of lading, mover's contract, baggage check, or other form of shipping or storage document, it cannot be located after a reasonable search;

2. loss or damage caused by the stranding, sinking, overturning, crashing, ditching, derailment, burning, or collision of a public conveyance;

3. loss or damage caused by water, except as excluded in c. below; and

4. your share of general average and salvage charges. These charges do not increase the amount shown on the Declarations Page for **PERSONAL PROPERTY.**

c. does not cover loss or damage caused by:

1. Breakage, marring, scratching, or handling;

2. Delay during shipment;

3. Humidity or temperature changes;

4. Fungi, mildew or mold;

5. Inherent defect of the property;

6. Insufficient packing or address; or

7. Insects, rodents, or vermin.

**R-UT** (1006)

d.   does not increase the amount shown on the Declarations Page for **PERSONAL PROPERTY.**

**FOOD SPOILAGE** is deleted and replaced by:

**REFRIGERATED PRODUCTS**

We will pay you up to $500 for loss to the contents of a freezer or a refrigerator located at your residence, as a consequence of power failure or mechanical breakdown. The $500 limit is the most we will pay in any one loss.

This coverage does not increase the amount shown on the Declarations Page for **PERSONAL PROPERTY.**

No deductible applies to this coverage.

**LOCK REPLACEMENT** is deleted and replaced by:

**LOCK REPLACEMENT**

When the residence door keys are stolen, we will pay the cost to:

a.   change the combination in the lock cylinder of the door locks as needed; or

b.   change the lock hardware of the doors as needed.

The limit of liability for **LOCK REPLACEMENT** is $250.

This coverage does not increase the amount shown on the Declarations Page for **PERSONAL PROPERTY.**

No deductible applies to this coverage.

Items **1.**, **2.**, and **3.** under **LOSS OF USE** are deleted and replaced by:

**LOSS OF USE**

We will pay for:

1.   **ADDITIONAL LIVING EXPENSE.** If a **CAUSE OF LOSS** covered by this policy makes the place where you reside not fit to live in, we cover the necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

     Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event, not to exceed 12 months.

2.  **FAIR RENTAL VALUE.**  If a **CAUSE OF LOSS** covered by this policy makes that part of the residence premises rented to others or held for rental by you not fit to live in, we cover the fair rental value of that part of the residence rented to others or held for rental by you, less any expenses that do not continue while it is not fit to live in.

    Payment will be for the shortest time required to repair or replace that part of the premises rented to or held for rental, but not to exceed 12 months.

3.  **PROHIBITED USE.**  If a civil authority prohibits you from use of the place where you reside as a result of direct damage to neighboring premises by a covered **CAUSE OF LOSS**, we cover the **ADDITIONAL LIVING EXPENSE** or **FAIR RENTAL VALUE** loss as provided under 1. and 2. above, for no more than two weeks.

Item **4.** in the RP−4 and RP−5 contracts of **LOSS OF USE** is deleted and replaced by:

4.  If a power failure that occurs away from your premises makes your premises not fit to live in, we will cover the **ADDITIONAL LIVING EXPENSE** as defined above.

    This coverage starts 48 hours after your residence premises becomes not fit to live in.  It will not be more than 7 days in duration.

**PERSONAL PROPERTY CONDITIONS**

**DUTIES AFTER LOSS** is deleted and replaced by:

If there is an accident or incident that may be covered by this policy you must do the following:

1.  In the case of a loss by theft, vandalism, or malicious mischief, immediately notify the police or military authority, whichever has jurisdiction over the location where the loss occurred. Immediately notify the credit card or fund transfer card company in case of loss under **CREDIT CARD** or **FUND TRANSFER CARD** coverage.

2.  Protect the property from further damage.

3.  Contact us as soon as possible and tell us as much as you can about the loss. Give us the price and date of purchase, **actual cash value** and a complete description of the article(s) involved. One means you may use to fulfill this requirement is mailing the notice to us, postage prepaid, through first class mail deposited in a United States Post Office.

4.  Submit a proof of loss when required by us. One means you may use to send the requested proof of loss is mailing it to us, postage prepaid, through first class mail deposited in a United States Post Office.

5. Send us receipts, appraisals or other proof of ownership or value. Tell us if there is a lien on the property, and who holds it. You must tell us if there is other insurance on the property.

6. If required by us, you must show us the property and answer our questions under oath about the loss or damage.

7. You must tell us about the loss within 91 days after the loss is discovered. Failure to submit the requested proof of loss within 91 days does not invalidate your claim, if you show that it was not reasonably possible to do so and also show that you submitted the proof of loss to us as soon as reasonably possible.

**SUIT AGAINST US** is deleted and replaced by:

There is a time limit for bringing legal action against us concerning this policy. It must be filed within three years after the loss occurs. You must also comply with all policy provisions.

Item **1.** in the RP-3 and RP-5 contracts of **LOSS SETTLEMENT** is deleted and replaced by:

1. It is our option to:

   a. replace or pay you our cost to replace the property with new property of like kind and quality, without deduction for depreciation, or

   b. pay you the cost to repair or restore the property to the condition it was in just before the loss, or

   c. pay you the necessary amount actually spent to repair or replace the damaged property.

Item 3. in the RP-2 and RP-4 contracts and Item 5. in the RP-3 and RP-5 contracts of the **LOSS SETTLEMENT** is deleted and replaced by:

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable within 30 days after we receive your Proof of Loss.

   a. we reach an agreement with you; or

   b. there is an entry of a final judgment; or

   c. there is a filing of an appraisal award with us.

Item **4**. in the RP-3 and RP-5 contracts of **LOSS SETTLEMENT** is deleted and replaced by:

4. We will pay no more than **actual cash value** until repair or replacement of the damaged property is completed unless the entire loss is less than $500. You may make a claim for loss on an **actual cash value** basis. Repair or replacement must be completed within 365 days after loss unless you request in writing that this time limit be extended for an additional 180 days. Upon completion of repairs or replacement, we will pay the additional amount claimed under replacement cost coverage.

**RECOVERED PROPERTY** is deleted and replaced by:

**SALVAGE AND RECOVERED PROPERTY**

We have an interest in the salvage value of any property for which we have made a payment under the **LOSS SETTLEMENT** provision. At our option, property that we have paid for or replaced becomes our property.

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property may be retained by you. If you retain the property, the loss payment, or any lesser amount to which we agree, must be refunded to us.

**\*PERSONAL LIABILITY**

**LIABILITY**

**LIABILITY** is deleted and replaced by the following:

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay or tender for damages resulting from an **occurrence** equals our limit of liability. This coverage does not provide defense to any **insured** for criminal prosecution or proceedings.

**Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a. **bodily injury;** or

b. **property damage.**

We will not pay for punitive damages or exemplary damages, fines or penalties.

**LIABILITY AND
MEDICAL PAYMENTS
EXCLUSIONS**

Item **1.a.** is deleted and replaced by:

a.  caused by the intentional or purposeful acts of any **insured**, including conduct that would reasonably be expected to result in **bodily injury** to any person or **property damage** to any property.

Item **1.b.** is deleted and replaced by:

b.  1.  arising out of or in connection with a **business** engaged in by an **insured.** This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **business;**

2.  arising out of the rental or holding for rental of any part of any premises by an **insured.** This exclusion does not apply to the rental or holding for rental of an **insured location:**

a.  on an occasional basis if used only as a residence;

b.  in part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

c.  in part, as an office, school, studio or private garage.

Under item **1.f., Watercraft, (3)** is deleted and replaced by:

(3)  powered by one or more outboard motor(s) with more than 50 total horsepower if the outboard motor(s) is owned by an **insured**. But, watercraft with outboard motors of more than 50 total horsepower are covered for the policy period if acquired during the policy period.

Under item **1.f., Watercraft, (4)** is added:

(4)  that is a personal watercraft. As used in this section, personal watercraft means a conveyance used or designed to be used on the water which is propelled by a water jet propulsion pump.

Under **1.** the following exclusions are added:

1.  arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s). Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

2.  arising out of the actual, alleged, or threatened discharge, dispersal, release, escape, seepage, or migration of pollutants however caused and whenever occurring. This includes any loss, cost or expense arising out of any:

    a. Request, demand, or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, or assess the effects of pollutants; or

    b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

    Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials which are intended to be or have been recycled, reconditioned, or reclaimed.

3. arising out of exposure to lead paint or other lead-based products.

4. arising out of exposure to asbestos.

5. arising out of the commission of, attempting to flee from, or avoiding apprehension for a criminal act for which intent is a necessary element.

**LIABILITY EXCLUSIONS**

Under **2.** the following exclusion is added:

1. punitive or exemplary damages, fines, or penalties.

**PERSONAL LIABILITY ADDITIONAL COVERAGES**

Item **c.** of **CLAIM EXPENSE** is deleted and replaced by:

c. reasonable expenses incurred by an **insured** at our request, including actual loss of earnings (but not loss of other income) up to $100 per day, for assisting us in the investigation or defense of a claim or suit;

The first paragraph of **DAMAGE TO PROPERTY OF OTHERS** is deleted and replaced by:

We will pay, at replacement cost, up to $1,000 per occurrence for property damage to property of others caused by an **insured.**

Item **a.** of **DAMAGE TO GOVERNMENT HOUSING** is deleted and replaced by:

a. You must be a military member

    1. of the U.S. Army, Navy, Marine Corps, Air Force or Coast Guard, and

    2. on active duty at the time of damage.

**OTHER POLICY PROVISIONS**

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

* Applicable only when you have purchased this coverage as a provision of this policy.

Copyright, USAA, 2006. All rights reserved.

R-UT (1006)

GAR   01326 75 75   REN 001

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**SPOUSE ACCESS**

The following condition is added:

The named insured and **we** agree that the named insured and resident spouse are "customers" for purposes of state and federal privacy laws.  The resident spouse will have access to the same information available to the named insured and may initiate the same transactions as the named insured.

The named insured may notify **us** that he/she no longer agrees that the resident spouse shall be treated as a "customer" for purposes of state and federal privacy laws, and **we** will not permit the resident spouse to access policy information.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

Copyright, USAA, 2005.  All rights reserved.

**ESA** (02–05)                                        49319–0205

PAGE   43
GAR    01326 75 75      REN  001

**R-IDF** (0703)

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY

**IDENTITY AND FINANCIAL FRAUD COVERAGE**

**CREDIT CARD, FUND TRANSFER CARD, FORGERY AND COUNTERFEIT MONEY**

**CREDIT CARD, FUND TRANSFER CARD, FORGERY AND COUNTERFEIT MONEY** is deleted and replaced by:

**CREDIT CARD, FUND TRANSFER CARD, FORGERY COUNTERFEIT MONEY, AND IDENTITY FRAUD EXPENSE COVERAGE**

**CREDIT CARD, FUND TRANSFER CARD, FORGERY, COUNTERFEIT MONEY, AND IDENTITY FRAUD EXPENSE COVERAGE.**

We will pay up to $5,000 in the aggregate for all loss and defense costs resulting from:

a.  the legal obligation of any **insured** to pay because of the theft or unauthorized use of credit cards issued to or registered in any **insured's** name;

b.  loss resulting from theft or unauthorized use of electronic fund transfer cards or access devices used for deposit, withdrawal or transfer of funds, issued to or registered in any **insured's** name;

c.  loss to any **insured** caused by forgery or alteration of any check or negotiable instrument;

d.  loss to any **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency; or

e.  **expenses** incurred by any **insured** as the direct result of any one **Identity Fraud.**

For the purposes of this endorsement a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss, even if a series of acts continues into a subsequent policy period.

We will provide defense, other than that provided by **Identity Fraud Expense** coverage as follows:

a.  we may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay or tender for the loss equals our limit of liability.

b.  if a suit is brought against any **insured** for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

c.  we have the option to defend at our expense any **insured** or any **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

**R-IDF** (0703)

Page 1 of 3

**DEFINITIONS**

With respect to the provisions of this endorsement only, the following definitions are added:

1. **"Expenses"** means:

   a. costs for notarizing fraud affidavits or similar documents for financial institutions or similar credit grantors or credit agencies that have required that such affidavits be notarized;

   b. costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors;

   c. lost wages as a result of time taken off from work to meet with, or talk to, law enforcement agencies, credit agencies, merchants, and/or legal counsel, or to complete fraud affidavits, not to exceed $250 per day;

   d. loan application fees for re-applying for a loan or loans when original application is rejected solely because the lender received incorrect credit information;

   e. reasonable attorney fees incurred, with our prior consent, for:

      (1) defense of lawsuits brought against an **insured** by merchants or their collection agencies; and

      (2) the removal of any criminal or civil judgments wrongly entered against an **insured;**

   f. charges incurred for long distance telephone calls to merchants, law enforcement agencies, financial institutions or similar credit grantors, or credit agencies to report or discuss **Identity Fraud;**

   g. research fees charged by merchants, financial institutions or similar credit grantors, or credit agencies.

2. **"Identity Fraud"** means the act of knowingly transferring or using, without lawful authority, a means of identification of any **insured** with the intent to commit, or to aid or abet, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

**EXCLUSIONS**

The following additional exclusions apply to this coverage.

   1. We do not cover forgery, theft or use of a credit card, electronic fund transfer card or access device:

      a. by a resident of your household;

      b. by a person who has been entrusted with the card(s) or device(s); or

      c. if any **insured** has not complied with all terms and conditions under which the cards or devices are issued.

R-IDF (0703)                                                                                   Page 2 of 3

PAGE   45
GAR     01326  75  75        REN 001

2.  We do not cover loss arising out of **business** pursuits, dishonesty, fraud, or criminal activity of any **insured.**

This coverage is additional insurance. A $100 deductible applies to the **Identity Fraud Expense** coverage. No deductible applies to the Credit Card, Fund Transfer Card, Forgery, and Counterfeit Money coverage.

YOUR DUTIES AFTER LOSS

The following is added under **PERSONAL PROPERTY CONDITIONS, DUTIES AFTER LOSS:**

8.  You must provide us with receipts, bills or other records that support your claim for expenses under **Identity Fraud Expense** coverage.

**OTHER INSURANCE**

For the purposes of this endorsement, the following is added to **PERSONAL PROPERTY CONDITIONS, OTHER INSURANCE:**

The coverage provided by this endorsement is excess over other insurance that covers the same loss. Other insurance includes the coverage and any deductible required by such other insurance. This coverage is also excess over any other contractual conditions, rights or benefits that provide relief from or indemnification for your obligations to pay any amounts to any third party resulting from a loss covered under this endorsement. In no event will we pay more than the applicable Limit of Insurance.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

Copyright, USAA 2003. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**R-IDF** (0703)                                                              Page 3 of 3

PAGE   46
GAR   01326  75  75        REN  001

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.        **RP-MLD**
(0803)

## AMENDMENT TO CONTRACT PROVISIONS

**DEFINITIONS**          The following definition is added:

"**Fungus**" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**FUNGUS,**          The following **ADDITIONAL COVERAGE** is added:
**WET OR DRY ROT,**
**OR BACTERIA**          We will pay up to:

a.  a total of $2,500 for direct physical loss to **PROPERTY COVERED** caused by, resulting from, or consisting of **fungus,** wet or dry rot, or bacteria if the direct result of a **CAUSE OF LOSS COVERED**; and

b.  $2,000 for the necessary increase in costs which you incur to maintain your normal standard of living when the place where you reside is uninhabitable due to a loss caused by, resulting from, or consisting of **fungus,** wet or dry rot, or bacteria which is the direct result of a **CAUSE OF LOSS COVERED.**

The coverage provided above is the only coverage provided by this policy for damage or loss solely caused by, resulting from, or consisting of **fungus,** wet or dry rot, or bacteria.

It is the most we will pay for the cost:

a.  to remove **fungus,** wet or dry rot, or bacteria from covered property; and

b.  of any testing of air or property to confirm the absence, presence or level of **fungus,** wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of **fungus,** wet or dry rot, or bacteria.

The coverage provided above applies only when such loss or costs occur during the policy period and only if all reasonable means were used to save and protect the property from further damage at or after the time of the occurrence of that **CAUSE OF LOSS COVERED.**

If there is damage to covered property, not caused solely by **fungus,** wet or dry rot, or bacteria, loss payment will not be limited by the terms of this **ADDITIONAL COVERAGE,** except to the extent that **fungus,** wet or dry rot, or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this **ADDITIONAL COVERAGE.**

This is additional insurance. No deductible applies to this coverage once the policy deductible has been met.

**CAUSES OF LOSS**          The following exclusion is added to policy forms RP-2, RP-3, RP-4, and RP-5:
**NOT COVERED**

**Fungus, Wet or Dry Rot, or Bacteria,** meaning the presence, growth, proliferation, spread or any activity of **fungus,** wet or dry rot, or bacteria other than as provided in **ADDITIONAL COVERAGES, Fungus, Wet or Dry Rot, or Bacteria.**

PAGE    47
GAR     01326  75  75        REN 001

If your policy is the RP−4 or the RP−5 policy form, item 8.c. is deleted and replaced by the following:

8.c. smog, rust, or other corrosion.

**LIABILITY AND MEDICAL PAYMENTS EXCLUSIONS**

For policy form RP−6, the following exclusion is added under item 1.:

arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation or, ingestion or, contact with, exposure to, existence of or presence of any **fungus,** wet or dry rot, or bacteria.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

Copyright, USAA, 2003. All rights reserved.

# WORKERS' COMPENSATION NOTICE

Most states now require employers to carry Workers' Compensation coverage for their employees. In a number of states this coverage applies to household workers, gardeners and even baby−sitters. The employer usually becomes liable to the employee for the protection after the employee has earned a certain minimum salary or worked a certain minimum number of hours per week/per quarter. You should consult the appropriate agency below for the requirements in your state.

We do not write Workers' Compensation in your state. Your current policy does not provide Medical Payments or Liability coverage for injury to an employee who is or is supposed to be covered by Workers' Compensation. This should not alarm you, however, since Workers' Compensation coverage can be obtained separately from another company or agency. Contact the department listed below for guidance in purchasing your Workers' Compensation coverage.

**REMEMBER,** you do not have to give up your present insurance with us in order to purchase Workers' Compensation coverage from another source.

**ALASKA**
Workmen's Compensation Division
Department of Labor
P.O. Box 25512
Juneau, AK  99802−5512

**COLORADO**
Workers' Compensation Section
Division of Labor
1120 Lincoln St, 14th Floor
Denver, CO  80203

**CONNECTICUT**
Workers' Compensation Commission
1890 Dixwell Avenue
Hamden, CT  06514

**DELAWARE**
Industrial Accident Board
State Office Building, 6th Floor
820 North French Street
Wilmington, DE  19801

**DISTRICT OF COLUMBIA**
DC Department of Employment Services
Labor Standards Bureau
Office of Workers' Compensation
64 New York Avenue, NE, 2nd floor
Washington, DC 20002

**HAWAII**
Disability Compensation Division
Department of Labor and Industrial Relations
P.O. Box 3769
Honolulu, HI  96812

**IOWA**
Division of Industrial Services, Department of
Employment Services
1000 E. Grand Avenue
Des Moines, IA 50319

**KANSAS**
Division of Workers' Compensation
Department of Human Resources
600 Merchants Bank Tower
800 SW Jackson
Topeka, KS 66612−1227

**KENTUCKY**
Department of Workers' Claims
Perimeter Park West
1270 Louisville Rd, Building C
Frankfort, KY 40601

**MARYLAND**
Workers' Compensation Commission
6 North Liberty Street
Baltimore, MD 21201

**MASSACHUSETTS**
Department of Industrial Accidents
600 Washington St., 7th Floor
Boston, MA 02111

**MICHIGAN**
Bureau of Workers' Disability Compensation
Department of Labor
P.O. Box 30016
201 North Washington Square
Lansing, MI 48909

**MINNESOTA\***
Workers' Compensation Division
Department of Labor and Industry
443 Lafayette Road
St. Paul, MN. 55155

**OHIO**
Workers' Compensation Board
30 West Spring Street
Columbus, OH 43266−0581

**OKLAHOMA**
Oklahoma Workers' Compensation Court
1915 N. Stiles
Oklahoma City, OK 73105

**SOUTH CAROLINA**
Workers' Compensation Commission
1612 Marion St.
P.O. Box 1715
Columbia, SC 29202

**SOUTH DAKOTA**
Division of Labor and Management
Department of Labor
Kneip Building, Third Floor
700 Govenors Drive
Pierre, SD 57501−2277

**UTAH**
Industrial Commission
160 East 300 South
Salt Lake City, UT 84111

\*   BE ADVISED that your policy only applies to injuries received by employees excluded from coverage by the Workers' Compensation statutes under Minn. Stat. 176.041, Subd. 1. You may be liable for any claims or expenses occurring outside of the Coverage of this policy. As an employer you may be subject to liability for lost wages, medical payments, rehabilitation for work related injuries, as well as additional amounts in penalties if workers' compensation coverage is required and no policy has been obtained. Also you may be penalized up to $1,000 per week per employee for any period of non−insurance pursuant to Minn. Stat. 176.181, Subd. 3.

# EXHIBIT F



**UMBRELLA POLICY PACKET**

GILLIAN AINSWORTH                                                  May 12, 2016
PO BOX 982072
PARK CITY UT 84098-2072

Effective:  06/17/2016 to 06/17/2017
GAR 01326 75 75 70U

### Important Messages

Refer to your Declarations Page and endorsements to verify that coverage, limits and other policy details are correct and meet your insurance needs. Required information forms are also enclosed for your review.

Please read the enclosed document, "Make Sure Coverage is Adequate: Review Umbrella Exposures and Check Policy" for details on updating your policy information.

This is not a bill. Any premium charge or return for this policy will be reflected on your next regular monthly statement. To receive this document and others electronically or to view your policy summary online, go to usaa.com. You may also contact us at  1-800-531-USAA (8722).

GAR 01326 75 75 70U



**Make Sure Coverage is Adequate: Review Umbrella Exposures and Check Policy**

Our mission is to help you protect your financial future and hard-earned assets with the right umbrella coverage. This is why we're recommending that you periodically review your umbrella exposures, coverage, dollar limits and endorsements and make any necessary policy updates.

Your policy coverage should reflect the current circumstances of your household, including driver information, as well as vehicle, property or watercraft ownership. To determine if you have adequate umbrella policy protection, please review the enclosed:

- **Declarations Page** — the required coverage, limits and endorsements are listed.
- **Supplemental Declarations Page** — you'll find your umbrella exposures, coverage and limits here.

If an umbrella policy change is necessary, please call us at 1-800-531-USAA (8722). Call us at 00-800-531-81110 from Europe (00-800-11-005-4316 from Greece).

**Your other policies may also need updating**
If an umbrella coverage change is needed, updates to other policies may also be necessary. Call us at the number above if there's been a change to the licensed drivers who reside in your household. You should also call us if the information for the vehicles, properties and watercraft listed on the umbrella policy Supplemental Declarations Page is incorrect or has changed.

Thank you for choosing USAA and taking a moment to make this important policy review.

GAR 01326 75 75 70U
DM00000



GARRISON PROPERTY and CASUALTY INSURANCE COMPANY
(A Stock Insurance Company)
9800 Fredericksburg Road, San Antonio, Texas 78288
**PERSONAL UMBRELLA POLICY DECLARATIONS -** Renewal

Policy Number: GAR 01326 75 75 70U

Effective: From 06/17/2016 to 06/17/2017
(12:01 A.M. standard time at Umbrella Base Location)

Named Insured and Mailing Address:
GILLIAN AINSWORTH
PO BOX 982072
PARK CITY UT 84098-2072

Umbrella Base Location:
5479 Luge Ln
Park City, Summit, UT 84098

| | Limit (per occurrence) | Premium |
|---|---|---|
| Umbrella Liability | $3,000,000 | $210.00 |
| | **Total** | **$210.00** |

PREMIUM DUE AT INCEPTION

**SCHEDULE OF UNDERLYING INSURANCE**

| TYPE OF INSURANCE | REQUIRED MINIMUM LIMITS | | | |
|---|---|---|---|---|
| | Bodily Injury | Property Damage | OR | Combined Single Limit |
| Private Passenger Vehicle Liability | $300,000/$500,000 | $100,000 | OR | $500,000 |
| Miscellaneous Vehicle Liability | $250,000/$500,000 | $100,000 | OR | $500,000 |
| Personal Liability | | | | $300,000 |
| Watercraft/Pers Watercraft Liability | | | | $300,000 |

**USAA requires you to maintain NO LESS THAN the above REQUIRED MINIMUM LIMITS. See the Required Minimum Insurance Condition in your policy.**

**Please verify your actual limits and exposures on the attached Supplemental Declarations.**

ENDORSEMENTS:

Added: NONE

Remain in Effect (Refer to Previous Policy) -  PU-100UT (09-10), PU-2009 (07-09), PU-2011 (04-11)

INFORMATIONAL FORMS  - UMBDV (11-10)

In WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at San Antonio, Texas, on this date 05/12/2016.

Deneen Donnley, Secretary

Alan W. Krapf, President

89853-0513

GAR 01326 75 75 70U



**PERSONAL UMBRELLA POLICY**
**Supplemental Declarations**

**Effective:**
From **06/17/2016** to **06/17/2017**
(12:01 a.m. standard time at Umbrella Base Location)

Your Umbrella premium is based in part on the following. The limits shown below represent the lowest policy limits carried.

Please contact us if any changes are needed.

**DESCRIPTION OF KNOWN EXPOSURES**

**Motor Vehicles (Includes Private Passenger and Miscellaneous Vehicles):**
        **Lowest Coverage Limit(s):** $300,000/$500,000/$300,000

2006 HONDA ODYSSEY

**Properties/Residences:**
        **Lowest Coverage Limit:** $300,000

5479 Luge Ln, Park City, Summit, UT 84098

CIC 1234 56 78 70U



**USAA**
9800 Fredericksburg Road
San Antonio, Texas 78288

## PERSONAL UMBRELLA POLICY

### READ YOUR POLICY, DECLARATIONS AND ENDORSEMENTS CAREFULLY

This policy is a legal contract between the named insured and the company shown on the Declarations. And like other contracts, it contains certain duties and responsibilities of both parties to the contract.  This contract consists of this policy plus the Declarations page and any applicable endorsements. The Quick Reference section outlines essential information contained on the Declarations and the major parts of the policy.

This is a participating policy. You are entitled to dividends as may be declared by the company's Board of Directors.

If this policy is issued by United Services Automobile Association ("USAA"), a reciprocal interinsurance exchange, the following apply:

- By purchasing this policy you are a member of USAA and are subject to its bylaws.

- This is a non-assessable policy. You are liable only for the amount of your premium as USAA has a free surplus in compliance with Article 19.03 of the Texas Insurance Code of 1951, as amended.

- The USAA Board of Directors may annually allocate a portion of USAA's surplus to Subscriber's Accounts. Amounts allocated to such accounts remain a part of USAA's surplus and may be used as necessary to support the operations of the Association. A member shall have no right to any balance in the member's account except until following termination of membership, as provided in the bylaws.

## QUICK REFERENCE

|  |  | **DECLARATIONS PAGE** |
|---|---|---|
|  |  | Named Insured and Address |
|  |  | Policy Period |
|  |  | Policy Limits and Premiums |
|  |  | Schedule of Underlying |
|  |  | Insurance |
|  |  | Endorsements |
| Beginning on Page | **2** | **Agreement and Definitions** |
|  | **4** | **Liability Coverages** |
|  |  | Insuring Agreement |
|  |  | Damages |
|  |  | Defense |
|  |  | Limit of Liability |
|  |  | Damages |
|  |  | Defense |
|  | **5** | **Exclusions** |
|  | **8** | **Conditions** |
|  |  | Bankruptcy |
|  |  | Concealment, |
|  |  | Misrepresentation or Fraud |
|  |  | Duties After An Occurrence or |
|  |  | Offense |
|  |  | Other Insurance |
|  |  | Our Right to Recover |
|  |  | Payment |
|  |  | Ownership |
|  |  | Required Underlying Limits |
|  |  | Spouse Access |
|  |  | Suit Against Us |
|  |  | Termination |
|  |  | Cancellation |
|  |  | Nonrenewal |
|  |  | Other Termination |
|  |  | Provisions |
|  |  | Transfer of Your Interest in |
|  |  | This Policy |
|  |  | Waiver or Change of Policy |
|  |  | Provisions |

CIC 1234 56 78 70U

---

## AGREEMENT

In return for payment of premium and subject to all terms of this policy, we will provide the insurance described.

However, this policy provides no uninsured motorists coverage, underinsured motorists coverage, auto no-fault coverage or medical payments coverage.

---

## DEFINITIONS

The words defined below are used throughout this policy.  They are in **boldface** when used.

A. "**You**" and "**your**" refer to the "named insured" shown on the Declarations and spouse if a resident of the same household.

B. "**We**," "**us**" and "**our**" refer to the Company providing this insurance.

C. "**Aircraft**" means any conveyance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

D. "**Bodily injury**."

1. "**Bodily injury**" means bodily harm, sickness, disease or death.

2. "**Bodily injury**" does not include mental injury such as emotional distress, mental anguish, humiliation, mental distress, or any similar injury unless it arises out of physical injury to some person.

E. "**Business**" means any full or part-time activity arising out of or related to any trade, profession or occupation of any **insured**.

F. "**Business property**" means any property on which a **business** is conducted.

G. "**Driving contest or challenge**" includes, but is not limited to:

1. A competition against other people, vehicles, or time; or

2. An activity that challenges the speed or handling characteristics of a vehicle or improves or demonstrates driving skills, provided the activity occurs on a track or course that is closed from non-participants.

H. "**Family member**" means a person related to **you** by blood, marriage, or adoption who is a resident of **your** household. This includes a ward or foster child who is a resident of **your** household.

I. "**Fungus**" or "**fungi**" means any microorganism or byproduct of any microorganism, including but not limited to mold, mildew, fungi, mycotoxins and spores.

J. "**Hovercraft**" means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles.

K. "**Insured**."

1. "**Insured**" means:

a. **You** and any **family member**;

b. Other residents of **your** household under the age of 21 and in the care of **you** or any **family member**;

c. Any person or organization legally responsible for animals, **watercraft** or **personal watercraft**:

(1) To which this policy applies; and

(2) Which are owned by any person in K.1.a. or K.1.b. above.

d. Any person using a **motor vehicle**, **watercraft** or **personal watercraft** to which this policy applies, provided that such use is with the consent of any **insured**.

2. However, "**insured**" does not include:

CIC 1234 56 78 70U

a. The owner of a **motor vehicle**, **watercraft** or **personal watercraft** loaned or rented to any **insured**. "Owner" in this paragraph includes the owner's agents or employees.

b. Any **motor vehicle** sales agencies, repair shops, service stations, storage garages or public parking lots, their owners, agents or employees.

c. Any shipyards, **watercraft** repair yards, marinas, yacht clubs, **watercraft** sales agencies, **watercraft** service stations and the like, their owners, agents or employees.

d. The lessee of a **motor vehicle**, **watercraft** or **personal watercraft** owned by any **insured**.

e. A person or organization using or having custody of animals, **watercraft** or **personal watercraft**, to which this policy applies, in the course of any **business** or without the consent of any **insured**.

L. "**Miscellaneous vehicle**" means the following motorized vehicles: all terrain vehicles; antique vehicles; classic vehicles; dune buggies; golf carts; motorcycles; motor homes; and snowmobiles.

M. "**Motor vehicle**" means any type of motorized land vehicle or conveyance, whether or not subject to motor vehicle registration.  **Motor vehicle** includes:

1. Private passenger vehicles, other than antique vehicles and classic vehicles; and

2. **Miscellaneous vehicles**.

N. "**Occurrence**" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in **bodily injury** or **property damage**.

O. "**Personal injury**" means injury arising out of one or more of the offenses listed below, but only if the **insured's** act occurred during the policy period.  A series of similar or related acts by an **insured**, multiple publications of the same statement, and continuous or repeated injury from the same act or publication, will be considered a single offense and injury during the single policy period in which the first act or publication occurred.

1. Oral, written or electronic publication of a false statement that defames a person's or organization's character or reputation.

2. Oral, written or electronic publication of material that violates a person's right of privacy by publicly disclosing private facts.

3. Malicious prosecution.

4. False arrest, false imprisonment, wrongful detention.

5. When committed by or on behalf of the owner, landlord or lessor of a room, dwelling or premises that a person occupies:

    a. Wrongful eviction;

    b. Wrongful entry; or

    c. Invasion of the right of private occupancy.

6. Assault and battery if committed by any **insured**, or at his direction, to protect persons or property. This applies only when the conduct is not criminal.

P. "**Personal watercraft**" means a conveyance, used or designed to be used on water that uses a jet pump powered by an internal combustion engine as the primary source of propulsion.

Q. "**Professional services**" means any type of service to the public that requires the person rendering the service to obtain:

1. An advanced degree; or

2. A license; or

3. Other legal authorization to provide the service.

R. "**Property damage**."

  1. "**Property damage**" means physical damage to or destruction of tangible property including loss of use of this property.

  2. For purposes of this policy, electronic data is not tangible property. Electronic data means information, facts or programs:

     a. Stored as or on;

     b. Created or used on; or

     c. Transmitted to or from;

     computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

S. "**Retained limit**" means the required minimum limit of liability for the applicable personal lines insurance coverage shown in the Schedule of Underlying Insurance on the Declarations. Where **underlying insurance** is payable for any one **occurrence** to which this policy also applies, the amount of the **retained limit** will be either:

  1. The split Bodily Injury/Property Damage limit shown in the Schedule, if **underlying insurance** has split limits; or

  2. The Combined Single Limit shown in the Schedule, if **underlying insurance** has a combined single limit.

Where **underlying insurance** is not payable for any one **occurrence** to which this policy applies, the amount of the **retained limit** will be the split Bodily Injury/Property Damage limit shown in the Schedule.

T. "**Underlying insurance**" means the types of personal lines insurance coverages for which limits are shown in the Schedule of Underlying Insurance on the Declarations.

U. "**Watercraft**" means a conveyance principally designed to be propelled on or in water by wind, current, paddles, oars, engine power or electric motor.

---

## LIABILITY COVERAGES

INSURING AGREEMENT

A. <u>Damages.</u>

  1. **We** will pay for damages, in excess of the **retained limit**, that an **insured** becomes legally obligated to pay because of **bodily injury** or **property damage** resulting from an **occurrence**.

  2. **We** will pay for damages that an **insured** becomes legally obligated to pay because of **personal injury**.

B. <u>Defense.</u>

  1. If a claim is made or a suit is brought against any **insured** for **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, or for **personal injury** to which this policy applies, **we** will provide a defense at **our** expense by counsel of **our** choice, even if the suit is groundless, false or fraudulent.

     However, **we** will not provide a defense:

     a. To any **insured** for criminal prosecution or proceedings; or

     b. If the **occurrence** or offense is covered by **underlying insurance** or any other liability insurance available to any **insured.**

CIC 1234 56 78 70U

2. **We** may investigate and settle any claim or suit that **we** decide is appropriate. **Our** duty to defend ends when the amount **we** pay to settle any claim, or in full or partial satisfaction of any judgment for damages resulting from the **occurrence** or offense, equals the Umbrella Liability Limit shown on the Declarations.

3. **We** have the right, but not the duty, to join with any **insured** or with the insurer providing **underlying insurance** in the investigation, defense or settlement of any claim or suit, or in any alternative dispute resolution process, which may require **us** to pay.

4. **We** may appeal a judgment in excess of the **retained limit** even if either the **insured** or the insurer providing the **underlying insurance** chooses not to appeal. If **we** do appeal, **we** will pay all related expenses.

LIMIT OF LIABILITY

A. Damages.

1. **Our** maximum limit of liability under this policy for all damages resulting from any one **occurrence,** or any one offense listed as **personal injury**, is the Umbrella Liability Limit shown on the Declarations.

2. This Umbrella Liability Limit is the most **we** will pay regardless of the number of suits or size of awards made, and regardless of the number of **insureds**, claims made or persons injured.

B. Defense. Defense costs are in addition to the Umbrella Liability Limit shown on the Declarations and include the following:

1. Premiums on appeal bonds and bonds to release attachments in any suit **we** defend. But **we** will not pay the premium for bonds with a face value over the Umbrella Liability Limit shown on the Declarations. **We** have the right, but not the duty, to either apply for or furnish any bond.

2. Expenses incurred by **us** or at **our** request on behalf of any **insured**, including court costs. **We** will pay interest on any part of a judgment covered by this policy.

3. Prejudgment interest awarded against any **insured** on that part of the judgment that is covered by this policy. If **we** make an offer to pay the applicable limit of liability available under this policy, **we** will not pay any prejudgment interest incurred or accrued after the offer is made.

4. Reasonable expenses incurred by any **insured** at **our** request, including actual loss of earnings (but not loss of other income) up to $250 per day for assisting **us** in the investigation or defense of a claim or suit.

---

## EXCLUSIONS

---

A. This insurance does not apply to:

1. Any loss assessments charged against any **insured** as a member of an association, corporation or community of property owners.

2. A nuclear energy **occurrence** that is covered by a nuclear energy liability policy, or would have been covered if the available liability insurance had not been used up.

3. Punitive or exemplary damages, fines or penalties.

CIC 1234 56 78 70U

B. This insurance does not apply to **bodily injury** to any person eligible to receive any benefits, whether voluntarily provided or required to be provided, by any **insured** under any:

1. Workers' Compensation law;

2. Non-occupational Disability law; or

3. Occupational Disease law.

C. This insurance does not apply to **property damage** to:

1. Property owned by any **insured**.

2. Any **aircraft** owned, hired, rented or used by, or in the care, custody or control of, any **insured**.

3. Property owned by others when any **insured** has physical control of such property, or has agreed to be responsible for or insure such property.

Paragraph 3. of this exclusion (C.) does not apply to the extent that liability coverage is provided by **underlying insurance** and is not excluded elsewhere in this policy.

D. This insurance does not apply to **personal injury** which results from a false statement if done by or at the direction of any **insured** with knowledge that the statement was false, or made with reckless disregard for the truth.

E. This insurance does not apply to **bodily injury** or **property damage**:

1. Caused by the intentional or purposeful acts of any **insured** that would be expected by any reasonable person to result in **bodily injury** or **property damage**. This applies even if the resulting **bodily injury** or **property damage**:

   a. Is of a different kind, quality or degree than initially expected or intended; or

   b. Is sustained by a different person, entity, real property or personal property than initially expected or intended.

This exclusion (E.1.) does not apply to **bodily injury** or **property damage** resulting from the use of lawful reasonable force by any **insured** to protect persons or property.

2. Arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of or presence of any **fungus**, wet or dry rot, or bacteria.

This exclusion (E.2.) does not apply to any **fungi** or bacteria that are, are on, or are contained in, a good or product intended for consumption.

3. Arising out of the use of any **motor vehicle** while that **motor vehicle** is being operated in, or in practice for, any **driving contest** or **challenge**.

F. This insurance does not apply to **bodily injury** or **personal injury**:

1. Sustained by any **insured**.

2. Arising out of illegal discrimination or violation of civil rights.

3. Arising out of any actual, alleged or threatened:

   a. Sexual misconduct;

   b. Sexual harassment;

   c. Sexual molestation; or

   d. Physical or mental abuse.

4. Arising out of the transmission of any communicable disease by any **insured**.

G. This insurance does not apply to **bodily injury, property damage** or **personal injury**:

1. Arising out of property any **insured** sells, gives away or abandons.

This exclusion (G.1.) does not apply to the extent that liability coverage is provided by **underlying insurance** and is not excluded elsewhere in this policy.

2. Arising out of:

CIC 1234 56 78 70U

a. The ownership, maintenance, use, loading or unloading of; or

b. The entrustment by any **insured** of; or

c. Vicarious liability, whether or not statutorily imposed, for the actions of anyone using;

a **motor vehicle, personal watercraft** or **watercraft**.

This exclusion (G.2.) does not apply to the extent that liability coverage is provided by **underlying insurance** and is not excluded elsewhere in this policy.

3. Arising out of:

a. The ownership, maintenance, use, loading or unloading of; or

b. The entrustment of any **insured** of; or

c. Vicarious liability, whether or not statutorily imposed, for the actions of anyone using;

an **aircraft** or **hovercraft**.

4. Arising out of the rental or holding for rental of any part of any premises, including any real property or real estate, by any **insured**.

This exclusion (G.4.) does not apply to the extent that liability coverage is provided by **underlying insurance** and is not excluded elsewhere in this policy.

5. Arising out of any **business** or **business property** of any **insured**.

This exclusion (G.5.) does not apply to the extent that liability coverage is provided by **underlying insurance** and is not excluded elsewhere in this policy.

6. Arising out of the rendering of or failure to render **professional services**.

7. Arising out of a criminal act or omission by, or with either the knowledge or consent of, any **insured**.

8. Arising directly or indirectly out of, or conduct resulting in: war including undeclared war; civil war; insurrection; rebellion; revolution; warlike act by a military force or military personnel; or destruction or seizure or use for a military purpose. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

9. Arising out of any **insured's** activities as an officer or member of a board of directors of any organization.

This exclusion (G.9.) does not apply to non-profit religious, charitable or civic organizations when:

a. The activity is not connected with any **insured's business**; and

b. The **insured** is not compensated for the activity other than reimbursement of out-of-pocket expenses.

10. Arising out of any contract or agreement.

This exclusion (G.10) does not apply to the extent that liability coverage is provided by **underlying insurance** and is not excluded elsewhere in this policy.

11. Arising out of the actual, alleged or threatened discharge, dispersal, release, escape, seepage or migration of pollutants however caused and whenever occurring. This includes any loss, cost or expense arising out of any:

a. Request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

CIC 1234 56 78 70U

b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants, as used in this exclusion (G.11.) means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials which are to be recycled, reconditioned or reclaimed.

12 Arising out of exposure to lead paint or other lead-based products.

13 Arising out of exposure to asbestos.

14 Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s). Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs.

This exclusion (G.14.) does not apply to the extent that liability coverage is provided by **underlying insurance** and is not excluded elsewhere in this policy.

---

## CONDITIONS

A. Bankruptcy. Bankruptcy or insolvency of any **insured** will not relieve **us** of **our** obligations under this policy.

B. Concealment, Misrepresentation or Fraud.

1. If **you** or any other **insured**, whether before or after an **occurrence** or offense to which this policy applies, has done any of the following related to the issuance of this policy or in the presentation of a claim, **we** may deny coverage as to the interest of all **insureds**:

   a. Intentionally concealed or misrepresented any material fact or circumstance.

   b. Engaged in fraudulent conduct.

   c. Made false statements which if known by **us** would have caused **us** not to:

      (1) Issue the policy;

      (2) Issue the policy in as large an amount;

      (3) Provide coverage for the hazard resulting in the loss; or

      (4) Issue the policy for the same amount of premium or at the same rate.

2. **We** reserve all rights to seek recovery from any person committing concealment, misrepresentation or fraud for all payments made and costs incurred.

C. Duties After an **Occurrence** or Offense. **We** will not be required to provide coverage under this policy unless there has been full compliance with these duties. In case of an **occurrence** or offense, **you** or **your** representative will perform the following duties that apply:

1. Give written notice to **us** or **our** agent as soon as is practical, which sets forth:

   a. The identity of the named insured shown on the Declarations;

   b. Reasonably available information about the time, place and circumstances of the **occurrence** or offense; and

   c. Names and addresses of any claimants and witnesses.

2. Cooperate with **us** in the investigation, settlement or defense of any claim or suit.

3. Promptly forward to **us** every notice, demand, summons or other process relating to the **occurrence** or offense.

4. At **our** request, help **us**:

   a. Make settlement;

   b. Enforce any right of contribution or indemnity against any person or organization who may be liable to any **insured**;

   c. With the conduct of suits and attend hearings and trials; and

   d. Secure and give evidence and obtain the attendance of witnesses.

5. For **property damage** losses, if **we** request, submit to **us** within 60 days after notice of loss a statement of loss and show the damaged property if in the control of any **insured**.

6. No **insured** will, except at the **insured's** own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the **bodily injury**.

D. Other Insurance. The coverage afforded by this policy is excess over any other insurance available to an **insured**, except insurance written specifically to be excess over this policy.

E. **Our** Right to Recover Payment.

   1. If **we** make a payment under this policy, **we** are entitled, but not required, to exercise the **insured's** rights of recovery against any person or other entity liable for the **occurrence** or offense.

   2. **We** can join with any **insured** and any insurer providing **underlying insurance** in the exercise of these rights.

   3. The **insured** must do whatever is necessary to enable **us** to exercise these rights, and shall do nothing after

an **occurrence** or offense to prejudice or defeat them.

F. Ownership. For purposes of this policy, a vehicle is deemed to be owned by a person if leased under a written agreement to that person for a continuous period of at least six months.

G. Required **Underlying Insurance**.

   1. If **underlying insurance** for **bodily injury** or **property damage** has terminated, is uncollectible, or has a limit less than the **retained limit**, this will not void coverage. However, **we** will pay for **bodily injury** or **property damage** only as though the **underlying insurance** was collectible and in force in the amount of the **retained limit**.

   2. **We** will not pay the difference between the **retained limit** and any lower limit actually in effect.

H. Spouse Access.

   1. The named insured and **we** agree that the named insured and resident spouse are "customers" for purposes of state and federal privacy laws. The resident spouse will have access to the same information available to the named insured and may initiate the same transactions as the named insured.

   2. The named insured may notify **us** that he/she no longer agrees that the resident spouse shall be treated as a "customer" for purposes of state and federal privacy laws, and **we** will not permit the resident spouse to access policy information.

I. Suit Against **Us**.

   1. No action can be brought against **us**:

      a. Unless there has been full compliance with the policy provisions; and

      b. Until the obligation of the **insured** has been determined by final judgment or by agreement signed by **us**.

CIC 1234 56 78 70U

2. No person or organization has any right under this policy to join **us** as a party to any legal action against any **insured**.

J. Termination.

1. Cancellation.

   a. **You** may cancel this policy at any time. However, the effective date of the cancellation cannot be earlier than the date of **your** request unless **we** agree to an earlier date.

   b. **We** may cancel this policy by sending an electronic notice, where allowed by law, to the named insured shown on the Declarations, or at **our** sole option, **we** may cancel by sending notice to the named insured by regular mail to the most recent address **you** provided to **us**. In either event, notice will be sent:

      (1) At least 10 days before the effective date of cancellation if cancellation is for nonpayment of premium; or

      (2) At least 30 days before the effective date of cancellation in all other cases.

2. Nonrenewal. If **we** decide not to renew this policy, **we** will send electronic notice, where allowed by law, to the named insured shown on the Declarations, or, at **our** sole option, **we** may send the named insured notice by regular mail to the most recent address **you** provided to **us**. In either event, notice will be sent at least 30 days before the end of the policy period.

3. Other Termination Provisions.

   a. Proof of mailing or electronic transmission of any notice will be sufficient proof of notice.

   b. If this policy is cancelled, the named insured may be entitled to a premium refund. The premium refund, if any, will be computed according to **our** manuals. However, making or offering to make the refund is not a condition of cancellation.

   c. The effective date of cancellation stated in the notice will become the end of the policy period.

K. Transfer of **Your** Interest in This Policy.

**Your** rights and duties under this policy may not be assigned without **our** written consent. However, if the named insured shown on the Declarations dies, **we** will provide coverage until the end of the policy period for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown on the Declarations;

2. Any **family member** who is an **insured** at the time of **your** death, but only while a resident of **your** household; and

3. The legal representative of the deceased named insured, but only with respect to **occurrences** covered by this policy and for which the deceased named insured would have been liable.

L. Waiver or Change of Policy Provisions. This policy contains all the agreements between **you** and **us**. Its provisions may not be changed or waived except by endorsement issued by **us**. If a change requires a premium adjustment, **we** will adjust the premium as of the effective date of the change.

Copyright. USAA. 2009. All rights reserved
Includes copyrighted material of Insurance Services Office Inc., with its permission.

# EXHIBIT G

JEFFREY D. GOOCH (7863)
J. ANGUS EDWARDS (4563)
BRADY L. RASMUSSEN (9619)
**JONES WALDO HOLBROOK & MCDONOUGH, P.C.**
170 South Main Street, Suite 1500
Salt Lake City, Utah  84101
TELEPHONE: (801) 521-3200
FACSIMILE: (801) 328-0537
jgooch@joneswaldo.com
aedwards@joneswaldo.com
brasmussen@joneswaldo.com

*Attorneys for the Plaintiffs*

---

## IN THE THIRD JUDICIAL DISTRICT COURT
## SUMMIT COUNTY, STATE OF UTAH

| | |
|---|---|
| JAMES SEAVER and DEBORAH SEAVER, as parents and heirs of G.S., deceased,<br><br>    Plaintiffs,<br><br>vs.<br><br>EDWARD SHAPARD  and MICHELLE SHAPARD, individually and as the parents of C.S.; ROBERT AINSWORTH and  GILLIAN AINSWORTH, individually and as the parents of J.A. and R.A.; MATTHEW K. MOELLER and CARELLI MOELLER, individually and as the parents of P.M.,<br><br>    Defendants. | **COMPLAINT AND JURY DEMAND**<br><br>**(TIER 3 Damages)**<br><br><br>Case No.<br><br>Judge: |

COMES NOW the Plaintiffs, by and through Jeffrey D. Gooch, Angus Edwards, and Brady L. Rasmussen, of Jones Waldo, and hereby complain of Defendants and allege as follows:

## I.  PARTIES

1.      Plaintiffs James and Deborah Seaver (referred to as **Plaintiffs** or **Seavers**) are residents of Summit County, Utah, and the parents and heirs of G.S., deceased.

2.      Defendants Edward Shapard and Michelle Shapard are the parents of minor C.S., and are currently residents of Wasatch County and Summit County, Utah, respectively, or were residents of Wasatch and Summit County, Utah, during the relevant times of Plaintiffs' allegations described in this Complaint.

3.       Defendants Robert Ainsworth and Gillian Ainsworth are the parents of minors J.A., and R.A., deceased, and are currently residents of Summit County, Utah, or were residents of Summit County, Utah, during the relevant times of Plaintiffs' allegations described in this Complaint.

4.      Defendants Matthew K. Moeller and Carelli Moeller are the parents of minor P.M., and are currently residents of Summit County, Utah, or were residents of Summit County, Utah, during the relevant times of Plaintiffs' allegations described in this Complaint.

5.      Does I-V are presently unidentified individuals and/or entities that through their acts or omissions may have been negligent in causing or contributing to the incident described in this Complaint. Plaintiffs reserve the right to name these individuals or

entities as defendants in this action if said parties exist and when their identities are discovered.

## II.   JURISDICTION, VENUE, and TIER ELECTION

6.      Subject matter jurisdiction is proper in this Court pursuant to Utah Code Ann. § 78A-5-102(1).

7.      This Court may exercise personal jurisdiction over Defendants because the Defendants reside in, own property, and/or conduct business in the State of Utah, or did reside in, own property, and/or conduct business in the State of Utah during the relevant times of Plaintiffs' allegations described in this Complaint.

8.      Venue is proper in this Court pursuant to Utah Code Ann. § 78B-3-307(a) and (b).

9.      Plaintiffs assert their damages are "$300,000.00 or more in damages" and therefore qualify for Tier 3 discovery pursuant to Rule 26(c)(3) of the Utah Rules of Civil Procedure.


## III.   FACTUAL ALLEGATIONS

10.     This civil action is the result of the death of G.S., a 13 year-old boy, on September 11, 2016.

11.     G.S.'s death was caused by ingesting the drug **U-47700**, also known by the slang term "Pinky" or "Pink."

12.  U-47700 is a "super-strong synthetic opioid."[1]

13.  U-4770 was created as a research chemical by chemist Jacob Szmuszkovicz and originally "intended to treat severe pain associated with cancer, surgery, or injury, but was never tested on humans and ended up being relegated to research."[2]

14.  Unfortunately, "Szmuszkovicz's patent remained publicly available with detailed instructions on how to produce U-47700 leading drug labs in China and elsewhere to whip up and sell batches of the sought-after opioid."[3]

15.  Upon information and belief, U-47700's recreational popularity grew as misinformation spread, including though internet social communities like *Reddit*,[4] that the drug caused similar feelings as other opioids, like oxycodone or heroin, but was relatively unknown to law enforcement and DEA scheduling.[5]

16.  If U-47700 is manufactured to the exact specifications of the patent, "it is said to be about seven and half times the strength of morphine."[6]

17.  The following persons played a role in procuring the U-47700 ingested by G.S. on September 11, 2016 and/or distributing it to G.S. (the "**Drug**"): C.S. (son of Defendants Edward Shapard and Michelle Shapard), J.A. and R.A. (sons of Defendants

---

[1] https://www.rollingstone.com/culture/news/u-47700-everything-you-need-to-know-about-deadly-new-drug-w443344

[2] *Id.*

[3] *Id.*

[4] Reddit is online community allowing participants to explore any number of topics – known as "Subreddits" – from the broad to the "super niche."
https://www.digitaltrends.com/social-media/what-is-reddit/

[5] *Id.*

[6] *Id.*

Robert Ainsworth and Gillian Ainsworth), and P.M. (daughter of Defendants Karl and Kelli Moeller).

18.    In September 2016, C.S. (son of Defendants Edward Shapard and Michelle Shapard), J.A. (son of Defendants Robert Ainsworth and Gillian Ainsworth), P.M. (daughter of Defendants Karl and Kelli Moeller), were 10th graders at Park City High School (**PCHS**).

19.    C.S., J.A., and P.M., were friends.

20.    C.S. and J.A. together purchased the Drug on the "dark web".[7]

21.    At the time that C.S. and J.A. purchased the Drug, the Drug was not listed as a Schedule I controlled substance.

22.    On November 14, 2016, the U.S. Drug Enforcement Administration listed the U-47700 as a Schedule I controlled substance making it illegal to manufacture, purchase, distribute, or possess U-47700.

23.    U-47700 should have been a Schedule I controlled substance when it was purchased by C.S and J.A. from China since it is many times more potent than morphine and caused numerous deaths during 2016.

24.    Based upon information on the internet, from sites such as Reddit and others on the dark web, at the time C.S and J.A. purchased the Drug from China, they

---

[7] "Online drug markets are part of the 'dark web': sites only accessible through browsers such as Tor, which route communications via several computers and layers of encryption, making them almost impossible for law enforcement to track." https://www.economist.com/news/international/21702176-drug-trade-moving-street-online-cryptomarkets-forced-compete

both knew that it was extremely dangerous. The kids of all Defendant parents understood that the reason U-47700 was also known as "pink" or "pinky" was because ingesting more than a pinky nail of U-47700 could kill a person.

25.     J.A. is the older brother to R.A. who was in G.S.'s school class at Treasure Mountain Junior High School (**TMJHS**) located in or around Park City, Utah.

26.     As C.S. and J.A. were both older than G.S. and R.A., they used this advantage in supplying the younger boys with U-47700, despite their knowledge that the drug was abnormally dangerous.

27.     Upon information and belief, R.A. began using opioids during the spring of 2015 and, before G.S.'s death, R.A. would suffer from symptoms of withdrawal if he could not obtain a regular supply of U-47700.

28.     R.A.'s parents, Defendant Robert and Gillian Ainsworth (the "Ainsworths"), knew or should have known that both J.A. and R.A. were using U-47700, and that R.A. was using enough U-47700 that he was addicted to it, but the Defendant Ainsworths failed to notify anyone of his addiction, including law enforcement or parents of R.A.'s friends.

29.     During May 2016, law enforcement investigated J.A. and R.A. for supplying drugs to a 12-year old girl who, after ingesting the drugs, required emergency medical treatment.

30.     The Defendant Ainsworths knew or should have known that J.A. and R.A. had supplied drugs to a 12-year old girl, but they failed to notify anyone of the investigation, including law enforcement or parents of R.A.'s friends.

31.     Many months before G.S.'s death, Defendant Ainsworths and Shapards knew that their sons, R.A., J.A., and C.S. were obtaining drugs from the Internet.

32.     Many months before the death of G.S., Defendant Gillian Ainsworth knew that J.A. and R.A. were bringing in abnormally dangerous drugs from China when staying with Defendant Robert Ainsworth.

33.     A GoPro video obtained by police after G.S.'s death discloses a conversation between G.S. and R.A. where they discuss the fact that the Defendant parents discovered a $2,000 shipment of drugs from China and threw the drugs into the garbage.

34.     The Defendant parents failed to notify anyone, including law enforcement, parents, and school officials that they had discovered the $2,000 shipment of Chinese drugs.

35.     On September 13, 2016, law enforcement received approval on two search warrants for the residences of C.S.'s parents, Defendants Edward and Michelle Shapard.

36.     As part of the search warrants, law enforcement seized some computers. From one of the computers recovered from the search warrants, law enforcement located information on the computer indicating that C.S. had been searching the "dark web" and had been on at least one "dark web" marketplace, "alphabay.net," which sold, among other things, illicit drugs including U-47700.

37.     On July 20, 2017, the Department of Justice announced the takedown of the dark web market AlphaBay.  From his Department of Justice's press release, Attorney General Jeff Sessions stated:

(1)     It knew of several Americans who were killed by drugs sold on Alpha Bay;

(2)     One victim was just 18 years old when, in February, she overdosed on a powerful synthetic opioid, which she had bought on AlphaBay. The drug was shipped right to her house through the mail;

(3)     A little more than a week after her death, a victim in Orange County, Florida, died of an overdose from a drug bought on AlphaBay;

(4)     And then there was G.S.. He was only 13 years old and a student at Treasure Mountain Junior High in Park City, Utah when he passed away after overdosing on a synthetic opioid that had been purchased by a classmate on AlphaBay.[8]

38.     From searching the computers obtained from the search warrants, law enforcement also discovered evidence on the computer indicating that C.S. had probably purchased bitcoin through at least two bitcoin exchanges – Coinbase and Paxful.

39.     When C.S., J.A., and R.A., purchased the Drug, they shipped it to P.M. and not their homes because their parents knew that they were ordering drugs from China.

40.     In early September 2016, more than a week before G.S.'s death, Matthew K. Moeller and Carelli Moeller (the "Moellers") discovered a box in P.M.'s closet in which Chinese drugs purchased by C.S., R.A., and J.A. were shipped to P.M.

---

[8] https://www.justice.gov/opa/speech/attorney-general-jeff-sessions-delivers-remarks-press-conference-announcing-alphabay

41.     The Moellers failed to notify anyone that they had discovered the box used to ship Chinese drugs to P.M., including law enforcement or the parents of P.M.'s friends.

42.     On September 11, 2016, G.S. died as a result of ingesting the Drug that had been purchased and/or distributed to him by C.S., J.A., R.A., and P.M.

43.     On September 13, 2016, while at the house, and under the supervision, of Defendant Robert Ainsworth, R.A. died as a result of ingesting the same Drug that had been purchased and/or distributed to G.S. by C.S., R.A., J.A., and P.M., and that had killed G.S. two days prior.

## IV. CAUSES OF ACTION

## A. NEGLIGENCE

44.     Plaintiffs incorporate by reference the allegations contained in all paragraphs above.

45.     The nature of the claims against the Defendants are based upon separate and cumulative acts of negligence by the Defendants.

46.     Plaintiffs allege that the Defendants were negligent and failed to exercise the necessary and requisite amount of reasonable care as to what a person in a like position would apply and use in similar circumstance.

47.     By the Defendants' actions and/or inactions, they breached these duties of care to the Plaintiffs.

48.     As described-above, Defendants knew or should have known that their minor children were involved in the procurement and distribution of dangerous and lethal drugs to classmates and young kids, including G.S.

49.     Defendants owed Plaintiffs and the local community a duty of care in communicating their knowledge of their children's dealings with lethal drugs, to all interested persons, including Plaintiffs, law enforcement, and other community leaders and officials, so that protective measures could be taken to prevent an overdose.

50.     Defendants further owed Plaintiffs and the local community a duty to not conceal or fail to misrepresent any facts to Plaintiffs, law enforcement, or other local leaders and officials that were in positions to intervene and prevent G.S. from obtaining and ingesting the Drug.

51.      Defendants breached these duties of care by failing to notify anyone their children were involved in the purchase and distribution of dangerous and lethal drugs, including law enforcement or the parents of G.S., and/or the parents of G.S.'s friends and classmates.

52.     As a result, Plaintiffs, law enforcement, and other local leaders and officials were excluded from information that would have allowed them to take actions to prevent G.S. from receiving and ingesting the lethal Drug.

53.     As a result of Defendants' conduct, G.S. ingested the Drug obtained and/or distributed to him by C.S., R.A., J.A., and P.M.

54.     Defendants' described conduct exhibits a failure to observe even slight care and a carelessness and recklessness to a degree that showed utter indifference to the consequences.

55.     Defendants' conduct, as described above, was extreme and outrageous. Defendants manifested a knowing and reckless indifference toward, and disregard of, the rights of the Plaintiffs.

56.     The death of G.S. was proximately caused by the negligent misconduct of Defendants. Accordingly, Plaintiffs, as the parents and statutory Wrongful Death Representatives of G.S., were damaged as is more specifically below.

**B.  NEGLIGENT SUPERVISION**

57.     Plaintiffs incorporate by reference the allegations contained in all paragraphs above.

58.     Defendants were the parents and caretakers of their minor children at the time of the above-described acts.

59.     As described-above, Defendants knew or should have known their minor children were involved in the procurement, use, and distribution of dangerous and lethal drugs, including the distribution of these drugs to G.S. and other minor children.

60.     Based upon this knowledge, Defendants had a duty to supervise and advise their minor children in order to prevent them from procuring and distributing lethal drugs to others including the Drug that killed G.S.

61.     Based upon this knowledge, Defendants had a duty to supervise their minor children by notifying Plaintiffs and law enforcement so that they could assist in making decisions in the best interests of G.S. and other minors in order to prevent the ingestion of dangerous and lethal drugs.

62.     Defendants breached their duties by failing to reasonably supervise and advise their minor children and taking measures to prevent the occurrence of G.S. obtaining and ingesting the Drug.

63.     As a result of Defendants' conduct in failing to reasonably supervise their minor children, G.S. obtained and ingested the Drug obtained and distributed by C.S., J.A., R.A., and P.M.

64.     As a result of Defendants' conduct, G.S. ingested the Drug obtained and distributed to him by C.S., J.A., R.A., and P.M.

65.     Defendants' described conduct exhibits a failure to observe even slight care and a carelessness and recklessness to a degree that showed utter indifference to the consequences.

66.     Defendants' conduct, as described above, was extreme and outrageous. Defendants manifested a knowing and reckless indifference toward, and disregard of, the rights Plaintiffs.

67.     The death of G.S. was proximately caused by the negligent misconduct of Defendants. Accordingly, Plaintiffs, as the parents and statutory Wrongful Death Representatives of G.S., were damaged as is more specifically described below.

## C. NEGLIGENT MISREPRESENTATION

68.     Plaintiffs incorporate by reference the allegations contained in all paragraphs above.

69.     As described in this Complaint, Defendants knew or should have known their minor children were involved in the procurement, use, and distribution of dangerous and lethal drugs, including the distribution of these drugs to G.S. and other minor children.

70.     Based upon this knowledge, Defendants had a duty to not misrepresent any relevant facts concerning their minor children's drug dealings with law enforcement or other parents so that law enforcement could act to protect G.S. and the local community.

71.     Upon information and belief, Defendants breached their duties by failing to accurately represent their knowledge of their minor children's dealing with these lethal drugs in communications with law enforcement and parents prior to the death of G.S.

72.     Upon information and belief, Defendants knew or should have known that their representations to the local community leaders, parents, and law enforcement, were false.

73.     Defendants' negligent misrepresentations were made to induce local community leaders, parents, and law enforcement, not to take actions that they perceived at the time to be legally and socially adverse to themselves as well as their minor children.

74.     Community leaders, parents, and law enforcement did not reasonably know of or discover these misrepresentations.

75.     As a result, Community leaders, local law enforcement, and Plaintiffs did not take actions to protect G.S. from obtaining and ingesting the Drug.

76.     As a result of Defendants' conduct, G.S. ingested the Drug obtained and distributed to him by C.S., J.A., R.A., and P.M.

77.     Defendants' described conduct exhibits a failure to observe even slight care and a carelessness and recklessness to a degree that showed utter indifference to the consequences.

78.     Defendants' conduct, as described above, was extreme and outrageous. Defendants manifested a knowing and reckless indifference toward, and disregard of, the rights Plaintiffs.

79.     The death of G.S. was proximately caused by the negligent misrepresentations of Defendants. Accordingly, Plaintiffs, as the parents and statutory Wrongful Death Representatives of G.S., were damaged as is more specifically below.

## D.  ABNORMALLY DANGEROUS ACTIVITY – STRICT LIABILITY

80.     Plaintiffs incorporate by reference the allegations contained in all paragraphs above.

81.     As described in this Complaint, Defendants actions and activities were abnormally dangerous.

82.     Defendants were aware of their children's procurement, use, and distribution of dangerous and lethal drugs, including the distribution of these drugs to

G.S. and other minor children, and that such activities included a high degree of risk of harm to these minor children.

83.     Because Defendants actions and activities were abnormally dangerous they are liable for the wrongful death of G.S. whether or not they exercised reasonable care.

## III. **CAUSATION**

84.     As a direct and proximate cause of the acts and omissions of the Defendants, Plaintiffs have suffered significant general and special damages including but not limited to, the wrongful death of their heir.

## IV. **DAMAGES**

85.     As a direct and proximate result of the aforesaid negligent acts and omissions and other failures of the Defendants, Plaintiffs have sustained damages including, but not limited to, the following:

   a.  General damages for the wrongful death of G.S. in a reasonable sum;

   b.  Any and all wrongful death damages for the death of G.S.;

   c.  Survival Damages for G.S.;

   d.  Special Damages for G.S.;

   e.  The loss of care, comfort, and society of G.S.;

   f.  Damages for emotional distress;

   g.  Special damages for medical, funeral, cremation, and related expenses incurred, in a reasonable sum;

h.  Special damages greater than $300,000.00 as required for Tier 3 discovery pursuant to Rule 26 of the Utah Rules of Civil Procedure;

i.  Pre- and post-judgment interest, to the extent allowed by law;

j.  Cost, expenses, and attorneys' fees to the extent allowed by law;

k.  Punitive and exemplary damages; and,

l.  Negative jury instruction based on spoliation of evidence.

m.  Negative evidentiary inference based on spoliation of evidence.

n.  Any measurable damages that have resulted from spoliation of evidence.

o.  Such other and further relief as may be deemed just and proper under the circumstances.

86.     The negligence and carelessness of the Defendants was so grossly negligent and culpable in nature that such acts and omissions constituted recklessness and wantonness in complete disregard for the lives and safety of others and, specifically, in complete disregard for the lives and safety of the Plaintiffs.

87.     Defendants recklessly disregarded facts and circumstances which created an unreasonable risk of harm to the Plaintiffs, and deliberately proceeded to act in conscious disregard of, or indifference to, the risk, or recklessly proceeded in an unreasonable disregard of or indifference to the risk.

88.     As a result of the negligence and gross negligence and reckless, willful, and wanton conduct of the Defendants, the Plaintiffs are entitled to recover exemplary and punitive damages.

89.     Punitive and exemplary damages are warranted in this action as a punishment of the Defendants for reckless and wanton acts and as a deterrent to the Defendants and others for committing the same or similar actions which endanger the general safety of the public.

90.     As a direct and proximate result of the acts and omissions of Defendants as alleged herein including, but not limited to Defendants' negligence, gross negligence, reckless, willful and wanton conduct, the Plaintiffs are entitled to recover actual, exemplary and punitive damages.

## VI.     PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

91.     As a direct and proximate result of the Defendants' misconduct, G.S. was killed. Accordingly, Plaintiffs, as the parents and statutory Wrongful Death Heirs and Representatives of G.S., were damaged. The following damages are entitled to recovery in this matter in amounts to be proven at trial:

     a.   Loss of care, comfort, protection, companionship, association, advice, and society;

     b.   Loss of emotional support and emotional contributions;

     c.   Loss of the hedonic value of G.S.'s life;

     d.   Punitive or exemplary damages;

     e.   For pre-judgment and post-judgment interest;

    f.  For costs of suit herein; and

    g.  For such further relief as this Court deems just and proper.

## VII.  <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff demands that a jury try all of the above issues and allegations.

DATED this 30th day of March 2018.

*JONES WALDO HOLBROOK & MCDONOUGH, P.C.*

<u>/s/ Brady L. Rasmussen</u>
Jeffrey D. Gooch
Angus Edwards
Brady L. Rasmussen
*Attorneys for the Plaintiff*