# EXHIBIT 10

JEFFREY D. GOOCH (7863)
J. ANGUS EDWARDS (4563)
BRADY L. RASMUSSEN (9619)
**JONES WALDO HOLBROOK & MCDONOUGH, P.C.**
170 South Main Street, Suite 1500
Salt Lake City, Utah 84101
TELEPHONE: (801) 521-3200
FACSIMILE: (801) 328-0537
jgooch@joneswaldo.com
aedwards@joneswaldo.com
brasmussen@joneswaldo.com

*Attorneys for the Plaintiffs*

## IN THE THIRD JUDICIAL DISTRICT COURT
## SUMMIT COUNTY, STATE OF UTAH

| | |
|---|---|
| JAMES SEAVER and DEBORAH SEAVER, as parents and heirs of G.S., deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>EDWARD SHAPARD and MICHELLE SHAPARD, individually and as the parents of C.S.; ROBERT AINSWORTH and GILLIAN AINSWORTH, individually and as the parents of J.A. and R.A.; MATTHEW K. MOELLER and CARELLI MOELLER, individually and as the parents of P.M.,<br><br>Defendants. | **COMPLAINT AND JURY DEMAND**<br><br>**(TIER 3 Damages)**<br><br><br>Case No.<br><br>Judge: |

COMES NOW the Plaintiffs, by and through Jeffrey D. Gooch, Angus Edwards, and Brady L. Rasmussen, of Jones Waldo, and hereby complain of Defendants and allege as follows:

## I. PARTIES

1. Plaintiffs James and Deborah Seaver (referred to as **Plaintiffs** or **Seavers**) are residents of Summit County, Utah, and the parents and heirs of G.S., deceased.

2. Defendants Edward Shapard and Michelle Shapard are the parents of minor C.S., and are currently residents of Wasatch County and Summit County, Utah, respectively, or were residents of Wasatch and Summit County, Utah, during the relevant times of Plaintiffs' allegations described in this Complaint.

3. Defendants Robert Ainsworth and Gillian Ainsworth are the parents of minors J.A., and R.A., deceased, and are currently residents of Summit County, Utah, or were residents of Summit County, Utah, during the relevant times of Plaintiffs' allegations described in this Complaint.

4. Defendants Matthew K. Moeller and Carelli Moeller are the parents of minor P.M., and are currently residents of Summit County, Utah, or were residents of Summit County, Utah, during the relevant times of Plaintiffs' allegations described in this Complaint.

5. Does I-V are presently unidentified individuals and/or entities that through their acts or omissions may have been negligent in causing or contributing to the incident described in this Complaint. Plaintiffs reserve the right to name these individuals or

entities as defendants in this action if said parties exist and when their identities are discovered.

## II. JURISDICTION, VENUE, and TIER ELECTION

6. Subject matter jurisdiction is proper in this Court pursuant to Utah Code Ann. § 78A-5-102(1).

7. This Court may exercise personal jurisdiction over Defendants because the Defendants reside in, own property, and/or conduct business in the State of Utah, or did reside in, own property, and/or conduct business in the State of Utah during the relevant times of Plaintiffs' allegations described in this Complaint.

8. Venue is proper in this Court pursuant to Utah Code Ann. § 78B-3-307(a) and (b).

9. Plaintiffs assert their damages are "$300,000.00 or more in damages" and therefore qualify for Tier 3 discovery pursuant to Rule 26(c)(3) of the Utah Rules of Civil Procedure.

## III. FACTUAL ALLEGATIONS

10. This civil action is the result of the death of G.S., a 13 year-old boy, on September 11, 2016.

11. G.S.'s death was caused by ingesting the drug **U-47700**, also known by the slang term "Pinky" or "Pink."

12. U-47700 is a "super-strong synthetic opioid."[1]

13. U-4770 was created as a research chemical by chemist Jacob Szmuszkovicz and originally "intended to treat severe pain associated with cancer, surgery, or injury, but was never tested on humans and ended up being relegated to research."[2]

14. Unfortunately, "Szmuszkovicz's patent remained publicly available with detailed instructions on how to produce U-47700 leading drug labs in China and elsewhere to whip up and sell batches of the sought-after opioid."[3]

15. Upon information and belief, U-47700's recreational popularity grew as misinformation spread, including though internet social communities like *Reddit*,[4] that the drug caused similar feelings as other opioids, like oxycodone or heroin, but was relatively unknown to law enforcement and DEA scheduling.[5]

16. If U-47700 is manufactured to the exact specifications of the patent, "it is said to be about seven and half times the strength of morphine."[6]

17. The following persons played a role in procuring the U-47700 ingested by G.S. on September 11, 2016 and/or distributing it to G.S. (the "**Drug**"): C.S. (son of Defendants Edward Shapard and Michelle Shapard), J.A. and R.A. (sons of Defendants

---

[1] https://www.rollingstone.com/culture/news/u-47700-everything-you-need-to-know-about-deadly-new-drug-w443344
[2] *Id.*
[3] *Id.*
[4] Reddit is online community allowing participants to explore any number of topics – known as "Subreddits" – from the broad to the "super niche." https://www.digitaltrends.com/social-media/what-is-reddit/
[5] *Id.*
[6] *Id.*

Robert Ainsworth and Gillian Ainsworth), and P.M. (daughter of Defendants Karl and Kelli Moeller).

18. In September 2016, C.S. (son of Defendants Edward Shapard and Michelle Shapard), J.A. (son of Defendants Robert Ainsworth and Gillian Ainsworth), P.M. (daughter of Defendants Karl and Kelli Moeller), were 10th graders at Park City High School (**PCHS**).

19. C.S., J.A., and P.M., were friends.

20. C.S. and J.A. together purchased the Drug on the "dark web".[7]

21. At the time that C.S. and J.A. purchased the Drug, the Drug was not listed as a Schedule I controlled substance.

22. On November 14, 2016, the U.S. Drug Enforcement Administration listed the U-47700 as a Schedule I controlled substance making it illegal to manufacture, purchase, distribute, or possess U-47700.

23. U-47700 should have been a Schedule I controlled substance when it was purchased by C.S and J.A. from China since it is many times more potent than morphine and caused numerous deaths during 2016.

24. Based upon information on the internet, from sites such as Reddit and others on the dark web, at the time C.S and J.A. purchased the Drug from China, they

---

[7] "Online drug markets are part of the 'dark web': sites only accessible through browsers such as Tor, which route communications via several computers and layers of encryption, making them almost impossible for law enforcement to track." https://www.economist.com/news/international/21702176-drug-trade-moving-street-online-cryptomarkets-forced-compete

both knew that it was extremely dangerous. The kids of all Defendant parents understood that the reason U-47700 was also known as "pink" or "pinky" was because ingesting more than a pinky nail of U-47700 could kill a person.

25.  J.A. is the older brother to R.A. who was in G.S.'s school class at Treasure Mountain Junior High School (**TMJHS**) located in or around Park City, Utah.

26.  As C.S. and J.A. were both older than G.S. and R.A., they used this advantage in supplying the younger boys with U-47700, despite their knowledge that the drug was abnormally dangerous.

27.  Upon information and belief, R.A. began using opioids during the spring of 2015 and, before G.S.'s death, R.A. would suffer from symptoms of withdrawal if he could not obtain a regular supply of U-47700.

28.  R.A.'s parents, Defendant Robert and Gillian Ainsworth (the "Ainsworths"), knew or should have known that both J.A. and R.A. were using U-47700, and that R.A. was using enough U-47700 that he was addicted to it, but the Defendant Ainsworths failed to notify anyone of his addiction, including law enforcement or parents of R.A.'s friends.

29.  During May 2016, law enforcement investigated J.A. and R.A. for supplying drugs to a 12-year old girl who, after ingesting the drugs, required emergency medical treatment.

30.  The Defendant Ainsworths knew or should have known that J.A. and R.A. had supplied drugs to a 12-year old girl, but they failed to notify anyone of the investigation, including law enforcement or parents of R.A.'s friends.

31. Many months before G.S.'s death, Defendant Ainsworths and Shapards knew that their sons, R.A., J.A., and C.S. were obtaining drugs from the Internet.

32. Many months before the death of G.S., Defendant Gillian Ainsworth knew that J.A. and R.A. were bringing in abnormally dangerous drugs from China when staying with Defendant Robert Ainsworth.

33. A GoPro video obtained by police after G.S.'s death discloses a conversation between G.S. and R.A. where they discuss the fact that the Defendant parents discovered a $2,000 shipment of drugs from China and threw the drugs into the garbage.

34. The Defendant parents failed to notify anyone, including law enforcement, parents, and school officials that they had discovered the $2,000 shipment of Chinese drugs.

35. On September 13, 2016, law enforcement received approval on two search warrants for the residences of C.S.'s parents, Defendants Edward and Michelle Shapard.

36. As part of the search warrants, law enforcement seized some computers. From one of the computers recovered from the search warrants, law enforcement located information on the computer indicating that C.S. had been searching the "dark web" and had been on at least one "dark web" marketplace, "alphabay.net," which sold, among other things, illicit drugs including U-47700.

37. On July 20, 2017, the Department of Justice announced the takedown of the dark web market AlphaBay. From his Department of Justice's press release, Attorney General Jeff Sessions stated:

(1) It knew of several Americans who were killed by drugs sold on Alpha Bay;

(2) One victim was just 18 years old when, in February, she overdosed on a powerful synthetic opioid, which she had bought on AlphaBay. The drug was shipped right to her house through the mail;

(3) A little more than a week after her death, a victim in Orange County, Florida, died of an overdose from a drug bought on AlphaBay;

(4) And then there was G.S.. He was only 13 years old and a student at Treasure Mountain Junior High in Park City, Utah when he passed away after overdosing on a synthetic opioid that had been purchased by a classmate on AlphaBay.[8]

38. From searching the computers obtained from the search warrants, law enforcement also discovered evidence on the computer indicating that C.S. had probably purchased bitcoin through at least two bitcoin exchanges – Coinbase and Paxful.

39. When C.S., J.A., and R.A., purchased the Drug, they shipped it to P.M. and not their homes because their parents knew that they were ordering drugs from China.

40. In early September 2016, more than a week before G.S.'s death, Matthew K. Moeller and Carelli Moeller (the "Moellers") discovered a box in P.M.'s closet in which Chinese drugs purchased by C.S., R.A., and J.A. were shipped to P.M.

---

[8] https://www.justice.gov/opa/speech/attorney-general-jeff-sessions-delivers-remarks-press-conference-announcing-alphabay

41.    The Moellers failed to notify anyone that they had discovered the box used to ship Chinese drugs to P.M., including law enforcement or the parents of P.M.'s friends.

42.    On September 11, 2016, G.S. died as a result of ingesting the Drug that had been purchased and/or distributed to him by C.S., J.A., R.A., and P.M.

43.    On September 13, 2016, while at the house, and under the supervision, of Defendant Robert Ainsworth, R.A. died as a result of ingesting the same Drug that had been purchased and/or distributed to G.S. by C.S., R.A., J.A., and P.M., and that had killed G.S. two days prior.

## IV. CAUSES OF ACTION

### A. NEGLIGENCE

44.    Plaintiffs incorporate by reference the allegations contained in all paragraphs above.

45.    The nature of the claims against the Defendants are based upon separate and cumulative acts of negligence by the Defendants.

46.    Plaintiffs allege that the Defendants were negligent and failed to exercise the necessary and requisite amount of reasonable care as to what a person in a like position would apply and use in similar circumstance.

47.    By the Defendants' actions and/or inactions, they breached these duties of care to the Plaintiffs.

COMPLAINT AND JURY DEMAND
Page 9 of 18

48. As described-above, Defendants knew or should have known that their minor children were involved in the procurement and distribution of dangerous and lethal drugs to classmates and young kids, including G.S.

49. Defendants owed Plaintiffs and the local community a duty of care in communicating their knowledge of their children's dealings with lethal drugs, to all interested persons, including Plaintiffs, law enforcement, and other community leaders and officials, so that protective measures could be taken to prevent an overdose.

50. Defendants further owed Plaintiffs and the local community a duty to not conceal or fail to misrepresent any facts to Plaintiffs, law enforcement, or other local leaders and officials that were in positions to intervene and prevent G.S. from obtaining and ingesting the Drug.

51. Defendants breached these duties of care by failing to notify anyone their children were involved in the purchase and distribution of dangerous and lethal drugs, including law enforcement or the parents of G.S., and/or the parents of G.S.'s friends and classmates.

52. As a result, Plaintiffs, law enforcement, and other local leaders and officials were excluded from information that would have allowed them to take actions to prevent G.S. from receiving and ingesting the lethal Drug.

53. As a result of Defendants' conduct, G.S. ingested the Drug obtained and/or distributed to him by C.S., R.A., J.A., and P.M.

54. Defendants' described conduct exhibits a failure to observe even slight care and a carelessness and recklessness to a degree that showed utter indifference to the consequences.

55. Defendants' conduct, as described above, was extreme and outrageous. Defendants manifested a knowing and reckless indifference toward, and disregard of, the rights of the Plaintiffs.

56. The death of G.S. was proximately caused by the negligent misconduct of Defendants. Accordingly, Plaintiffs, as the parents and statutory Wrongful Death Representatives of G.S., were damaged as is more specifically below.

**B. NEGLIGENT SUPERVISION**

57. Plaintiffs incorporate by reference the allegations contained in all paragraphs above.

58. Defendants were the parents and caretakers of their minor children at the time of the above-described acts.

59. As described-above, Defendants knew or should have known their minor children were involved in the procurement, use, and distribution of dangerous and lethal drugs, including the distribution of these drugs to G.S. and other minor children.

60. Based upon this knowledge, Defendants had a duty to supervise and advise their minor children in order to prevent them from procuring and distributing lethal drugs to others including the Drug that killed G.S.

61. Based upon this knowledge, Defendants had a duty to supervise their minor children by notifying Plaintiffs and law enforcement so that they could assist in making decisions in the best interests of G.S. and other minors in order to prevent the ingestion of dangerous and lethal drugs.

62. Defendants breached their duties by failing to reasonably supervise and advise their minor children and taking measures to prevent the occurrence of G.S. obtaining and ingesting the Drug.

63. As a result of Defendants' conduct in failing to reasonably supervise their minor children, G.S. obtained and ingested the Drug obtained and distributed by C.S., J.A., R.A., and P.M.

64. As a result of Defendants' conduct, G.S. ingested the Drug obtained and distributed to him by C.S., J.A., R.A., and P.M.

65. Defendants' described conduct exhibits a failure to observe even slight care and a carelessness and recklessness to a degree that showed utter indifference to the consequences.

66. Defendants' conduct, as described above, was extreme and outrageous. Defendants manifested a knowing and reckless indifference toward, and disregard of, the rights Plaintiffs.

67. The death of G.S. was proximately caused by the negligent misconduct of Defendants. Accordingly, Plaintiffs, as the parents and statutory Wrongful Death Representatives of G.S., were damaged as is more specifically described below.

## C. NEGLIGENT MISREPRESENTATION

68. Plaintiffs incorporate by reference the allegations contained in all paragraphs above.

69. As described in this Complaint, Defendants knew or should have known their minor children were involved in the procurement, use, and distribution of dangerous and lethal drugs, including the distribution of these drugs to G.S. and other minor children.

70. Based upon this knowledge, Defendants had a duty to not misrepresent any relevant facts concerning their minor children's drug dealings with law enforcement or other parents so that law enforcement could act to protect G.S. and the local community.

71. Upon information and belief, Defendants breached their duties by failing to accurately represent their knowledge of their minor children's dealing with these lethal drugs in communications with law enforcement and parents prior to the death of G.S.

72. Upon information and belief, Defendants knew or should have known that their representations to the local community leaders, parents, and law enforcement, were false.

73. Defendants' negligent misrepresentations were made to induce local community leaders, parents, and law enforcement, not to take actions that they perceived at the time to be legally and socially adverse to themselves as well as their minor children.

74. Community leaders, parents, and law enforcement did not reasonably know of or discover these misrepresentations.

75. As a result, Community leaders, local law enforcement, and Plaintiffs did not take actions to protect G.S. from obtaining and ingesting the Drug.

76. As a result of Defendants' conduct, G.S. ingested the Drug obtained and distributed to him by C.S., J.A., R.A., and P.M.

77. Defendants' described conduct exhibits a failure to observe even slight care and a carelessness and recklessness to a degree that showed utter indifference to the consequences.

78. Defendants' conduct, as described above, was extreme and outrageous. Defendants manifested a knowing and reckless indifference toward, and disregard of, the rights Plaintiffs.

79. The death of G.S. was proximately caused by the negligent misrepresentations of Defendants. Accordingly, Plaintiffs, as the parents and statutory Wrongful Death Representatives of G.S., were damaged as is more specifically below.

## D. ABNORMALLY DANGEROUS ACTIVITY – STRICT LIABILITY

80. Plaintiffs incorporate by reference the allegations contained in all paragraphs above.

81. As described in this Complaint, Defendants actions and activities were abnormally dangerous.

82. Defendants were aware of their children's procurement, use, and distribution of dangerous and lethal drugs, including the distribution of these drugs to

G.S. and other minor children, and that such activities included a high degree of risk of harm to these minor children.

83. Because Defendants actions and activities were abnormally dangerous they are liable for the wrongful death of G.S. whether or not they exercised reasonable care.

## III. CAUSATION

84. As a direct and proximate cause of the acts and omissions of the Defendants, Plaintiffs have suffered significant general and special damages including but not limited to, the wrongful death of their heir.

## IV. DAMAGES

85. As a direct and proximate result of the aforesaid negligent acts and omissions and other failures of the Defendants, Plaintiffs have sustained damages including, but not limited to, the following:

   a. General damages for the wrongful death of G.S. in a reasonable sum;
   b. Any and all wrongful death damages for the death of G.S.;
   c. Survival Damages for G.S.;
   d. Special Damages for G.S.;
   e. The loss of care, comfort, and society of G.S.;
   f. Damages for emotional distress;
   g. Special damages for medical, funeral, cremation, and related expenses incurred, in a reasonable sum;

    h. Special damages greater than $300,000.00 as required for Tier 3 discovery pursuant to Rule 26 of the Utah Rules of Civil Procedure;

    i. Pre- and post-judgment interest, to the extent allowed by law;

    j. Cost, expenses, and attorneys' fees to the extent allowed by law;

    k. Punitive and exemplary damages; and,

    l. Negative jury instruction based on spoliation of evidence.

    m. Negative evidentiary inference based on spoliation of evidence.

    n. Any measurable damages that have resulted from spoliation of evidence.

    o. Such other and further relief as may be deemed just and proper under the circumstances.

86. The negligence and carelessness of the Defendants was so grossly negligent and culpable in nature that such acts and omissions constituted recklessness and wantonness in complete disregard for the lives and safety of others and, specifically, in complete disregard for the lives and safety of the Plaintiffs.

87. Defendants recklessly disregarded facts and circumstances which created an unreasonable risk of harm to the Plaintiffs, and deliberately proceeded to act in conscious disregard of, or indifference to, the risk, or recklessly proceeded in an unreasonable disregard of or indifference to the risk.

88. As a result of the negligence and gross negligence and reckless, willful, and wanton conduct of the Defendants, the Plaintiffs are entitled to recover exemplary and punitive damages.

89. Punitive and exemplary damages are warranted in this action as a punishment of the Defendants for reckless and wanton acts and as a deterrent to the Defendants and others for committing the same or similar actions which endanger the general safety of the public.

90. As a direct and proximate result of the acts and omissions of Defendants as alleged herein including, but not limited to Defendants' negligence, gross negligence, reckless, willful and wanton conduct, the Plaintiffs are entitled to recover actual, exemplary and punitive damages.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

91. As a direct and proximate result of the Defendants' misconduct, G.S. was killed. Accordingly, Plaintiffs, as the parents and statutory Wrongful Death Heirs and Representatives of G.S., were damaged. The following damages are entitled to recovery in this matter in amounts to be proven at trial:

   a. Loss of care, comfort, protection, companionship, association, advice, and society;
   b. Loss of emotional support and emotional contributions;
   c. Loss of the hedonic value of G.S.'s life;
   d. Punitive or exemplary damages;
   e. For pre-judgment and post-judgment interest;

    f.  For costs of suit herein; and

    g.  For such further relief as this Court deems just and proper.

## VII. DEMAND FOR TRIAL BY JURY

Plaintiff demands that a jury try all of the above issues and allegations.

DATED this 30th day of March 2018.

        ***JONES WALDO HOLBROOK & MCDONOUGH, P.C.***

        /s/ Brady L. Rasmussen
        Jeffrey D. Gooch
        Angus Edwards
        Brady L. Rasmussen
        *Attorneys for the Plaintiff*